# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOAQUÍN CARCAÑO; PAYTON GREY
MCGARRY; H.S., by her next friend and
mother, KATHRYN SCHAFER; ANGELA
GILMORE; KELLY TRENT; BEVERLY
NEWELL; and AMERICAN CIVIL
LIBERTIES UNION OF NORTH
CAROLINA,

        Plaintiffs,

        v.

PATRICK MCCRORY, in his official
capacity as Governor of North Carolina;
UNIVERSITY OF NORTH CAROLINA;
BOARD OF GOVERNORS OF THE
UNIVERSITY OF NORTH CAROLINA;
and W. LOUIS BISSETTE, JR., in his
official capacity as Chairman of the Board
of the University of North Carolina,

        Defendants.

Case No. 1:16-cv-00236-TDS-JEP

---

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE
BY THE HON. PHIL BERGER, PRESIDENT PRO TEMPORE OF THE NORTH
CAROLINA SENATE, AND THE HON. TIM MOORE, SPEAKER OF THE
NORTH CAROLINA HOUSE OF REPRESENTATIVES**

By: /s/ S. Kyle Duncan
S. KYLE DUNCAN* (DC Bar #1010452)
  *Lead Counsel*
GENE C. SCHAERR* (DC Bar #416638)
SCHAERR | DUNCAN LLP
1717 K Street NW, Suite 900
Washington, DC 20006
202-714-9492; 571-730-4429 (fax)
kduncan@schaerr-duncan.com
*Specially Appearing Pursuant to Local
Civil Rule 83.1(d)*

By: /s/ Robert D. Potter, Jr.
ROBERT D. POTTER, JR. (NC Bar #17553)
ATTORNEY AT LAW
2820 Selwyn Avenue, #840
Charlotte, NC 28209
704-552-7742
rdpotter@rdpotterlaw.com

*Attorneys for Proposed Intervenors*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION AND SUMMARY .......................................................................... 1

BACKGROUND ........................................................................................................... 3

ARGUMENT ................................................................................................................ 5

    I.   The Court should grant permissive intervention, under Rule 24(b), to ensure that the Act receives the strongest possible defense. ................................................. 5

       A.   The General Assembly's leaders have claims and defenses that share multiple common questions of law and fact with the ACLU's action. ............... 6

       B.   This intervention is timely and will not delay the case's resolution or prejudice the original parties. ................................................................................. 8

       C.   Unlike existing defendants, the General Assembly's leaders have general oversight of the Act with respect to all functions of North Carolina government—and the Legislative Branch itself. ................................................ 10

    II.  Alternatively, Senator Berger and Speaker Moore have a right to intervene under Rule 24(a)(2). ................................................................................................ 14

       A.   The motion to intervene is timely. ........................................................................ 14

       B.   Proposed Intervenors have a significantly protectable interest. ......................... 15

       C.   Disposition of the main action may impair or impede the Proposed Intervenors' ability to protect their interests in defending the Act. .................. 17

       D.   Because the existing defendants have only limited authority, they may not be in a position to fully defend the Act across all state functions. ............... 17

CONCLUSION ........................................................................................................... 20

CERTIFICATE OF SERVICE ..................................................................................... 22

## APPENDIX

Complaint for Declaratory Judgment, *Berger et al. v. United States Dep't of Justice*, No. 5:16-cv-00240 (E.D.N.C. May 9, 2016) ........................................................... A

Complaint for Declaratory Judgment, *McCrory et al. v. United States*, No. 5:16-cv-00238 (E.D.N.C. May 9, 2016) ................................................................................. B

Complaint for Declaratory Judgment, *United States v. State of North Carolina et al.*, No. 1:16-cv-00425 (M.D.N.C. May 9, 2016) ........................................................... C

# TABLE OF AUTHORITIES

**Cases**

*Alt v. United States EPA*,
  758 F.3d 588 (4th Cir. 2014) ...................................................................... 8, 9

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997) .................................................................................. 11

*Chesapeake Bay Found. v. Am. Recovery Co.*,
  769 F.2d 207 (4th Cir. 1985) ...................................................................... 15

*Coleman v. Miller*,
  307 U.S. 433 (1939) ................................................................................ 17

*CVLR Performance Horses, Inc. v. Wynne*,
  No. 6:11-cv-00035, 2013 WL 6409894, (W.D. Va. Dec. 9, 2013),
  *aff'd*, 792 F.3d 469 (4th Cir. 2015). ........................................................... 9

*Diamond v. Charles*,
  476 U.S. 54 (1986) .................................................................................. 11

*Donaldson v. United States*,
  400 U.S. 517 (1971) ................................................................................ 15

*Feller v. Brock*,
  802 F.2d 722 (4th Cir. 1986) ................................................................... 6, 15

*Felman Prod. v. Indus. Risk Insurers*,
  2009 U.S. Dist. LEXIS 117672 (S.D. W.Va. Dec. 16, 2009) ...................................... 18

*Fisher-Borne v. Smith*,
  14 F.Supp.3d 699 (M.D.N.C. 2014) ........................................................ 3, 14, 15, 16

*Hill v. Western Elec. Co.*,
  672 F.2d 381 (4th Cir. 1982) ....................................................................... 6

*Hollingsworth v. Perry*,
  133 S.Ct. 2652 (2013) .......................................................................... 10, 11

