UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOAQUÍN CARCAÑO, et al.,

    *Plaintiffs*,

v.

PATRICK MCCRORY, et al.,

    *Defendants and
Defendants-Intervenors*.

No. 1:16-cv-00236-TDS-JEP

**PLAINTIFFS' OPPOSITION TO THE UNIVERSITY OF NORTH CAROLINA
DEFENDANTS' MOTION TO STAY PROCEEDINGS**

The motion to stay the proceedings in this case as to the UNC Defendants should be denied, and the Court should proceed to decide Plaintiffs' motion for a preliminary injunction.[1] H.B. 2 violates Plaintiffs' constitutional rights to equal protection and substantive due process. It also, as this Circuit's binding precedent holds, violates Plaintiffs' statutory right under Title IX to be free from sex discrimination. *See G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, No. 15-2056, __ F.3d __, 2016 WL 1567467 (4th Cir. Apr. 19, 2016). Plaintiffs are entitled to have their claims resolved, and in particular, to obtain prompt adjudication of their request for preliminary relief. None of the reasons

---

[1] "UNC Defendants" refers to Defendants the University of North Carolina, the Board of Governors of the University of North Carolina, and W. Louis Bissette, in his official capacity as Chair of the Board of Governors of the University of North Carolina. For purposes of this brief, "Plaintiffs" refers to Plaintiffs Joaquín Carcaño, Payton Grey McGarry, H.S., by her next friend and mother, Kathryn Schafer, and the American Civil Liberties Union of North Carolina.

1

proffered by the UNC Defendants to support their extraordinary request to put Plaintiffs' claims against them on hold indefinitely—while Plaintiffs continue to suffer harm—withstands scrutiny.

## ARGUMENT

The Supreme Court has made clear that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "[I]f there is even a fair possibility that the stay . . . will work damage to someone else," then the movant "must make out a clear case of hardship or inequity in being required to go forward." *Id.*

The UNC Defendants have offered *no* explanation of what hardship or inequity they face in defending this case at this time; indeed, they admit that they must defend their compliance with H.B. 2 before this Court regardless of the disposition of their motion. Meanwhile, Plaintiffs endure harm every day that H.B. 2 remains in effect. *See, e.g.*, Mot. for a Preliminary Injunction, ECF No. 22 at 6-11, 40-43 (discussing harms Plaintiffs face as a result of H.B. 2). This case falls far short of the type of "rare circumstances," *Landis*, 299 U.S. at 255, that can warrant a stay. The motion should therefore be denied.

## I. THE FOURTH CIRCUIT'S BINDING PRECEDENT IN *G.G.* WARRANTS EXPEDITIOUS RESOLUTION—NOT DELAY—OF PLAINTIFFS' TITLE IX CLAIM.

The Fourth Circuit's decision in *G.G.* counsels in favor of expeditious resolution of Plaintiffs' Title IX claim—not delay in resolving that claim. The Department of Education ("the Department") has interpreted its Title IX regulations to require that "[w]hen a school elects to separate or treat students differently on the basis of sex . . . a school generally must treat transgender students consistent with their gender identity." *G.G.*, 2016 WL 1567467, at *4; *see* ECF Nos. 23-29, 23-30. In *G.G.*, the Fourth Circuit held that the Department's interpretation was entitled to controlling weight. *Id.* at *8.

The UNC Defendants acknowledge that *G.G.* is "relevant to the resolution of the central issues in this case," ECF No. 39 (hereafter, "Mot.") at 5, and that Plaintiffs' claims here "substantially overlap with those in *G.G.*," *id.* at 18. Yet, rather than follow the controlling legal holding in *G.G.*, the UNC Defendants cite it as a reason to *delay* resolution of this case. That reasoning makes no sense.

