# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOAQUÍN CARCAÑO, *et al.*,

    *Plaintiffs*,

v.

PATRICK MCCRORY, *et al.*,

    *Defendants*,

and

PHIL BERGER, *et al.*,

    *Intervenor-Defendants*.

No. 1:16-cv-00236-TDS-JEP

## PLAINTIFFS' OPPOSITION TO
## UNC DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

I.  PLAINTIFFS' CLAIMS AGAINST UNC DEFENDANTS ARE
    JUSTICIABLE .......................................................................................... 2

    A.  UNC Defendants' Motion to Dismiss Should be Limited to the
        Facts of the Complaint—Which Adequately Plead a Justiciable
        Controversy ..................................................................................... 2

        1.  This Court's Justiciability Inquiry Should be Limited to
            the Facts of the Complaint ..................................................... 2

        2.  The Facts of the Complaint are Sufficient To Make Out a
            Justiciable Controversy ......................................................... 5

    B.  Even Taking Into Account the Factual Record, Plaintiffs' Claims
        Against UNC Defendants are Justiciable ......................................... 6

        1.  UNC Defendants Misstate the "Credible Threat"
            Requirement ........................................................................... 7

        2.  UNC is Subject to H.B. 2's Discriminatory Mandate, Is
            Empowered to Implement that Mandate, and Has Done So ............ 10

        3.  Plaintiffs Have Standing to Bring Their Title IX and
            Constitutional Claims Against the UNC Defendants ...................... 13

II. UNC DEFENDANTS ARE NOT IMMUNE FROM PLAINTIFFS'
    CONSTITUTIONAL CLAIMS ............................................................... 16

III. UNC DEFENDANTS' ATTEMPT TO DISMISS PLAINTIFFS'
     PRAYER FOR INJUNCTIVE RELIEF IS BASELESS ....................................... 17

CONCLUSION ............................................................................................... 20

CERTIFICATE OF SERVICE

# INTRODUCTION

UNC Defendants' Motion to Dismiss (ECF No. 89) re-asserts, for the third time in as many guises (*see* ECF Nos. 38, 50), their arguments regarding the alleged non-justiciability of Plaintiffs' Complaint.  But, as set forth below, to the extent that they ask this Court to pierce the Complaint and consider the factual record on this Motion to Dismiss, UNC Defendants' contentions as to justiciability are premature and procedurally improper.  And to the extent that this Court considers evidence beyond the Complaint, it will find that UNC Defendants' contentions fail as a matter of law and fact.

The simple truth is that, no matter how much ink UNC Defendants spill in their defense, they cannot obscure what is actually happening: since the passage of H.B. 2, transgender individuals on UNC campuses have **<u>not</u>** been free to use the restrooms or locker rooms that correspond to their gender identity.  Instead, UNC Defendants offer carefully-drafted representations, clearly aimed at attempting to avoid liability in this litigation, all the while proclaiming that "the University *is required* to fulfill its obligations under [H.B. 2] unless or until the [C]ourt directs otherwise."  ECF No. 38-5 at 2 (emphasis added).  UNC's carefully-drafted representations fail to provide Plaintiffs the ability to live, work, and learn in safety by ensuring that they are entitled to use the restrooms or locker rooms that correspond with their gender identity.

UNC Defendants compound their legal errors by advocating a novel and unfounded rule of pleading, in an attempt to strike Plaintiffs' prayer for injunctive relief.

This Court should reject UNC Defendants' efforts to evade liability and deny their motion to dismiss on all grounds.

## I. PLAINTIFFS' CLAIMS AGAINST UNC DEFENDANTS ARE JUSTICIABLE.

### A. UNC Defendants' Motion to Dismiss Should be Limited to the Facts of the Complaint—Which Adequately Plead a Justiciable Controversy.

Although UNC Defendants style their motion as a Motion to Dismiss, they misleadingly contend that this Court may consider exhibits outside the pleadings and weigh the evidence, UNC Br. (ECF No. 90) at 6-7, and they extensively rely on such evidence to support their motion, *see, e.g.*, *id.* at 11-12. This is improper. Because any factual issues are the subject of discovery and are intertwined with the merits of this litigation, the justiciability of Plaintiffs' claims should be adjudicated on the face of the Complaint, which pleads more than adequate facts to survive a motion to dismiss.