*Hughey v. Cloninger*,
  253 S.E.2d 898 (N.C. 1979) ........................................................................ 12

*In re Sierra Club*,
  945 F.2d 776 (4th Cir. 1991) ...................................................................... 18

*JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*,
  321 F. App'x 286 (4th Cir. 2009) .................................................................. 18

*Kings Mt. Bd. of Educ. v. N.C. State Bd. of Educ.*,
  583 S.E.2d 629 (N.C. App. 2003) .................................................................. 12

ii

*Leandro v. State,*
    488 S.E.2d 249 (N.C. 1997) ....................................................................... 12

*Liner v. DiCresce,*
    905 F. Supp. 280 (M.D.N.C. 1994) ............................................................... 9

*Marshall v. Meadows,*
    921 F. Supp. 1490 (E.D. Va. 1996) ............................................................... 9

*Moore v. Board of Education,*
    193 S.E. 732 (N.C. 1937) ............................................................................ 12

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ....................................................................... 6

*Ohio Valley Envtl. Coalition, Inc. v. McCarthy,*
    313 F.R.D. 10 (S.D. W.Va. 2015) ................................................................. 9

*Perry v. Schwarzenegger,*
    630 F.3d 898 (9th Cir. 2011) ....................................................................... 10

*Security Ins. Co. v. Schipporeit, Inc.,*
    69 F.3d 1377 (7th Cir. 1995) ......................................................................... 9

*Southwest Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ....................................................................... 15

*Spangler v. Pasadena City Bd. of Ed.,*
    552 F.2d 1326 (9th Cir. 1977) ..................................................................... 10

*State v. Williams,*
    117 S.E.2d 444 (N.C. 1960) ........................................................................ 12

*Stuart v. Huff,*
    706 F.3d 345 (4th Cir. 2013) .................................................................... 9, 20

*Teague v. Bakker,*
    931 F.2d 259 (4th Cir. 1991) ....................................................................... 18

*Titan Atlas Mfg. v. Sisk,*
    2014 U.S. Dist. LEXIS 27094 (W.D. Va. Mar. 4, 2014) .............................. 18

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) .................................................................................... 18

*United States v. N.C.,*
    2014 U.S. Dist. LEXIS 14787 (M.D.N.C. Feb. 6, 2014) ............................. 20

*United States v. Virginia,*
    282 F.R.D. 403 (E.D. Va. 2012) ................................................................... 9

*Va. Uranium, Inc. v. McAuliffe,*
    2015 U.S. Dist. LEXIS 141459 (W.D. Va. Oct. 19, 2015) .......................... 15

iii

*Wright v. Krispy Kreme Doughnuts, Inc.*,
231 F.R.D. 475 (M.D.N.C. 2005) ............................................................ 6, 9, 14

**Statutes and Legislative History**

20 U.S.C. § 1681 *et seq*. ........................................................................... 4

2015 Bill Text NC H.B. 2B (Mar. 23, 2016) ............................................ 4

N.C. Gen. Stat § 14-33 ............................................................................. 17

N.C. Gen. Stat. § 115C-47 ........................................................................ 4

N.C. Gen. Stat. § 153A-228 ...................................................................... 17

N.C. Gen. Stat. § 1-72.2 ..................................................................... passim

N.C. Gen. Stat. § 78C-86(3) ..................................................................... 17

**Rules**

Fed. R. Civ. P. 24 ............................................................................. 5, 6, 8, 14

**Constitutional Provisions**

N.C. Const. Art. II, § 5 ............................................................................. 12

N.C. Const. Art. IX, § 2 ............................................................................ 11

N.C. Const. Art. IX, § 4 ............................................................................ 11

N.C. Const. Art. IX, §§ 8, 9 ...................................................................... 11

N.C. Const. Art. V, § 12 ........................................................................... 11

**Court Documents**

Complaint, *Berger v. United States Dep't of Justice*,
No. 5:16-cv-00240 (E.D.N.C. May 9, 2016) ........................................ 5

Complaint, *McCrory v. United States*,
No. 5:16-cv-00238 (E.D.N.C. May 9, 2016) ........................................ 5

Complaint, *United States v. State of North Carolina et al.*,
No. 1:16-cv-00425 (M.D.N.C. May 9, 2016) ...................................... 5

Order granting motion to intervene,
*American Civil Liberties Union v. Tennyson*,
No. 13-1030 (dkt. no. 43), 815 F.3d 183 (4th Cir. 2016) ................... 16

**Other Authorities**

6-24 Moore's Federal Practice—Civil §§ 24.10-24.11 (3d ed. 1997) ............... 6, 10

Blythe, Anne,
*NC Attorney General Refuses to Defend State from HB2 Legal Challenge*, The News
& Observer (Mar. 29, 2016) ................................................................ 20

iv

Department of Education,
    *Dear Colleague Letter on Transgender Students* (May 13, 2016) ............................... 16

Case 1:16-cv-00236-TDS-JEP   Document 34   Filed 05/25/16   Page 6 of 28

# MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

## INTRODUCTION AND SUMMARY

This civil rights action by the ACLU and certain individuals (collectively "ACLU") is a case of unusual importance to North Carolina and to Proposed Intervenors, Phil Berger, the President pro tempore of the North Carolina Senate, and Tim Moore, the Speaker of the North Carolina House of Representatives ("Proposed Intervenors" or "Intervenors"). This motion is not opposed by any plaintiffs or defendants. Intervention is warranted for three reasons.