First, the UNC Defendants contend that this case should be stayed because the defendants in *G.G.* filed a petition for *en banc* review. Mot. at 5. That contention is now moot in light of the Fourth Circuit's denial of the petition for *en banc* review. *See G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, No. 15-2056, __ F.3d __, 2016 WL 3080263 (4th Cir. May 31, 2016) (order denying *en banc* rehearing). Further, the Fourth Circuit declined to stay the issuance of the mandate in *G.G.* and accordingly recently issued its

3

mandate. *See* Ex. A (order denying stay of mandate), Ex. B (mandate).[2] "A decision of a panel of [the Fourth Circuit] becomes the law of the circuit and is binding . . . unless it is overruled by a subsequent en banc opinion . . . or a superseding contrary decision of the Supreme Court," neither of which has occurred in the *G.G.* case. *United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) (quotation marks omitted).[3] Thus, *G.G.*'s holding about the controlling effect of the Department's interpretation of its regulations is currently binding on this Court. That is so even if the defendants in *G.G.* do seek review by the Supreme Court. *Cf. Fed. Nat'l Mortg. Ass'n v. Quicksilver LLC*, No. 13-cv-987, 2014 U.S. Dist. LEXIS 139792, at *8 (M.D.N.C. Oct. 1, 2014) (noting that the possibility of reversal by the state supreme court was "merely speculative" until that court actually "agreed to hear the appeal").

Second, it appears that the UNC Defendants may be seeking a stay pending resolution of the *remand* of *G.G.* to the district court and any subsequent appeal from those proceedings.[4] To the extent this is what the UNC Defendants seek, their proffered

---

[2] Except where otherwise specified, exhibit numbers herein (*e.g.*, Ex. _) refer to exhibits to the Declaration of Paul M. Smith in Support of Plaintiffs' Opposition to the University of North Carolina Defendants' Motion to Stay Proceedings ("Smith Decl.").

[3] *See also, e.g., Chambers v. United States*, 22 F.3d 939, 942 n.3 (9th Cir. 1994) ("[O]nce a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court."), *vacated on other grounds*, 47 F.3d 1015 (9th Cir. 1995).

[4] It is not entirely clear from the UNC Defendants' motion whether they seek a stay pending final resolution of the petition for *en banc* review of *G.G.*, which has since been denied, or whether they seek a stay pending the result of the remand proceedings in *G.G.* and any subsequent appeal to the Fourth Circuit. *Compare* Mot. at 6 (referencing final judgment in the *G.G.* case), *with id.* at 18 (referencing final decision in the appeal of the

4

reasoning—that a "final decision in [*G.G.*] might affect the outcome" of plaintiffs' Title IX claim in this case, Mot. at 18—is woefully overbroad and insufficient to support a stay. The Fourth Circuit's decision in *G.G.* already resolved the legal question posed by Plaintiffs' Title IX claim: whether Title IX requires the UNC Defendants to "treat transgender students consistent with their gender identity." *G.G.*, 2016 WL 1567467, at *4. There is nothing to be gained by waiting for the remand proceedings in *G.G.* The Fourth Circuit remanded that case because the district court applied the wrong evidentiary standard in balancing the hardships. *Id.* at *9-10. This Court is charged with considering the evidentiary record in *this* case, and with applying the controlling precedent of *G.G.* to that evidence.

## II. THE PENDENCY OF *UNITED STATES V. NORTH CAROLINA* BEFORE THIS COURT LIKEWISE DOES NOT WARRANT A STAY OF THIS CASE AS TO THE UNC DEFENDANTS.

The pendency of a Title IX claim in *United States v. North Carolina*, No. 1:16-cv-00425 (M.D.N.C. filed May 9, 2016), also does not warrant a stay of Plaintiffs' case against the UNC Defendants. It is worth noting that the UNC Defendants apparently agree that litigation challenging H.B. 2 should be allowed to proceed in some fashion, even against them, notwithstanding the pendency of *G.G.* But it makes no sense to stay the first-filed case challenging H.B. 2—in which there is already a pending motion for preliminary injunction—in favor of a later-filed case that does not even involve all of the

---

preliminary injunction in *G.G.* to the Fourth Circuit). Because the UNC Defendants did not submit a proposed order in support of their motion, it is not clear what specific relief they seek.