#### 1. This Court's Justiciability Inquiry Should be Limited to the Facts of the Complaint.

While, in *certain* circumstances, the Court may consider exhibits outside the pleadings in order to satisfy itself of jurisdiction, that is only true to the extent that the facts are divorced from the merits of the claims themselves. As the Fourth Circuit has articulated, "'when the jurisdictional facts are inextricably intertwined with those central to the merits, the [district] court should resolve the relevant factual disputes *only after appropriate discovery*.'" *In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 334 (4th Cir. 2014) (citing *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)) (emphasis added).

2

Yet it is clear from the fact that these very issues have been raised in response to Plaintiffs' Motion for Preliminary Injunction (*see, e.g.*, UNC Defendant's response thereto, ECF No. 50 at 8-23), these issues are inextricably linked to the merits of Plaintiffs' claims, and in particular their claims for both preliminary and permanent injunctive relief. In other words, questions as to UNC Defendant's compliance with H.B. 2 are ultimately part of Plaintiffs' burden of proof at trial, and are the proper topic and focus of the discovery period—thus rendering them inappropriate for final resolution on a motion to dismiss. Illustrative of this fact is that even the UNC Defendants themselves have identified, as part of their initial disclosures, individuals who might have information relating to UNC's compliance with H.B. 2 as relevant to this proceeding. *See* Decl. of Scott B. Wilkens (filed contemporaneously herewith), Ex. A, at 2.

UNC Defendants' contentions as to the justiciability of Plaintiffs' claims is particularly linked with the merits of Plaintiffs' Title IX claims. UNC Defendants would have this Court decide—as a matter of standing doctrine—that no state policy, no matter how hostile or inherently discriminatory, and no matter the invitation to discrimination that it conveys to individuals within a school, can possibly be actionable under Title IX without the school separately engaging in particular acts of enforcement that UNC Defendants claim to be necessary predicates for liability. But as the Fourth Circuit has held, all that is required to make out a Title IX action is that the relevant policy "has a concrete, negative effect on the [plaintiff]'s ability to participate in an educational program or activity." *Jennings v. UNC*, 482 F.3d 686, 699 (4th Cir. 2007) (quotation

3

marks and alterations omitted). And it is precisely these "concrete, negative effect[s]" that are properly the topic of discovery and that Plaintiffs intend to demonstrate at trial (as their evidentiary submission in support of a preliminary injunction illustrates in part).

If this Court were to grant UNC Defendants' Motion to Dismiss on the present record, it would deny Plaintiffs the opportunity to elucidate additional facts as to UNC Defendants' (or their subordinates') enforcement of H.B. 2, as well as the harms created by that policy. For example, while UNC Defendants rely in their motion on the self-serving affidavit of President Spellings, as well as a number of her statements, *see* UNC Br. at 10-11, Plaintiffs have had no opportunity to depose Ms. Spellings or her subordinates or to request documents to test the truth or completeness of those artfully-drafted statements. And whatever legal meaning that counsel for UNC Defendants wish to ascribe to the UNC President's guidance, Plaintiffs are entitled to an opportunity to discover how such guidance was reasonably perceived at UNC, both by her subordinates and by the individuals at UNC campuses whom Plaintiffs would encounter were they to simply ignore H.B. 2's mandate. The record thus far—which, for example, includes statements from the Chancellors of UNC constituent institutions suggesting that H.B. 2 has already had "concrete consequences" and a "negative impact," *see* ECF No. 67-11— indicates that such discovery may yield additional supporting evidence, and that the high-level statements upon which UNC Defendants rely may not reflect the complete reality at UNC's constituent institutions. Consistent with the Fourth Circuit's decision in *KBR*, Plaintiffs are entitled to this additional discovery.

### 2. The Facts of the Complaint are Sufficient To Make Out a Justiciable Controversy.

Properly construing UNC Defendants' motion, the only inquiry for this Court at this time is whether, accepting the facts alleged in Plaintiffs' First Amended Complaint ("FAC") (ECF No. 9) and all reasonable inferences therefrom, it is more than merely "speculative" that a case or controversy exists. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's Complaint meets this standard, particularly when the "credible threat" requirement is properly construed (*see infra.* Part II.B.1).