First, this suit directly challenges the validity under federal law of a critically important state statute—the Public Facilities Privacy and Security Act (the "Act"), commonly known as HB2—which protects the privacy and safety of people using public bath, locker and shower facilities throughout North Carolina. None of the existing defendants has the Proposed Intervenors' comprehensive interests in defending the Act. The State's attorney general Roy Cooper, who was originally named as a defendant but not in the First Amended Complaint, has not only refused to defend the Act in related proceedings, but has publicly attacked it. The other defendants—Governor McCrory, UNC, and the UNC Board of Governors and its chairman—have authority over only limited segments of the state entities and instrumentalities that would be affected by an adverse decision. In particular, their authority does not extend to the Legislative Branch, which is covered by the Act and squarely within the Intervenors' authority. Nor does it extend to the State's many public schools, whose facilities are subject to the same federal law—Title IX—that is the basis for the claims against UNC. Moreover, Governor

McCrory is not named in the Title IX counts and may lack standing to defend the Act against Title IX challenges. Finally, the potential cumulative effect of this suit on the State's treasury is immense and would fall on the General Assembly to administer.

Furthermore, in addition to challenging the Act itself, the ACLU challenges the integrity of the legislative process that passed it; attacks various alleged statements by Proposed Intervenors Moore and Berger themselves; and impugns the very authority of the General Assembly to enact legislation designed to preempt local ordinances. Consequently, the General Assembly, through its representatives, must be allowed to vigorously defend these direct challenges to its power and process.

Second, the ACLU's remarkable legal theory in this case would leave the State with no effective way to protect the legitimate expectations of privacy and safety that have long prevailed in the intimate setting of public bath, locker and shower facilities. Under the ACLU's theory, it is illegal for the police to preventatively bar a person with mature male genitalia from a public women's bath, locker or shower facility if that person merely *claims* to "identify" as a "woman." That radical theory subjects every North Carolina female who uses a public facility to the unwelcome and perhaps traumatic sight of unclothed males in the intimate settings of locker rooms and showers. It also subjects every North Carolina female using such a facility to a heightened risk of sexual predation by men *falsely* claiming to "identify" as women—including some 23,000 registered sex offenders currently in the state. Proposed Intervenors have a fiduciary interest in protecting all North Carolina women and girls from these threats, especially those in public schools and other facilities not within the jurisdiction of the named

defendants. For the ACLU's subjective theory of "gender identity" would allow no objective means for enforcing any restroom or locker room policy for anyone.

Third, the ACLU's suit is an assault on the bedrock legal and social understanding of what differentiates men from women. Under North Carolina's view—embedded throughout its law—whether one is a man or a woman, and entitled to be treated as such, is an objective inquiry, driven by anatomy and genetics. But under the ACLU's view, this view is itself discriminatory and bigoted, and must—as a matter of federal law—be replaced by a subjective view in which male or female is a mere psychological construct. The ACLU's avant-garde view is absurd, and its implementation would wreak havoc on North Carolina law in numerous areas, including state employment law, fair housing law, and family law. These are all matters within Intervenors' particular responsibilities as leaders of the General Assembly. They are thus best situated to elaborate these issues as the Court wrestles with the ACLU's proposed brave new world.

For all these reasons, and those elaborated below, this is the quintessential case for application of the North Carolina statute giving these Intervenors the right to intervene to defend laws passed by the General Assembly. *See* N.C. GEN. STAT. § 1-72.2; *see also, e.g., Fisher-Borne v. Smith*, 14 F.Supp.3d 699 (M.D.N.C. 2014) (granting intervention under Section 1-72.2). Permissive or mandatory intervention is thus plainly appropriate under Federal Rule of Civil Procedure 24.

## BACKGROUND

In relevant part, the Act provides that public multiple-occupancy restrooms, changing facilities, and showers shall be used only by persons of the same "biological

sex" reflected on their birth certificates. 2015 Bill Text NC H.B. 2B (Mar. 23, 2016), amending N.C. Gen. Stat. § 115C-47. The Act explicitly allows public agencies to make accommodations for persons needing them through single-occupancy facilities, *id.* §§ 1.2(C), 1.3(C), and the Act does nothing to prevent the development of different policies in privately-owned restrooms, changing facilities, and showers.

The Act was passed by special session of the General Assembly on March 23, 2016, provoking a flurry of legal activity. The ACLU filed the present action on March 28, 2016, asserting claims under the Equal Protection and Due Process Clauses and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* They seek declaratory relief and preliminary and permanent injunctive relief.

Subsequently, on May 4, 2016, the Department sent letters to Governor McCrory, the DPS Secretary and the UNC President, claiming that the Act facially violated two federal laws in addition to Title IX—Title VII of the Civil Rights Act of 1964 and the Violence Against Women Act (VAWA). The Department gave each recipient until Monday, May 9 to repudiate the Act and, additionally, to put in place new policies whereby persons who declare their "gender identity" to diverge from their biological sex be allowed to use the public bathroom, locker, and shower facilities of their choosing.