same claims.  The UNC Defendants assert that, because *United States v. North Carolina* is a dispute between "the governments responsible for the enforcement of the Act and Title IX," Mot. at 12, the instant case should be stayed.  In support of this contention, the UNC Defendants state that "[i]t is in the interest of justice that, to the extent possible, the claims at issue in this case be resolved in an action between the governments that administer and enforce the relevant statutes rather than in this action between private parties and the University." *Id.*

The UNC Defendants offer no explanation—or citation to any legal authority—for why that should be so.  Nor can they: justice is not served by forcing the actual *people* affected by a law to stand aside.  Plaintiffs are the ones who suffer by being forced to use facilities discordant with their gender identities.  *See* Mot. for Preliminary Injunction at 6-11, 40-43 (discussing the that H.B. 2 causes Plaintiffs).  The federal government's interest in litigating Title IX, while undoubtedly important, should not preclude litigation by the actual people whose rights and dignity are affected by the law.  *Cf. Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) (holding that Title IX may be enforced by private litigants).  This litigation and the litigation brought by the United States are not mutually exclusive, and both can proceed in parallel.

Moreover, the instant case, unlike *United States v. North Carolina*, includes constitutional claims in addition to the Title IX claim.  The UNC Defendants offer no explanation for why Plaintiffs' constitutional claims should be halted pending resolution of the Title IX claim in *United States v. North Carolina*.  Furthermore, because the UNC

Defendants seek only a stay as to themselves, the constitutional claims will nevertheless proceed as to Defendant McCrory whatever the resolution of the stay motion. That would lead to inefficient, piecemeal litigation, which undercuts the very reason that the UNC Defendants proffer for a stay.

Finally, proceeding concurrently with both this case and *United States v. North Carolina* best promotes judicial economy. Both cases are proceeding before this Court, thus eliminating the risk of inconsistent Title IX rulings. If the UNC Defendants believe their Title IX arguments are the same in both cases, then they should face little difficulty in simply cross-referencing their Title IX arguments.

The UNC Defendants accordingly have not met the burden that rests on them to demonstrate that this case is one of the "rare circumstances," *Landis*, 299 U.S. at 255, warranting a stay pending the outcome of *United States v. North Carolina*.

## III. A STAY WOULD SUBSTANTIALLY HARM PLAINTIFFS.

A stay of this case against the UNC Defendants would substantially harm Plaintiffs. Every day that H.B. 2 is not enjoined, Plaintiffs suffer. Plaintiff Joaquín Carcaño works for a UNC school, and Plaintiffs Payton Grey McGarry and H.S attend UNC schools. By requiring Plaintiffs to use restrooms on its campuses that do not align with their gender identity, H.B. 2 places Plaintiffs in the position of choosing between three harmful options: they can (1) attempt to avoid the restrooms in the places they live, work, and study—an option that will often prove impractical if not impossible, and can cause serious psychological and physical harm; (2) disclose their transgender status to

7

others in and around the restrooms that they use—which may cause psychological distress and lead to harassment and violence; or (3) violate both their school policy and state law, risking not only harassment and violence, but also disciplinary or other legal consequence. *See* Mot. for Preliminary Injunction, ECF No. 22 at 40-41; *see also Glenside W. Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118, 1133 (D.N.J. 1991) ("Courts have granted injunctive relief where the applicant for such relief shows he or she may be subjected to violence without injunctive relief."). Moreover, every day that H.B. 2 is not enjoined, Plaintiffs suffer the dignitary harm of being declared different and less valuable by the UNC Defendants. *See Baskin v. Bogan*, 12 F. Supp. 3d 1137, 1140 (S.D. Ind. 2014) (holding that dignitary harms constitute irreparable injuries).

Instead of confronting any of the evidence Plaintiffs offered in their motion for a preliminary injunction regarding the harm they face every day that H.B. 2 is not enjoined, the UNC Defendants offer a series of evasive statements about the meaning and effect of H.B. 2, as well as contradictory assertions about their compliance with H.B. 2. The UNC Defendants' effort to weave their way out of Court must be rejected.