In particular, the Complaint alleges that (1) H.B. 2 imposes a discriminatory mandate on all public agencies, including specifically the University of North Carolina, (2) that this provision facially and intentionally targets transgender people for differential treatment, (3) that institutions complying with H.B. 2 have excluded transgender individuals from using single-sex facilities consistent with their gender identity, and (4) that the same result must necessarily apply to public agencies such as the University of North Carolina under "H.B. 2's broad sweep." FAC ¶¶ 159-169. The Complaint further articulates that

> Following the enactment of H.B. 2, the University of North Carolina President issued a memorandum dated April 5, 2016 to chancellors of constituent UNC schools, including UNC-Chapel Hill, UNC-Greensboro, and [UNC School of the Arts High School]. The memorandum specifically states that "University institutions must require every multiple-occupancy bathroom and changing facility to be designated for and used only by persons based on their biological sex." The memorandum included a copy of H.B. 2, which includes its definition of 'biological sex."

5

FAC ¶ 171.  The Complaint also describes how three transgender individuals at UNC constituent institutions have been compelled to avoid using the single-sex facilities on campus that they had previously used as a result of H.B. 2 and guidance such as that from the UNC President.  *See, e.g.*, FAC ¶ 84 ("Since the passage of H.B. 2, Mr. McGarry has been barred from using the men's restroom on campus."); FAC ¶ 113 ("Since the passage of H.B. 2, H.S. has limited or delayed use of the bathroom because of fear of reprisals if she uses the restroom designated for women and girls and because she fears for her safety if she uses the restroom designed for men and boys, as the law requires.); *see also* FAC ¶¶ 44-51, 74-84, 106-13.

Whatever legal interpretive gloss that counsel for UNC Defendants wishes to subsequently ascribe to the guidance issued by the UNC President, its *actual effect* on Plaintiffs and other transgender UNC students and employees is quite clear from the face of the Complaint: they are not free to use facilities on UNC campuses that are consistent with their gender identity.  The facts as pled make it more than merely "speculative" that UNC's own actions have had a role in the harms that Plaintiffs suffered, and that is all that Plaintiffs are required to show at this stage of the litigation.  *See Liberty Univ. v. Lew*, 733 F.3d 72, 90 (4th Cir. 2013) (Plaintiffs need only provide "general factual allegations of injury" at the pleading stage).

### B.      Even Taking Into Account the Factual Record, Plaintiffs' Claims Against UNC Defendants are Justiciable.

To the extent that this Court considers the full record as developed so far on the Motion for Preliminary Injunction, its import is clear: the arguments by counsel for UNC

6

Defendants are merely a feint to conceal the fact that UNC—as an institution bound by state law—is both required to and indeed has implemented H.B. 2 by mandating that it be followed and by communicating its requirements to campus constituencies. No more should be required to establish that the UNC Defendants are properly named.

### 1. UNC Defendants Misstate the "Credible Threat" Requirement.

Although Plaintiffs contend that UNC has taken active steps to enforce H.B. 2 and thus that this Court need not address the question, they note as an initial matter that UNC Defendants misstate the breadth and content of the "credible threat" requirement. That requirement is not, as UNC Defendants suggest, a bright-line rule to be applied in a facile fashion, and it is particularly inapt for the present circumstances, in which such important and sensitive interests as Plaintiffs' dignity, safety, and privacy are targeted by H.B. 2. When, as here, such interests are jeopardized if Plaintiffs were denied judicial review of H.B. 2, a case or controversy undoubtedly exists.

At a basic level, UNC Defendants overlook that standing to challenge a statute does not actually require the specific "enforcement" of that statute *per se*: rather, standing lies when plaintiffs establish a "realistic danger of sustaining a direct injury as a result of the statute's *operation or* enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (emphasis added); *see Local 391, Int'l B'hood of Teamsters v. City of Rocky Mount*, 672 F.2d 376, 379 (4th Cir. 1982) (applying the *Babbitt* rule to a picketing ordinance). Such is undoubtedly the case here.

7

As the Supreme Court has articulated, the "credible threat" requirement requires balancing on a "case-by-case basis" of the factors weighing in favor of, and against, adjudication. *Blanchette v. Connecticut General Ins. Corps.*, 419 U.S. 102, 143 n.29 (1974). It is typically applied with regard to challenges to rarely enforced *criminal* statutes, and its purposes are two-fold: first, to ensure that an adequate factual record exists to determine the actual effects of the enactment at issue, and second, to ensure that the requisite adversity is before the Court. *See, e.g.*, 13B Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3532.5 (3d ed. 2016). When these concerns are met—and they are here—courts have frequently addressed controversies even when plaintiffs were not imminently threated with disciplinary action. For example, the Fourth Circuit held that individuals had standing to challenge the "individual mandate" of the Affordable Care Act, even though they faced no possible immediate threat of prosecution: the court found it sufficient that individuals were already tailoring their conduct to be in compliance with what the law would require. *Liberty Univ.*, 733 F.3d at 90; *see Mobil Oil Corp. v. Att'y Gen. of Virginia*, 940 F.2d 73, 76 (4th Cir. 1991) ("We see no reason to assume that the Virginia legislature enacted this statute without intending it to be enforced.").[1]