In response, on May 9, 2016, three declaratory judgment actions were filed. Proposed Intervenors sued the Department in the Eastern District of North Carolina seeking a declaration that the Act facially complies with Title VII, Title IX, and VAWA and that the Department's actions violate both the Administrative Procedure Act and the United States Constitution. Complaint, *Berger v. United States Dep't of Justice*, No.

4

5:16-cv-00240 (E.D.N.C. May 9, 2016) ("Berger Complaint") (App'x A). The Governor and the DPS Secretary also sued the Department in the Eastern District, seeking a declaration that the Act complies with Title VII and VAWA, but without mentioning Title IX. Complaint, *McCrory v. United States*, No. 5:16-cv-00238 (E.D.N.C. May 9, 2016) ("McCrory Complaint") (App'x B). The Department then filed suit in this Court against Governor McCrory, the DPS, UNC, and UNC's Board of Governors, seeking a declaration that the Act facially violates Title VII, Title IX, and VAWA, and seeking preliminary and permanent injunctive relief. Complaint, *United States v. State of North Carolina et al.*, No. 1:16-cv-00425 (M.D.N.C. May 9, 2016) ("DOJ Complaint") (App'x C). Proposed Intervenors moved to intervene in that action on May 17, 2016.

Proposed Intervenors, in their official capacities as leaders of the North Carolina General Assembly, now seek to intervene in this action, both permissively under Rule 24(b), and by right under Rule 24(a), to defend the validity of the Act.

## ARGUMENT

I.  **The Court should grant permissive intervention, under Rule 24(b), to ensure that the Act receives the strongest possible defense.**

Permissive intervention is appropriate under Rule 24(b) when "an applicant's claim or defense and the main action have a question of law or fact in common," and when the proposed intervention is "timely" and will not "unduly prejudice or delay the rights of the original parties." *See* FED. R. CIV. P. 24(b)(1)(B); 24(b)(3); *Wright v. Krispy Kreme Doughnuts, Inc.*, 231 F.R.D. 475, 479 (M.D.N.C. 2005); *see also generally* 6-24 MOORE'S FEDERAL PRACTICE—CIVIL §§ 24.10-24.11 (3d ed. 1997)). Whether to permit

5

intervention lies within the Court's sound discretion, *Hill v. Western Elec. Co.*, 672 F.2d 381, 385-86 (4th Cir. 1982), but the Fourth Circuit has counseled that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Under these standards, the Court should permit Senator Berger and Speaker Moore to intervene.

### A. The General Assembly's leaders have claims and defenses that share multiple common questions of law and fact with the ACLU's action.

The key factor under Rule 24(b)—namely, whether movant has claims or defenses that share "a common question of law or fact" with the main action—is plainly met here.

First, lying at the heart of this suit (as well as the three related suits) is the ACLU's novel theory equating "gender identity" with biological sex for purposes of constitutional and civil rights law. *See, e.g.,* ACLU Amended Compl. at ¶27 ("Gender identity is the primary determinant of sex."). The ACLU's theory is nearly identical to the one advanced by the Department in the related suits in which Intervenors are already parties (or proposed intervenors). *See, e.g.,* DOJ Compl. at ¶32 ("For individuals with aspects of their sex that are not in alignment, the person's gender identity is the primary factor in terms of establishing that person's sex.").

Thus, all four actions—this suit, the *Berger* and *McCrory* actions pending in the Eastern District, and the Department's action pending in this Court—raise multiple common questions of law and fact. As to law, both the ACLU and the Proposed

6

Intervenors seek declaratory judgments concerning whether the Act violates Title IX as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[1] The ACLU's claims and Intervenors' proposed claims and defenses thus require resolution of the same legal questions. *See, e.g.,* Prop. Answer, at ¶¶ 81-126, 131-151 (responding to the ACLU's legal claims and asserting parallel counter-claims).

As to fact, both the ACLU's complaint and Intervenor's proposed answer raise factual allegations concerning precisely the same transactions—namely, the enactment and content of the Act. *Compare* ACLU First Amended Compl. at ¶¶141-158, *with* Berger Compl. at ¶¶21-28 *and* Prop. Answer at ¶¶132-142. Indeed, the ACLU's complaint quotes statements allegedly made by both of the Proposed Intervenors, as well as by other legislators.[2] The Complaint further challenges virtually every aspect of the process used to pass the Act. *See* ACLU First Amended Compl. at ¶¶145-155, 158 (challenging call of the special session, its cost, sufficiency of notice, time allotted for comment, number of senators present for the vote, and speed of passage).

---

[1] The ACLU's suit does not allege violations of Title VII at present. But its First Amended Complaint does assert that Plaintiff Carcaño "is currently in the process of pursuing and exhausting administrative remedies before the Equal Employment Opportunity Commission with respect to his rights under Title VII . . . ." Amended Compl., at ¶57. As noted, the related Berger, McCrory and Department actions all address Title VII.

[2] *See* ACLU First Amended Compl., at ¶144 (quoting a press release by "the Speaker of the House, Tim Moore"); *id.* at ¶156 (citing "comments made by lawmakers both during the debate, in the press, and through their social media"); *id.* at ¶156(a) (quoting three statements by "State Senate President Pro Tempore Phil Berger"); *id.* at ¶156(b) (quoting "State Senator Buck Newton"), ¶156(c) (quoting "State Senator David Curtis"); *id.* at ¶156(d) (quoting "State Senator Andrew Brock"); *id.* at ¶156(e) (quoting Speaker Moore); *id.* at ¶156(f) (quoting "State Representative Mark Brody"); *id.* at ¶156(g) (quoting "State Representative John Blust"); *id.* at ¶157 (criticizing "debate in both chambers of the North Carolina General Assembly").