First, the UNC Defendants advance mutually exclusive versions of their interaction with the challenged statute, admitting that they have taken steps to come into full *compliance* with H.B. 2, but insisting that these steps do not constitute what they view as *enforcement* of H.B. 2. That distinction is logically incoherent and factually unsupportable. H.B. 2 mandates that all public agencies in the state, including UNC, "shall require" compliance with its statutory provisions. N.C. Gen. Stat. § 143.760(b).

8

On April 5, 2016, President Margaret Spellings sent a memorandum to the chancellors of all 17 constituent UNC schools instructing that each of them "must require" that every multiple-occupancy restroom and changing facility be designated for and used "only by persons based on their biological sex." ECF No. 38-5 at 1 (Ex. 4 to the Spelling Affidavit relied upon by the UNC Defendants). President Spellings' memorandum further directs each school to take action to "fully meet their obligations under the Act." *Id.* And President Spellings' memorandum makes clear that "the University is required to fulfill its obligations under the law unless and until the court directs otherwise." *Id.* at 2. Days later, on April 11, 2016, President Spellings reiterated that "[a]s a state institution, the University is bound to comply with HB2 and all other laws passed by the General Assembly and signed by the Governor." Ex. C.

Thus, President Spellings has taken the unequivocal position that UNC will follow H.B. 2; she has communicated that position to every single school within UNC; and she has mandated that each school "must require" facility usage in accordance with so-called "biological sex," rather than gender identity. Consistent with President Spellings' instruction that schools must "[p]rovide notice of H.B. 2 to campus constituencies as appropriate," ECF No. 38-5 at 2, schools have also sent campus-wide emails regarding compliance with H.B. 2, which Plaintiffs have personally received. For example, UNC-Chapel Hill officials sent an email to staff and students stating that "there is no question that many in our LGBTQ community and many others are feeling unwelcome, unsafe, and unhappy in the communities where they live and work" and that "the law relating to

9

public restrooms and changing facilities does apply to the University." *See* Exs. D, E. Likewise, UNC-Greensboro sent out an email linking to President Spellings' memorandum and noting that H.B. 2 had already had "concrete consequences" for the school. *See* Declaration of Payton McGarry at Ex. A and ¶ 1.

In light of this evidence, President Spellings' current professed assurance that she will refrain from promulgating regulations regarding restroom usage by transgender students—an assurance offered solely in litigation, and not publicly or even in the University's correspondence with the U.S. Department of Justice regarding H.B. 2—is irrelevant at best. Her memorandum already directed all UNC schools to *fully meet their obligations* under the Act, and she has not rescinded or altered that memorandum in any way.

Whether the UNC Defendants have taken steps to *physically remove* any transgender individuals from facilities corresponding to their gender identity is also beside the point. That is not the basis on which a Title IX claim rises or falls. The facts here are no different than in *G.G.*, where the School Board had similarly passed a resolution requiring that sex-specific facilities "shall be limited to the corresponding biological genders." 2016 WL 1567467, at *2. The School Board's adoption of this position was sufficient to support a Title IX claim that plaintiff had been "excluded from participation in an education program." *Id.* The exclusion itself was unlawful, regardless of what consequences the plaintiff might have faced for violating that exclusion.

Here, too, the UNC Defendants need not barricade restroom doors or physically remove Plaintiffs from restrooms for there to be a Title IX violation with all its attendant harms. As discussed above, H.B. 2 exposes Plaintiffs to stigma, physical and psychological harm, the disclosure of private information about their transgender status, and the threat of physical violence. Regardless of whether the UNC Defendants physically block them from restrooms corresponding to their gender identity, H.B. 2 harms Plaintiffs by subjecting them to the harms arising from complying with the law or the legal risk of violating it. As a general matter, reasonable UNC students and staff will comply with what their school mandates them to do, and President Spellings has made clear that compliance with H.B. 2 is "require[d]". ECF No. 38-5 at 2. Against that landscape, it is no answer to assert that transgender individuals can simply resort to self-help by violating these mandates—as well as state law—at their own peril. As President Spellings has admitted, H.B. 2 "remains the law of the State" and "the University has no independent power to change that reality." ECF No. 23-27 at 2-3.