---

[1] *See also Epperson v. Arkansas*, 393 U.S. 97, 101-02 (1968) (adjudicating validity of anti-evolution statute even though "[t]here is no record of any prosecutions in Arkansas under [the] statute"); *National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687-92 (2d Cir. 2013) ("It is disingenuous for Defendants to insinuate that New York *might* not enforce [the statutes] against [plaintiff], when the statute quite clearly applies to [plaintiff]'s activities"); *Whitney v. Heckler*, 780 F.2d 963, 968 n.6 (11th Cir. 1986) ("It is well established that an issue is ripe for judicial review when the challenging party is

In particular, courts have been particularly likely to entertain even pre-enforcement challenges when litigation seeks to vindicate important interests such as self-expression, privacy, or personal dignity, recognizing that the failure to adjudicate such cases would, by chilling plaintiffs' conduct, have the effect of eviscerating the very interests that litigation seeks to protect. *See, e.g.*, *Virginia v. American Booksellers Ass'n*, 484, U.S. 383, 392 (1988); *Virginia Soc'y for Human Life v. FEC*, 263 F.3d 379, 386-69 (4th Cir. 2001) (entertaining challenge even despite FEC's pledge of non-enforcement, since it did not "carry the binding force of law"); *Aid for Women v. Foulston*, 441 F.3d 1101, 1110 (10th Cir. 2006); *Meltzer v. Bd. of Pub. Instr.*, 548 F.2d 559, 572-73 (5th Cir. 1977); *see also Citizens for Health v. Leavitt*, 428 F.3d 167, 176 n.9 (2006) (privacy). Here, UNC has already complied with H.B. 2 to Plaintiffs' detriment. If Plaintiffs are forced to linger under H.B. 2's discriminatory mandate—and the guidance from UNC Defendants stressing its applicability to UNC campuses—then their dignity, safety, and privacy are at risk from the operation of H.B. 2. They should not be forced to risk sanctions in order to challenge the statute, particularly when they have already suffered harm from its implementation.[2]

---

placed in the dilemma of incurring the disadvantages of complying or risking penalties for noncompliance.").

Notably, courts have rejected attempts by government defendants—similar to those undertaken by UNC Defendants here—to contort the plain meaning of statutes so as to minimize the apparent risk of violating a statute. *See Mobil Oil*, 940 F.2d at 76; *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1016-17 (9th Cir. 2014).

[2] Indeed, that UNC Defendants seek to dismiss even Plaintiffs' declaratory judgment claims is particularly perverse given the Supreme Court's recognition that the entire

9

## 2. UNC is Subject to H.B. 2's Discriminatory Mandate, Is Empowered to Implement that Mandate, and Has Done So.

UNC Defendants argue that the claims against them are not justiciable because, they contend, H.B. 2 imposes no new obligation on UNC, UNC has no power to enforce H.B. 2, and UNC has taken no steps to implement the law. UNC Br. at 7-10. These arguments are belied both by the law and by UNC's own statements and actions: UNC is subject to H.B. 2's discriminatory mandate, has taken steps to implement that mandate, and is required to do so not only by UNC's general obligation to comply with state law, but also by H.B. 2's express terms.

UNC Defendants' contentions otherwise rely on a logically incoherent premise: that somehow UNC can fulfill its obligations under H.B. 2 while creating no actionable harm to Plaintiffs. But UNC itself has recognized that its "obligations" under H.B. 2 are clear, stating that UNC "must require every multiple-occupancy bathroom and changing facility to be . . . used only by persons based on their biological sex." ECF No. 38-5 at 1 (April 5, 2016 guidance from President Spellings); *see also* ECF No. 50-3 at 4 (April 13, 2016 letter from UNC General Counsel: "the University is specifically covered by H.B. 2 and is required as a public agency to comply with its applicable portions, including the provisions related to multiple-occupancy bathrooms and changing facilities"); N.C. Exec.

---

*purpose* of declaratory judgment actions is to create a mechanism by which such legal uncertainties attendant to oppressive government enactments can be adjudicated, without plaintiffs being forced to risk the sanctions from violating the law. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007).