7

Second, the Proposed Intervenors are the leaders of the Legislative Branch of the North Carolina government, which is directly subject to the requirements of the Act, would be directly subject to the ACLU's proposed remedies under the Fourteenth Amendment, and is not subject to the authority of the Governor or the other defendants here. Thus, in their capacities as the leaders of the Legislative Branch, Intervenors are subject to most of the same claims as the defendants in the main action, and have the same defenses.

For all of these reasons, the Proposed Intervenors' claims and defenses therefore share multiple common questions of law and fact with the main action.

## B. This intervention is timely and will not delay the case's resolution or prejudice the original parties.

Rule 24(b) also requires that an intervention motion be "timely" and not "unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(1); 24(b)(3). The proposed intervention easily satisfies both requirements.

First, the motion is undoubtedly timely, given that the main action is less than two months old and no responsive pleadings have yet been filed by any existing defendants.[3] By way of comparison, courts in this Circuit have granted motions to intervene filed one, six, and nine months—and even up to two years—after the filing of a complaint. *See,*

---

[3] *See Alt v. United States EPA*, 758 F.3d 588, 591 (4th Cir. 2014) (examining progress of suit in determining timeliness); *see also, e.g.*, *Ohio Valley Envtl. Coalition, Inc. v. McCarthy*, 313 F.R.D. 10, 17 (S.D. W.Va. 2015) (holding intervention timely when "other than filing the Complaint, Amended Complaint, and Answer, no other action had taken place in this case before [applicant] filed its motion to intervene"); *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely.").

*e.g.*, *Alt*, 758 F.3d at 589 (one and six months); *Wright*, 231 F.R.D. at 478 (nine months); *CVLR Performance Horses, Inc. v. Wynne*, No. 6:11-cv-00035, 2013 WL 6409894, at *1-2 (W.D. Va. Dec. 9, 2013) (two years), *aff'd*, 792 F.3d 469 (4th Cir. 2015).

Second, for largely the same reasons, the proposed intervention will not unduly delay or prejudice adjudication of the original parties' rights. For instance, the intervention could not possibly complicate discovery, since none has yet occurred. *See, e.g., Liner v. DiCresce*, 905 F. Supp. 280, 294 (M.D.N.C. 1994) ("The parties have not engaged in any discovery, so adding new plaintiffs will not require any duplication of discovery nor create any undue delay."); *Stuart v. Huff,* 706 F.3d 345, 355 (4th Cir. 2013) (finding undue delay when adding parties would complicate discovery). And while the ACLU may have to respond to additional arguments if intervention is granted, the ACLU "can hardly be said to be prejudiced by having to prove a lawsuit it chose to initiate." *Security Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). In sum, "[a]t this early stage of the case, where even the named defendants are not yet required to answer, no prejudice to plaintiffs can be shown." *Marshall v. Meadows*, 921 F. Supp. 1490, 1492 (E.D. Va. 1996). Furthermore, the fact that the ACLU has now moved for a preliminary injunction only underscores the need to allow the Proposed Intervenors to enter the case and advance their specific and unique institutional interests in defending the validity of the Act, as described in greater detail below.

9

**C.** **Unlike existing defendants, the General Assembly's leaders have general oversight of the Act with respect to all functions of North Carolina government—and the Legislative Branch itself.**

In addition to the factors set forth in Rule 24(b), a Court deciding whether to grant permissive intervention may consider other factors, such as "the nature and extent of the intervenor's interest," the intervenor's "standing to raise relevant legal issues," and whether the intervenor will "significantly contribute to the full development of the underlying factual issues" and, by extension, the underlying legal arguments.[4] These additional considerations also strongly support permissive intervention.

First, as leaders of the Legislative Branch, which is subject to both the Act and the constitutional provisions invoked by the ACLU, Proposed Intervenors have a concrete legal interest in defending the Act. They are expressly authorized by North Carolina law to defend the Act in litigation. *See* N.C. GEN. STAT. § 1-72.2 (Speaker and President pro tem "jointly have standing to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution"). That is a sufficient basis for intervention.

Second, for the same reasons, the Proposed Intervenors clearly have standing to defend the Act in federal court.[5] Thus, they are not merely "concerned bystanders"

---

[4] *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (quoting *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977)), *vacated on other grounds*, *Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013); *see also, e.g., L.S. v. Cansler*, 2011 U.S. Dist. LEXIS 139311, at 4-5 (E.D.N.C. Dec. 5, 2011) (citing *Spangler, supra*); *and see generally* 6-24 MOORE'S FEDERAL PRACTICE, at §24.10[2][b] (discussing range of factors governing permissive intervention).

[5] *See, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997) (confirming that "state legislators have standing to contest a decision holding a state statute unconstitutional if

10

lacking a cognizable interest in the litigation, *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (internal quotations omitted), but are instead state officials legally designated by North Carolina to act on the legislature's behalf in defending challenged laws. These considerations not only support the right to intervene under Rule 24(a), *see infra* part II, but *a fortiori* they strengthen the case for permissive intervention under Rule 24(b).