Second, the UNC Defendants rely on the remarkable contention that "[t]here is nothing in [H.B. 2] that prevents any transgender person from using the restroom consistent with his or her gender identity." Mot. at 16. This is so, the UNC Defendants say, because H.B. 2 does not itself impose criminal penalties and because, in their view, it only regulates the University, not Plaintiffs: "[T]he Act directs the University of North Carolina to require that restrooms only be used by persons based on their biological sex. The Act contains no enforcement procedures or penalties. Therefore, until the University

11

takes action to enforce the Act there is nothing that prevents Transgender Plaintiffs from using the restroom of their choice." Mot. at 16 (citation omitted).

The UNC Defendants' newfound litigation position would certainly come as a surprise to the state's Legislature and Governor, who enacted a law that plainly operates to prevent Plaintiffs from using the restrooms that correspond with their gender identity. *See* Ex. F at 6 (statement by State Rep. Paul Stam dismissing as "legend" UNC's position that "HB2 has no enforcement provisions and can be disregarded").[5] There can be no doubt that the target of H.B. 2 is transgender North Carolinians, and not merely the government entities providing the restrooms. Just as individual gay and lesbian couples were permitted to challenge statutes and constitutional provisions prohibiting governments from recognizing same-sex marriages, *see Obergefell v. Hodges*, 135 S. Ct. 2584 (2015); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014)—even though many of the relevant state laws only directly regulated the duty of county clerks who issue marriage licenses—transgender individuals may challenge the provisions of H.B. 2 at issue, which the UNC Defendants have described to all school administrators, employees, and students as mandatory, and which cause Plaintiffs harm.

---

[5] *See also* N.C. Exec. Order 93 (ECF No. 23-24) § 3 ("Under current law, every multiple occupancy restroom, locker room or shower facility located in a cabinet agency must be designated for and *only used by* persons based on their biological sex." (emphasis added)); ECF No. 23-22 at 1 (statement by State Rep. Dean Arp supporting H.B. 2 because "biological men should not . . . be in women's showers, locker rooms and bathrooms").

Third, and in any event, UNC's contentions are factually erroneous. The University of North Carolina does require students to comply with a Code of Conduct, which expressly requires compliance with state law. *See, e.g.*, Ex. G at 2 (UNC-Greesnboro Student Code of Conduct, stating that "a violation of law may also be treated as a violation of University regulations" and that "[s]tudents are responsible for knowing and observing all federal and state laws"); Ex. H at *4 (UNC-Chapel Hill Honor Code, stating that "Violations of . . . federal, state, or local law may result in a violation of the student code of conduct and imposition of student discipline."). Violators are subject to disciplinary warnings, probation, suspension, or expulsion. Ex. G at 2. Plaintiffs thus are not, as the UNC Defendants contend, free to use the restrooms that correspond with their gender identity free of consequence, *see* Mot. at 16; instead, university regulations require them to comply with state law or face discipline. At the very least, whether actively enforced by the UNC Defendants or not, H.B. 2 subjects Plaintiffs to undue risk and legal uncertainty that limits their access to gender-appropriate facilities.

Fourth, the UNC Defendants' empty gesture toward their internal non-discrimination policies is meaningless given their avowed compliance with H.B. 2. A promise not to discriminate on the basis of sex, including gender identity, does no good when the promisor openly breaches its commitment. Presidents Spellings' message that "the University is bound to comply with HB2," Ex. C, makes clear that any internal nondiscrimination policy is subservient to state law. If state law also mandated that

13

restrooms be separated by race, and the school complied, the school's assurance of its philosophical commitment to nondiscrimination would ring equally hollow.