Order 93 § 3 (ECF No. 23-24 at 3); N.C. Gen. Stat. § 143-760(a)(2), (b). This is precisely the discrimination that Plaintiffs are challenging.

UNC Defendants' implicit attempt to create a distinction between the Act's requirements and the University's position is untenable. If UNC is complying with H.B. 2, then H.B. 2's discriminatory mandate *is* its position, and it is inflicting actionable harm on Plaintiffs by excluding them from restrooms and other facilities consistent with their gender identity. And UNC has unequivocally stated that it *is* complying with H.B. 2. *See* ECF No. 38-5 at 2 (April 5: "the University is required to fulfill its obligations under the law unless or until the [C]ourt directs otherwise"); *id.* at 1 (directing constituent schools to "fully meet their obligations under the Act"); ECF No. 50-12 at 2 (April 11: "As a state institution, the University is bound to comply with HB2 and all other laws passed by the General Assembly and signed by the Governor."); ECF No. 23-27 at 2-3 (May 9: "The Act remains the law of the State, however, and the University has no independent power to change that legal reality.").

UNC Defendants contend that they are without authority to enforce H.B. 2, because the law does not contain any specific provision for enforcement. UNC Br. at 11-12. This argument is a red herring: H.B. 2 provides defendants all of the enforcement authority they need by directing that they "shall require every multiple occupancy bathroom or changing facility to be . . . only used by persons based on their biological sex." N.C. Gen. Stat. § 143-760(b). That the act does not specify the precise mechanism by which defendants "shall require" compliance does not obviate their obligation to do

11

so. If the UNC Defendants' argument were taken to its logical conclusion, then UNC would be powerless to discipline students or employees who violate any generally applicable law absent specific enforcement authority from the legislature. In any event, UNC has plenary authority to regulate conduct on its campuses. *See* N.C. Gen. Stat. § 116-11 (Board of Governors is responsible for "general determination, control, supervision, management and governance of all affairs of the constituent institutions," and "may adopt such policies and regulations as it may deem wise"). Furthermore, as a factual matter, UNC has already assumed the ability to enforce state laws of general applicability: UNC-Greensboro and UNC-Chapel Hill both have codes of conduct that require compliance with state law and permit discipline for violating it.[3] *See* ECF No. 67-8 at 3 ("Students are responsible for observing . . . all federal and state laws"); ECF No. 67-9 at 7.

UNC Defendants also contend that UNC has not taken any steps to actually implement H.B. 2's discriminatory mandate. UNC Opp. at 18. But President Spellings sent a memorandum to the chancellors of all constituent UNC schools instructing them that they "must" comply with H.B 2, including its discriminatory mandate regarding single-sex facilities. ECF No. 38-5 at 1. The memorandum further directs schools to "fully meet their obligations under the Act," including by "provid[ing] notice of the Act

---

[3] Indeed, counsel for the Governor has explicitly rejected the notion that UNC Defendants can decline to enforce or comply with H.B. 2. *See* Tr. of July 23, 2016 Hearing (No. 1:16-cv-00425, ECF No. 54) at 12:3-10 ("they cannot unilaterally avoid enforcing or complying with H.B. 2.").

to campus constituencies as appropriate." *Id.* at 1-2. The record demonstrates that the schools complied with this directive, sending campus-wide emails regarding compliance with H.B. 2 that were personally received by Plaintiffs *and their colleagues*, and that reiterated the applicability of H.B. 2's mandates. *See generally* ECF Nos. 67-5, 67-6, 67-11. Whatever the precise legal meaning ascribed to President Spellings' statements by counsel for UNC Defendants, its impact on Plaintiffs (as well as other individuals on the UNC campuses) is quite plain from the record: Plaintiffs are not permitted to enter restrooms or other facilities corresponding to their gender identity on UNC campuses, and risk their safety and possibly academic or workplace consequences if they violate H.B. 2 by doing so. *See generally* ECF Nos. 22-4, 22-8, 22-9.