Third, the Proposed Intervenors' interests in the Act are broad and comprehensive. Unlike the other named defendants, the leaders of the General Assembly have general oversight of *all* areas of North Carolina government potentially impacted by litigation over the Act's validity. For example, the General Assembly oversees not only the maintenance and financing of North Carolina's higher education system, including UNC and "the other public institutions of higher education," N.C. Const. Art. IX, §§ 8, 9; *id.* Art. V, § 12, but also the organization and financing of all public schools, N.C. Const. Art. IX, § 2, and the organization of public educational districts, *id.* Art IX, § 4.

None of the existing defendants has the General Assembly's comprehensive authority over the areas potentially impacted by the ACLU's challenge. For instance, while having some role in public education, the Governor lacks the General Assembly's broad authority over state educational budgeting, funding, and governance. As the North Carolina Supreme Court has explained, the state constitution's "mandate" for establishing public schools is "exclusively within the province of the General Assembly." *Moore v.*

---

state law authorizes legislators to represent the State's interests") (citing *Karcher v. May*, 484 U.S. 72, 82 (1987)); *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2664 (2013) (noting that "a State must be able to designate agents to represent it in federal court").

*Board of Education*, 193 S.E. 732, 733 (N.C. 1937). That authority extends to setting school district boundaries and selecting which education programs to fund.[6] The General Assembly also retains supervisory authority over the State Board of Education and county educational systems—authority the Governor lacks. *Hughey*, 253 S.E.2d at 900; *State v. Williams*, 117 S.E.2d 444, 447 (N.C. 1960). Finally, while the Governor "prepare[s] and recommend[s]" a comprehensive annual state budget, and "administers" it, the General Assembly alone "enact[s]" the budget. N.C. Const. Art. III, § 5.

Consequently, although the Governor may have limited ability to defend the Act with respect to the education funding threatened by the Title IX claims, it is not clear that he can or will do so here. As noted, the Governor has not been named as a defendant in the ACLU's Title IX claims. Likewise, the Department's letter to the Governor did not mention Title IX and the Governor's own declaratory judgment action did not raise a Title IX claim. By contrast, the Proposed Intervenor's declaratory judgment action, as well as the proposed pleading accompanying its intervention motion here, raise numerous defenses and counterclaims regarding Title IX.

The same considerations apply to the UNC defendants. Those entities do not have comprehensive authority over public education in North Carolina, and they have no role in local public education. But any judgment against them will impact funding for all educational programs throughout the State. Only the Proposed Intervenors have broad

---

[6] *Leandro v. State*, 488 S.E.2d 249, 258 (N.C. 1997); *Hughey v. Cloninger*, 253 S.E.2d 898, 900 (N.C. 1979); *Kings Mt. Bd. of Educ. v. N.C. State Bd. of Educ.*, 583 S.E.2d 629, 633 (N.C. App. 2003).

12

legislative and oversight authority over state public education at all levels, and consequently they are in a far better position to comprehensively defend *all* of North Carolina's interests in avoiding a potentially catastrophic loss of federal funding.

Finally, there can be no doubt that the nature and extent of Proposed Intervenor's interests, their standing, and their familiarity with the facts make them eminently suited to defend this action. As noted above, the ACLU's First Amended Complaint criticizes at length the legislative process used in passing the Act, as well as the statements, motives and actions of various legislators involved—including specifically Speaker Moore and Senator Berger. No existing defendant has Intervenors' familiarity with the genesis of the Act. Moreover, the ACLU challenges the very authority of the General Assembly to enact legislation designed to preempt local ordinances. *See* ACLU First Amended Compl., at 30 ("The events leading to H.B. 2, contemporary statements by decisionmakers, and departures from the normal legislative process revealed a series of official actions taken for invidious purposes.") But the state constitution expressly gives the General Assembly the power to supersede or preempt local laws in conflict with general or uniformly applicable laws, *see* N.C. Const., Art. XIV, § 3, and no one is better situated to protect this power than the Proposed Intervenors.

In sum, these additional considerations strongly counsel in favor of allowing the Proposed Intervenors to enter the lawsuit so that at least one party is presenting a vigorous and comprehensive defense of the Act with respect to all aspects of North Carolina government put in jeopardy by the ACLU's action.

## II. Alternatively, Senator Berger and Speaker Moore have a right to intervene under Rule 24(a)(2).

Although the Court need not reach the question, Proposed Intervenors also have a right to intervene under Federal Rule of Civil Procedure 24(a)(2). To establish such a right, an applicant must:

> (1) "make a timely motion to intervene; (2) have an interest in 'the subject of the action'; (3) be 'so situated that the disposition of the action may … impair or impede the applicant's ability to protect that interest'; and (4) show that he is not adequately represented by existing parties."

*Fisher-Borne*, 14 F.Supp.3d at 702 (quoting FED. R. CIV. P. 24(a)(2); *Wright*, 231 F.R.D. at 477). As noted above, these intervention factors should be given a "liberal" application so to as to "dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller*, 802 F.2d at 729 (internal quotations and citation omitted). The Court must accept as true the non-conclusory allegations of the motion and the accompanying pleading.[7]

### A. The motion to intervene is timely.

As already shown, the motion to intervene is timely because it was filed less than two months after the ACLU filed its action and, moreover, before any responsive pleadings were filed. For the same reasons, the intervention will not unduly delay the action or prejudice existing parties. *See supra* part I.B.