Ultimately, the UNC Defendants' effort to evade the meaning and effect of H.B. 2, and to mask their compliance with it, fails in the face of the evidence that Plaintiffs have proffered of substantial harm from the UNC Defendants' actual compliance. The UNC Defendants have fallen *far* short of their burden to "make out a clear case of hardship or inequity in being required to go forward" with this lawsuit. *Landis*, 299 U.S. at 255. Indeed, they have not offered a single example of how proceeding with this case harms them at all. To the contrary, a stay would substantially harm Plaintiffs and must therefore be denied.[6]

\* \* \*

The UNC Defendants have offered no justification for staying these proceedings. This Court is bound by the Fourth Circuit's resolution of the Title IX interpretation in *G.G.*, and Plaintiffs are entitled to a ruling on their motion for a preliminary injunction on that claim and their constitutional claims.[7]

---

[6] To the extent that the UNC Defendants' arguments regarding their alleged non-enforcement implicate standing and/or their affirmative defense of sovereign immunity, those questions are not themselves the basis for a stay. Rather, they are properly resolved as part of Plaintiffs' Motion for Preliminary Injunction, to which the UNC Defendants have already responded asserting these issues. *See generally* ECF No. 50.

[7] Furthermore, although the UNC Defendants have couched their arguments here in the context of a motion to stay, they fail to mention that granting their motion would also have the effect of denying Plaintiffs' motion for a preliminary injunction and thus would be immediately appealable as such a denial. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (holding that 28 U.S.C. § 1292(a)(1) "provide[s] appellate jurisdiction over

14

Case 1:16-cv-00236-TDS-JEP   Document 67   Filed 06/20/16   Page 14 of 16

## CONCLUSION

For the foregoing reasons, the UNC Defendants' motion for a stay should be denied.

Dated: June 20, 2016                                                       Respectfully submitted,

/s/ Christopher A. Brook
Christopher A. Brook                                    Jon W. Davidson*
N.C. State Bar No. 33838                                Tara L. Borelli*
AMERICAN CIVIL LIBERTIES UNION FOR                      Peter C. Renn*
    NORTH CAROLINA LEGAL FOUNDATION                   Kyle A. Palazzolo*
Post Office Box 28004                                   LAMBDA LEGAL DEFENSE AND
Raleigh, North Carolina 27611                               EDUCATION FUND, INC.
Telephone: 919-834-3466                                 730 Peachtree Street NE, Suite 1070
Facsimile: 866-511-1344                                 Atlanta, GA 30308-1210
cbrook@acluofnc.org                                     Telephone: 404-897-1880
                                                        Facsimile: 404-897-1884
Elizabeth O. Gill*                                      jdavidson@lambdalegal.org
Chase B. Strangio*                                      tborelli@lambdalegal.org
AMERICAN CIVIL LIBERTIES UNION                          prenn@lambdalegal.org
    FOUNDATION                                          kpalazzolo@lambdalegal.org
125 Broad St., 18th Fl.
New York, NY 10004                                      Paul M. Smith*
Telephone: 212-549-2627                                 Luke C. Platzer*
Facsimile: 212-549-2650                                 JENNER & BLOCK LLP
egill@aclunc.org                                        1099 New York Avenue, NW, Suite 900
cstrangio@aclu.org                                      Washington, D.C. 20001-4412
                                                        Telephone: 202-639-6000
                                                        Facsimile: 202-639-6066
*Appearing by special appearance                        psmith@jenner.com
pursuant to L.R. 83.1(d).                               lplatzer@jenner.com

*Counsel for Plaintiffs*

---

orders that . . . have the practical effect of . . . denying injunctions and have serious, perhaps irreparable, consequences" (internal quotation marks omitted).

**CERTIFICATE OF SERVICE**

I, Christopher A. Brook, hereby certify that on June 20, 2016, I electronically filed Plaintiffs' Response to the UNC Defendants Motion to Stay Proceedings with the Clerk of the Court, as well as the supporting declarations and exhibits, using the CM/ECF system, and have verified that such filing was sent electronically using the CM/ECF system to all parties who have appeared with an email address of record.

/s/ Christopher A. Brook
Christopher A. Brook