### 3. Plaintiffs Have Standing to Bring Their Title IX and Constitutional Claims Against the UNC Defendants.

UNC Defendants' decision to comply with H.B. 2—including the steps that UNC has affirmatively taken to implement H.B. 2 where Plaintiffs live, learn, and work—is more than sufficient to establish an actual case or controversy as to whether UNC is violating Plaintiffs' rights under Title IX or the U.S. Constitution. Indeed, UNC's own statements admit that H.B. 2 creates a conflict between state and federal law. *See* ECF No. 23-28 (Chairman Bissette: "the University is . . . caught in the middle between state and federal law"); ECF No. 23-27 at 2 (President Spellings: "In ordinary circumstances, these obligations [of state and federal law] are not in tension."); EFC No. 50-3 at 4 (UNC General Counsel: "The University explained [to legislative staff] that H.B. 2's provisions could create tension with Title IX").

UNC Defendants err in suggesting that they must actually physically bar or remove Plaintiffs from restrooms, or threaten to do so, for Plaintiffs to have standing. The Fourth Circuit's decision in *G.G. ex rel. Grimm v. Gloucester County School Board,* No. 15-2056, -- F.3d --, 2016 WL 1567467 (4th Cir. Apr. 19, 2016), shows why this argument is flawed. There, the school board passed a resolution requiring that single-sex facilities "be limited to the corresponding biological genders," and the Fourth Circuit held that sufficient to support a Title IX claim that plaintiff had been "excluded from participation in an education program," without an additional showing that the plaintiff himself was physically removed from the boys' restroom. 2016 WL 1567467, at *2, *4. H.B. 2's discriminatory mandate harms Plaintiffs by exposing them to stigma, physical and psychological harm, the disclosure of private information about their transgender status, and the threat of physical violence. Given UNC Defendants' avowed compliance with H.B. 2's mandate, it is no answer to assert that transgender individuals can resort to self-help by violating state law—and university policy—at their own peril.

Indeed, whatever the circumscribed legal meaning that has been ascribed to President Spellings' statement by counsel for UNC Defendants, the guidance itself acts as a message to the administrators, staff, faculty, and students at UNC institutions that H.B. 2 is in effect on campus. It invites others to discriminate against transgender individuals should those individuals violate H.B. 2's discriminatory mandate. Certainly the Chancellors of constituent UNC institutions have perceived the real-world implications of the President's statement, stating, "We know [H.B. 2] has generated, and

will continue to generate, concern and *concrete consequences* for our students, faculty, staff, and larger community."  ECF No. 67-11 (emphasis added); *see also* ECF No. 67-5 at 2; ECF No. 67-6 at 3.  This is precisely the type of harm that is actionable under Title IX: when a university's policy "has a concrete, negative effect on the [plaintiff]'s ability to participate in an educational program or activity."  *Jennings*, 482 F.3d at 699 (quotation marks and alterations omitted).

UNC Defendants' litigating position—one that finds no support in its other conduct or statements—is insufficient to moot this controversy.  "It is well established that a defendant's 'voluntary cessation of a challenged practice' moots an action only if 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Evntl. Servs., Inc.*, 528 U.S. 167, 189 (2000)).  And UNC bears a "'heavy burden'" in establishing otherwise.  *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189).  Having issued her guidance—an invitation to the UNC campus to enforce H.B. 2—UNC's President cannot now rely on her subsequent statements as somehow negating its effect.

Ultimately, UNC Defendants seek to absolve themselves of liability because Plaintiffs' injuries are rooted in a law passed by the legislature and signed by the governor.  But UNC Defendants are legally responsible for applying state law to UNC students and employees—a role that they have willingly taken up in promising to comply with H.B. 2.  UNC Defendants are not absolved from responsibility for constitutional or

statutory violations merely because they are "just following orders." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010) (quotation marks omitted); *see also Busche v. Burkee*, 649 F.2d 509, 517 (7th Cir. 1981). And indeed, UNC Defendants have taken up the mantle of H.B. 2 by admitting that they will fully comply with it.

For these reasons, this Court should reject UNC Defendants' arguments as to the justiciability of Plaintiffs' claims.

## II. UNC DEFENDANTS ARE NOT IMMUNE FROM PLAINTIFFS' CONSTITUTIONAL CLAIMS.

UNC Defendants also contend that the Board of Governors and Chariman Bissette[4] are not the correct defendants under *Ex parte Young*, 209 U.S. 123 (1908), and thus that they enjoy sovereign immunity from injunctive relief as to Plaintiffs' constitutional claims.[5] UNC Br. at 14-18. Plaintiffs have already fully briefed this issue