---

[7] *See Chesapeake Bay Found. v. Am. Recovery Co.*, 769 F.2d 207, 209 n.* (4th Cir. 1985) (absent "evidentiary testing," the court "must accept plaintiffs' allegations as true""); *Va. Uranium, Inc. v. McAuliffe*, 2015 U.S. Dist. LEXIS 141459, *6 (W.D. Va. Oct. 19, 2015); *see also Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) (collecting circuit court cases).

14

**B.      Proposed Intervenors have a significantly protectable interest.**

To justify intervention of right a movant's interest must also be "'significantly protectable,' … meaning that the interest must be more than a general concern with the subject matter." *Fisher-Borne*, 14 F.Supp.3d at 703 (citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The Proposed Intervenors easily meet this standard.

First, as noted, Proposed Intervenors are directly responsible for the Legislative Branch of the North Carolina Government.  That Branch is subject to the Act and, if the ACLU's position prevailed here, it would therefore suffer the same harm as all other state entities.  *See supra* part I.C.

Second, North Carolina law expressly empowers the Intervenors to defend challenged state laws. *See supra* part I.C.; N.C. GEN. STAT. § 1-72.2.  A recent decision from this District has already determined, correctly, that this statute creates a sufficient interest under Rule 24(a) by "provid[ing] a … mechanism through which the Speaker of the House and President Pro Tempore of the Senate may defend laws passed by the North Carolina General Assembly." *Fisher-Borne*, 14 F.Supp.3d at 703 (citing N.C. GEN. STAT. § 1-72.2) *see also* Order granting motion to intervene, *American Civil Liberties Union v. Tennyson*, No. 13-1030 (dkt. no. 43), 815 F.3d 183 (4th Cir. 2016).

Third, Proposed Intervenors have an interest in protecting North Carolina's public education system. As explained, the General Assembly alone has comprehensive authority over the structure, governance, and financing of that system. *See supra* part I.C. The system's integrity is directly imperiled by the ACLU's attempt to force a radical revision of basic privacy and security in public restrooms, locker rooms, and shower

15

facilities—a revision, moreover, that once accomplished would extend to numerous other areas. *See*, *e.g.*, Department of Education, *Dear Colleague Letter on Transgender Students* (May 13, 2016), *available at* http://1.usa.gov/25aBJLM (noting impacts on education records, identification documents, athletics, and housing accommodations).

North Carolina stands to lose billions in federal educational funds which are placed in jeopardy by this action. According to the ACLU, the State has received over $4 billion in such funds, both in direct funding to the school and funding to the students via mechanisms such as Pell Grants. For perspective, the entire state budget is $21.7 billion and the entire UNC budget is $2.7 billion. 2015 NC H.B. 97 (enacted Sep. 18, 2015). Loss of this funding would be a catastrophic result that the General Assembly has an overwhelming interest in preventing. No other existing defendant would bear ultimate responsibility for administering such a loss.

Fourth, the Proposed Intervenors have an interest in vindicating the General Assembly's core lawmaking function. *See, e.g.*, *Coleman v. Miller*, 307 U.S. 433, 438 (1939) (state legislators have "a plain, direct and adequate interest in maintaining the effectiveness of their votes"). At a minimum, as leaders of the General Assembly, the Proposed Intervenors have an interest in defending the Act's sensible balancing of privacy, security, and personal dignity. More profoundly, the Proposed Intervenors have a keen interest in safeguarding the overall integrity of North Carolina law, which in numerous areas recognizes the basic distinction between "male" and "female." *See*, *e.g.*, N. .C. Gen. Stat § 14-33 (rape laws); N.C. Gen. Stat. § 78C-86(3) (athletic programs);

16

N.C. Gen. Stat. § 153A-228 (segregation in prisons). At bottom, the ACLU's action seeks to radically redefine those basic categories.

### C. Disposition of the main action may impair or impede the Proposed Intervenors' ability to protect their interests in defending the Act.

For the same reasons, disposition of the ACLU's action will "impair or impede" the Proposed Intervenors' interests. If the Act is invalidated, the following interests will be *directly* impeded: (1) the Intervenors' ability to govern the Legislative Branch; (2) their statutorily-conferred interest in defending the Act (*see* N.C. GEN. STAT. § 1-72.2); (3) their authority over North Carolina's system of public schools; (4) their constitutional authority to preempt local laws; and (5) their interests in protecting the integrity of North Carolina's laws—namely, the ubiquitous distinction between "male" and "female."

### D. Because the existing defendants have only limited authority, they may not be in a position to fully defend the Act across all state functions.

Finally, Proposed Intervenors' interests are not adequately represented by the existing parties. An intervenor's burden to show inadequate representation "'should be treated as minimal.'" *Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). The movant need *not* show that the current representation of his interests will "definitely" be inadequate," only that it "may be" inadequate." *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 289 (4th Cir. 2009) (citing *Trbovich*, 404 U.S. at 538 n.10; *Teague*, 931 F.2d at 262). "Many factors may suggest inadequate representation." *Titan Atlas Mfg. v. Sisk*, 2014 U.S. Dist. LEXIS 27094, at 15 (W.D. Va. Mar. 4, 2014), such as (1) whether the

17

interests of intervenors and existing parties are identical or may diverge[8]; (2) whether intervenors have "stronger incentives" to defend their interests than existing parties[9]; and (3) whether intervenors raise additional legal theories.[10] Under these standards, numerous grounds suggest the Intervenors' interests are inadequately represented.