---

[4] Plaintiffs note that UNC Defendants have consented to the substitution, in a Second Amended Complaint (as to which a motion for leave to amend will be filed on or before the scheduling order deadline of August 15, 2016), of Margaret Spellings, in her official capacity as President of the University of North Carolina, for two of the Defendants named in the First Amended Complaint (the Board of Governors of the University of North Carolina and W. Louis Bissette, Jr., in his official capacity as Chairman of the Board of Governors of the University of North Carolina). As a condition to this consent, Plaintiffs and UNC Defendants have agreed that (1) UNC Defendants' Motion to Dismiss would be treated as operating as to the Second Amended Complaint; (2) the arguments made as to the Board of Governors in UNC Defendants' Motion to Dismiss, including, without limitation, the arguments in Section II.A of the UNC Brief (ECF No. 90), would be moot, and (3) the arguments as to Chariman W. Louis Bissette, Jr., will be deemed arguments made as to Defendant Spellings.

[5] The UNC Defendants' assertion of sovereign immunity applies only to Plaintiffs' constitutional claims. UNC Opp. at 14. Thus, even were this Court to rule that the UNC Defendants are entitled to sovereign immunity, Plaintiffs' Title IX claim cannot be dismissed on this basis.

as to the Board and Charmain Bissette in their Reply in Support of the Motion for Preliminary Injunction, *see* ECF No. 73 at 8-10, and incorporate that prior briefing in response.

To the extent that the arguments in UNC Defendants' brief regarding sovereign immunity are construed as to President Spellings in her official capacity, they are unfounded. In her capacity as UNC President, Defendant Spellings is statutorily enumerated as the "chief administrative officer of the University." N.C. Gen. Stat. § 116-14(a). And as UNC Defendants themselves concede, President Spellings has direct policy-making authority at UNC. UNC Br. at 3; *see also* ECF No. 38-1 at 1. Perhaps most significantly, President Spellings has a direct relationship to the enforcement of H.B. 2 at UNC: in her April 5, guidance memorandum (ECF No. 38-5, cited at FAC ¶ 171), President Spellings directed University employees to "require every multiple-occupancy bathroom and changing facility to be designated for and used only by persons based on their biological sex" and to "fully meet their obligations under the Act." She has since issued guidance regarding H.B. 2 in subsequent missives, including in communications with the Department of Justice regarding its conflict with Title IX. *See* UNC Br. at 5-6, ECF Nos. 50-2, 50-4. For these reasons, this Court should reject UNC Defendants' claim of sovereign immunity.

## III. UNC DEFENDANTS' ATTEMPT TO DISMISS PLAINTIFFS' PRAYER FOR INJUNCTIVE RELIEF IS BASELESS.

Finally, UNC Defendants urge this Court to adopt an unprecedented and unwarranted pleading rule: that a civil rights plaintiff is ineligible for injunctive relief

17

unless the plaintiff pleads specific facts demonstrating that declaratory relief would be insufficient to remedy their injuries. UNC Br. at 19-20. There is no support for such a sweeping and novel theory of pleading in the case law; rather, the record demonstrates— and the law provides—that Plaintiffs are entitled to injunctive relief in this Court's exercise of its equitable powers.

There is no case law supporting the notion that a civil rights Plaintiff must independently plead the necessity for injunctive relief in addition to declaratory relief, by establishing that a defendant is somehow unlikely to follow a declaratory judgment. Unsurprisingly, the cases that UNC Defendants cite provide no support for the notion that such relief may be granted as part of a Rule 12(b)(6) motion to dismiss. *Foster v. Wells Fargo Bank, N.A.*, No. 14-17, 2014 WL 3965059, at *7 (W.D. Va. Aug. 13, 2014), is a case interpreting Virginia property law, in which the Virginia Supreme Court had already ruled that injunctive relief was simply not available once a house was sold in foreclosure, because the particular remedial scheme provided for injunctive relief only prior to a sale. *Id.* (citing *Mathews v. PHH Mortgage Corp.*, 724 S.E.2d 196, 199 n. 1 (Va. 2012)). And in *Bryant v. Blanton*, 463 F. Supp. 155, 157 (W.D. Tenn. 1979), the court actually *granted* the Plaintiffs declaratory judgment at the pleadings stage, but nevertheless declined injunctive relief for lack of "evidence . . . of defendants' potential non-compliance with this Court's ruling." In other words, *Bryant* directly contravenes UNC Defendants' argument, by stating that a court may look to *evidence* to determine whether

18

injunctive relief is appropriate, and that resolution of this issue in a Rule 12(b)(6) motion is entirely inappropriate. *Id.*