First, as explained, among existing parties only the Proposed Intervenors can represent North Carolina's general interests in the validity of the Act across all areas of North Carolina government—and across all areas of North Carolina law potentially impacted by the ACLU's radical position in this case. None of the existing defendants can do so. By contrast, the Proposed Intervenors are specifically empowered to do so by state law. *See supra* part I.C.

Second, among existing parties only the Proposed Intervenors can represent North Carolina's general interests in the integrity and financial solvency of its public educational system. As explained, the Governor, UNC, and the North Carolina Board of Governors all lack the comprehensive interests in North Carolina's system of public education expressly delegated to the General Assembly under the North Carolina Constitution. *See supra* part I.C.

---

[8] *See, e.g., In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (noting interests may converge in some respects but diverge in others); *Felman Prod. v. Indus. Risk Insurers*, 2009 U.S. Dist. LEXIS 117672, at 9-10 (S.D. W.Va. Dec. 16, 2009) (granting intervention when interests of parties and intervenor "are not coextensive") (citing *Teague*, 931 F.2d at 262); *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, 2016 U.S. Dist. LEXIS 16610, at 16 (E.D. Va. Feb. 9, 2016) (finding "distinguishable interests" sufficient for intervention).

[9] *Titan Atlas*, 2014 U.S. Dist. LEXIS at 16; *Teague*, 931 F.2d at 262.

[10] *Titan Atlas*, 2014 U.S. Dist. LEXIS at 15-16 (citing *JLS*, 321 F.App'x at 291).

Case 1:16-cv-00236-TDS-JEP   Document 34   Filed 05/25/16   Page 24 of 28

Third, specifically with respect to the crucial Title IX component of the ACLU's action, Proposed Intervenors have a direct interest in defending the Act that the existing parties lack. As already explained, the Governor declined to raise a Title IX claim in his declaratory judgment action, has not been named in the Title IX count here, and Title IX was not addressed in the Department's letter to the Governor—all of which suggest that the Governor may lack standing to litigate the Title IX claims. Moreover, UNC lacks the Proposed Intervenors' top-to-bottom interest in public education.

Finally, the North Carolina Attorney General, who was previously a defendant in this action, has publicly attacked the Act and refused to defend it in court. While it is the attorney general's duty to defend North Carolina whenever it is sued, *see* N.C. GEN. STAT. § 114-2(1), here the attorney general has instead publicly called the Act "a national embarrassment," argued that the Act violates federal law, and declined to defend any of the existing parties in legal challenges to the Act. *See* Anne Blythe, *NC Attorney General Refuses to Defend State from HB2 Legal Challenge*, THE NEWS & OBSERVER (Mar. 29, 2016), *available at:* http://www.newsobserver.com/news/politics-government/state-politics/article 68780657.html.[11]

---

[11] For all of these reasons, no "presumption of adequacy of representation" applies here. *See Stuart v. Huff*, 706 F.3d 345, 350-51 (2013). First, this is not a case where private parties seek to join government parties in defending a statute. *See, e.g., United States v. N.C.*, 2014 U.S. Dist. LEXIS 14787 (M.D.N.C. Feb. 6, 2014) (denying motion by private group to intervene). Instead, Intervenors are themselves government actors specifically designated to defend the Act. Second, this is not a case where the Intervenors share the same objectives as existing parties. *Cf., e.g., Stuart*, 706 F.3d at 351. Instead, the Intervenors' interests in defending the Act are both different from existing defendants' interests (because Intervenors alone can defend the prerogatives of the Legislative Branch) and more comprehensive (because Intervenors alone can defend the Act across all government functions).

19

Consequently, absent intervention by the leaders of the General Assembly, this case will lack participation by any state official with broad authority to vigorously defend the North Carolina law. That would be a glaring omission, given the radical nature of the ACLU's action—which not only seeks to undermine the integrity and solvency of North Carolina's educational system, but also seeks to deprive the North Carolina General Assembly of its authority to protect the privacy and safety of North Carolina's citizens.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully ask the Court to grant them intervention, either permissively or by right.

Respectfully submitted,

By: /s/ S. Kyle Duncan

S. KYLE DUNCAN* (DC Bar #1010452)
  *Lead Counsel*
GENE C. SCHAERR* (DC Bar #416638)
SCHAERR | DUNCAN LLP
1717 K Street NW, Suite 900
Washington, DC 20006
202-714-9492
571-730-4429 (fax)
kduncan@schaerr-duncan.com
gschaerr@schaerr-duncan.com
*Specially Appearing Pursuant to Local*
*Civil Rule 83.1(d)*

By: /s/ Robert D. Potter, Jr.

ROBERT D. POTTER, JR. (NC Bar #17553)
ATTORNEY AT LAW
2820 Selwyn Avenue, #840
Charlotte, NC 28209
704-552-7742
rdpotter@rdpotterlaw.com

*Attorneys for Proposed Intervenors*

May 25, 2016

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/  S. Kyle Duncan
S. Kyle Duncan
*Attorney for Proposed Intervenors*