To the contrary, in constitutional cases the Fourth Circuit has—almost axiomatically—declared that both injunctive relief and declaratory relief would be available together, without undertaking the inquiry advocated by UNC Defendants here. *See e.g.*, *Ross v. Meese*, 818 F.2d 1132, 1134-35 (4th Cir. 1987) ("We think it clear that the district court had jurisdiction to give a declaratory judgment as to whether constitutional rights were violated and if so to order appropriate injunctive relief."); *Wallace v. King*, 626 F.2d 1157, 1161 (4th Cir. 1980) ("Injunctive and declaratory relief should be issued by the district court in conformity with the principles stated herein."). Indeed, for nearly two centuries, courts have been issuing injunctions to remedy alleged constitutional violations, even though remedies at law might otherwise have been available to deter conduct. *See, e.g.*, *Osborn v. Bank of U.S.*, 22 U.S. (19 Wheat.) 738 (1824) (awarding injunction to protect federal franchise); *Ex parte Young*, 209 U.S. 123, 163-65 (1908) (noting that, with respect to constitutional violations, remedies at law were inadequate to deny injunctive relief). Private parties are similarly able to seek injunctive relief under Title IX, *see Cannon v. Univ. of Chicago*, 441 U.S. 677, 705-06 (1979) (noting that it is "sensible" and "necessary to . . . the orderly enforcement of the statute" to allow individual relief to a private litigant), and at least one court has held that the awarding of remedies at law under Title IX is not sufficient to render injunctive relief unavailable under that statute, *see Roberts v. Colorado State Bd. of Agriculture*, 998 F.2d

824, 833 (10th Cir. 1993). UNC Defendants' new pleading rule is inconsistent with all these lines of precedent.

Ultimately, UNC Defendants' contentions misapprehend the twin roles of declaratory and injunctive relief. Whereas a declaratory judgment sets forth the legal entitlements of the parties, injunctive relief actually directs the parties to act consistently with those legal entitlements. But to the extent that Plaintiffs must plead facts suggesting that declaratory relief would be insufficient, they have done so. The very documents referred to the Complaint, and upon which UNC Defendants rely, establish that the University intends to "fully comply" with H.B. 2 "until the [C]ourt *directs* otherwise." ECF No. 38-5 (cited at FAC ¶ 171) (emphasis added). But it is only injunctive relief— and not declaratory relief—that would "direct[]" the UNC Defendants to abandon their current position. For this reason, even to the extent that their legal arguments are sound, UNC Defendants have failed to establish a sufficient basis for dismissing the prayer for injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny UNC Defendants' Motion to Dismiss in its entirety.

Dated:  August 11, 2016

Respectfully submitted,

<u>/s/ Christopher A. Brook</u>
 Christopher A. Brook
N.C. State Bar No. 33838
AMERICAN CIVIL LIBERTIES UNION FOR
    NORTH CAROLINA LEGAL FOUNDATION
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone: 919-834-3466
Facsimile:  866-511-1344
cbrook@acluofnc.org

James D. Esseks*
Elizabeth O. Gill*
Chase B. Strangio*
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad St., 18th Fl.
New York, NY 10004
Telephone: 212-549-2627
Facsimile:  212-549-2650
jesseks@aclunc.org
egill@aclunc.org
cstrangio@aclu.org


*Appearing by special appearance
pursuant to L.R. 83.1(d).

Jon W. Davidson*
Tara L. Borelli*
Peter C. Renn*
Kyle A. Palazzolo*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 1070
Atlanta, GA 30308-1210
Telephone: 404-897-1880
Facsimile:  404-897-1884
jdavidson@lambdalegal.org
tborelli@lambdalegal.org
prenn@lambdalegal.org
kpalazzolo@lambdalegal.org

Paul M. Smith*
Scott B. Wilkens*
Luke C. Platzer*
JENNER & BLOCK LLP
1099 New York Avenue, NW Suite 900
Washington, DC 20001-4412
Telephone: 202-639-6000
Facsimile:  202-639-6066
psmith@jenner.com
swilkens@jenner.com
lplatzer@jenner.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Christopher A. Brook, hereby certify that on August 11, 2016, I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO UNC DEFENDANTS' MOTION TO DISMISS, as well as the declarations and exhibits in support, using the CM/ECF system, and have verified that such filing was sent electronically using the CM/ECF system to all parties who have appeared with an email address of record.

/s/ Christopher A. Brook
Christopher A. Brook