# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOAQUÌN CARCAÑO, *et al.*, *Plaintiffs*, v. ROY A. COOPER, *et al.*, *Defendants*, v. PHIL BERGER, *et al.*, *Intervenor-Defendants* | No. 1:16-cv-00236-TDS-JEP  **INTERVENOR-DEFENDANTS' SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DISMISSAL OF FOURTH AMENDED COMPLAINT** |

Intervenor-Defendants submit the following supplemental reply brief concerning Plaintiffs' claims for nominal damages as to HB 2, in support of their motion to dismiss. Notwithstanding the arguments in Plaintiffs' Opposition, *see* Doc. 258 ("Opp."), applicable law makes plain that a claim for nominal damages alone cannot maintain this case where HB 2 was never applied to Plaintiffs. This Court's prior decisions on standing, which addressed different legal theories in a different procedural posture, are not binding now. And even if the nominal damages claims were justiciable, Plaintiffs lack a viable theory for how HB 2 violated either Title IX or Title VII. The nominal damages claims should be dismissed.

**I.    REPEAL OF HB 2 MOOTS PLAINTIFFS' NOMINAL DAMAGES CLAIMS.**

As Intervenor-Defendants have shown, HB 2's repeal moots Plaintiffs' nominal damages claims because HB 2 was never directly enforced against Plaintiffs. Doc. 254

("Int. Supp. Br.") at 4-7. Plaintiffs respond (1) that the Court's decision on standing when Plaintiffs sought a preliminary injunction against HB 2 remains "law of the case," Opp. 3-7, and (2) that Plaintiffs suffered injuries-in-fact which remain justiciable, *id.* at 7-12. Neither theory is consistent with applicable law.

### A. Law-of-the-Case Doctrine Does Not Apply To Preliminary Decisions Where The Applicable Legal Standards Have Changed.

In general, "decisions at the preliminary injunction phase do not constitute the law of the case," *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013), unless the decision reaches through to the merits for full consideration of all issues, *see Sherley v. Sebelius,* 689 F.3d 776, 782 (D.C. Cir. 2012). That rule carries special weight when it comes to preliminary decisions about jurisdiction, for Plaintiffs must maintain their requisite personal interest at all stages of the litigation, and legal changes or factual developments can require a court to revisit the question of standing at any time. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997); *see also U.S. Student Ass'n Found. v. Land*, No. 08-CV-14019, 2010 WL 1131493, at *4 (E.D. Mich. Mar. 23, 2010); *Richmond Med. Ctr. for Women v. Gilmore*, 55 F. Supp. 2d 441, 459 (E.D. Va. 1999). More generally, the law-of-the-case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power," and courts may revisit their *own* past decisions "in any circumstance" that warrants it. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

In this case, there are strong reasons *not* to apply law-of-the-case doctrine. Because Plaintiffs' claims have changed, a different legal standard applies to their standing. *See In re Trierweiler*, 570 F. App'x 766, 774 (10th Cir. 2014) (law of the case doctrine does not apply to "legally distinct issues"); *see also Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, 654 F.3d 654, 660 (6th Cir. 2011) ("No previous court's decision can compel that we find standing now that the [plaintiffs] no longer suffer an injury in fact."); Opp. 3 (conceding that law of the case does not apply when "controlling authority has since made a contrary decision of law applicable to the issue") (quotes omitted). At the preliminary injunction stage, Plaintiffs sought prospective injunctive relief against an operative statute. Standing to raise that claim required Plaintiffs to show a "threat of prosecution [that was] both 'credible' and 'immediate.'" Doc. 248 at 23 (quoting *EQT Prod. Co. v. Wender,* 191 F. Supp. 3d 583, 591 (S.D. W. Va. 2016), *aff'd*, 870 F.3d 322 (4th Cir. 2017)).[1] The claims at issue here, in contrast, solely seek retrospective damages relief, and so Plaintiffs must show an actual past injury that satisfies Article III. *See Reyes v. City of Lynchburg*, 300 F.3d 449 (4th Cir. 2002); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016).

Plaintiffs' new claims require a new jurisdictional analysis: otherwise, claims for nominal damages would *always* survive a statute's repeal as long as the plaintiff had standing to seek injunctive relief in the first place. Yet injuries sufficient to maintain

---

[1] The Court addressed Plaintiffs' claim against the background of the First Amended Complaint, Doc. 127 at 2 & n.2, which did not include any claims for damages. Doc. 9.

claims for prospective injunctive relief are *not* necessarily sufficient to maintain nominal damages claims after a law's repeal. *See Reyes*, 300 F.3d at 457; *Chapin Furniture Outlet, Inc. v. Town of Chapin*, 252 F. App'x 566 (4th Cir. 2007). Standing to pursue the former theory thus does not establish standing as to the latter. Because Plaintiffs' current claims and the relevant legal standards are different, the Court's prior standing decision cannot be law of the case.

      **B.    The Claim For Nominal Damages Is Moot.**

Relevant authority does not permit jurisdiction over the nominal damages claims. As Plaintiffs contend, a claim for nominal damages *may* prevent a lawsuit becoming moot after the statute is repealed, Opp. 7 (citing, *inter alia*, *Rendelman v. Rouse*, 569 F.3d 182, 187 (4th Cir. 2009)) (emphasis added) — but only if the nominal damages claim arises from a justiciable injury. In a case challenging a statute's constitutionality, as the Fourth Circuit held in *Reyes*, that requires an actual, concrete injury resulting from enforcement of the statute against the plaintiff. 300 F.3d at 457. Plaintiffs' Fourth Amended Complaint does not mention any instance where HB 2 was enforced against any Plaintiff (or indeed, anyone at all). Thus, although HB 2 was in effect, it was never applied to any Plaintiff in a way that suffices to maintain their standing now.

According to Plaintiffs, *Reyes* held only that "prosecution consistent with due process — even pursuant to a statute that is later repealed — does not cause the loss of any liberty interest," a proposition they consider "irrelevant here" because "prosecution is

not at issue." Opp. 10. That misses the boat for several reasons. Most obviously, the fact that no one was ever convicted or prosecuted under HB 2 is not a distinction; it is *proof* that Plaintiffs suffered no actual, concrete injury during the time the statute was in effect.

Even more fundamentally, *Reyes* stands for the broader proposition that "'[f]reedom from criminal prosecution … is not an interest that is accorded constitutional protection,'" and that the federal constitution "'recognize[s] no interest to be free from the burdens of defending oneself against an unsuccessful prosecution.'" 300 F.3d at 455 n.8 (quoting *Richardson v. City of S. Euclid*, 904 F.2d 1050, 1054 (6th Cir. 1990)). Because Plaintiffs do not allege that they were ever subject to prosecution under HB 2 — let alone a criminal conviction or a civil penalty — the alleged injuries they attribute to HB 2 all flow from their unfulfilled *fears* of prosecution. But if the past "burden[] of defending oneself against an unsuccessful prosecution" is not a justiciable injury, *id.*, Plaintiffs' mere apprehensions about prosecution cannot be justiciable either.[2] Plaintiffs provide no justification for confining *Reyes* to its particular legal context, rather than applying it according to its terms in other circumstances.

The key fact of *Reyes* — that the plaintiffs, like Plaintiffs here, were never successfully prosecuted under the challenged statute before it was repealed — appears to distinguish every other case Plaintiffs cite in support. Plaintiffs rely principally on

---

[2] Nor, if their fear of prosecution is not enough to support jurisdiction now, can Plaintiffs rely on injuries resulting from any actions they took because of that fear. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415-18 (2013).

*Covenant Media of S.C., LLC v. City of North Charleston*, 493 F.3d 421 (4th Cir. 2007), the case they consider "most directly on point." Opp. 8. Covenant, the plaintiff in that case, applied to erect a billboard. The city sat on the application for several months. Covenant then sued, claiming that the city's sign regulation "was unconstitutional on its face because it failed to require a decision on a sign permit within a specific time period[.]" *Covenant Media*, 492 F.3d at 428. In other words, the plaintiff had submitted a sign application that was processed in an allegedly unconstitutional way. The law was thus enforced against plaintiff in precisely the way that the plaintiff claimed was unconstitutional. The resulting procedural injury, the Fourth Circuit held, was "redressable at least by nominal damages." *Id.* That is unlike this case because HB 2 was *not* enforced against Plaintiffs.

Plaintiffs' two Supreme Court cases fall into the same category. *Carey v. Piphus*, 435 U.S. 247 (1978), involved a procedural due process challenge brought by two students who had been suspended from school. Opp. 8. *Memphis Community School District v. Stachura*, 477 U.S. 299 (1986), similarly, arose from a procedural due process and First Amendment lawsuit brought by a teacher who had been suspended from his job. Opp. 7, 8. And in each case Plaintiffs string-cite at page 7 of their Opposition, the nominal damages claim survived because the challenged law had been directly applied to the plaintiff when it was in effect, leading to a concrete injury. *See Rendelman*, 569 F.3d at 184-85 (prison denied plaintiff access to food consistent with his religious beliefs);

*Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 630 (4th Cir. 2016) (plaintiff cited by city for violations of sign regulation); *Am. Humanist Ass'n v. Greenville Cty. Sch. Dist.*, 652 F. App'x 224, 226-27 (4th Cir. 2016) (public school student subject to religious coercion by unconstitutional prayers). All of these cases are consistent with *Reyes* and unlike Plaintiffs claims against HB 2, and thus do not establish jurisdiction.

It is also significant that Plaintiffs' complaint "pray[s] predominantly … for declaratory and injunctive relief," making "clear that their only goal was removal of" HB 2. *Flanigan's Enterprises, Inc. of Ga. v. City of Sandy Springs, Ga.*, 868 F.3d 1248, 1265 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 1326 (2018). The repeal of HB 2 thus afforded plaintiffs "all the relief they requested and there is nothing of any practical effect left for [the Court] to grant them." *Id*. The availability of some such practical relief is a prerequisite of Article III standing; without it, "a prayer for nominal damages" is akin to a request for an advisory opinion and "cannot save an otherwise moot case." *Id*. at 1267.

Where a statute has been enacted but never enforced, and where the repeal of that statute affords plaintiffs all the substantive relief they sought, "the only redress [the Court] can offer [plaintiffs] is judicial validation, through nominal damages, of an outcome that has already been determined." *Id*. at 1268. But "absent an accompanying practical effect on the legal rights or responsibilities of the parties before us, [this Court] is without jurisdiction to give them that satisfaction." *Id*.

## II. Plaintiffs' nominal damages claims fail on the merits.

Besides the lack of subject matter jurisdiction, Plaintiffs' nominal damages claims fail because HB 2 did not involve "sex" discrimination within the meaning of Title IX and Title VII. Int. Supp. Br. 9-15. Plaintiffs present three arguments to the contrary. Opp. 15. None bears any weight.

*First*, Plaintiffs claim that discrimination against transgender people involves "sex stereotyping" because it is necessarily based on "'the perception that [a transgender individual's] behavior transgresses gender stereotypes.'" Opp. 17 (quoting *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011)); *id.* at 15 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). Cases have indeed stated that sex discrimination includes discrimination against, for example, a woman who does not conform to stereotyped views of female appearance or behavior. *Price Waterhouse*, 490 U.S. at 235, 250 (plurality). But if that is Plaintiffs' theory why HB 2 violated Title IX and Title VII, it fails as a matter of law because it misconstrues what HB 2 actually did. HB 2 did not classify men and women based on their behavior; it distinguished them based on their *biological sex*, as determined by the objective criterion of a birth certificate. A uniform rule based on objective biological and legal standards unrelated to behavior is the antithesis of sex stereotyping.

Plaintiffs attempt to sidestep that problem by arguing that HB 2 treated transgender men (for example) "as insufficiently masculine or insufficiently male because

they were designated a different sex at birth." Opp. 18. In so doing, Plaintiffs confirm what Intervenor-Defendants pointed out in their Supplemental Brief: that Plaintiffs seek to recharacterize the physical characteristics of sex as stereotypes *about* sex. Int. Supp. Br. 14. That reading has no basis in the text of either Title IX or Title VII, and a wealth of textual and historical evidence counters it. *Id.* at 9-16. Not even the dictionary definitions quoted in *G.G. ex rel. Grimm v. Gloucester County School Board* go so far as to say that *gender identity* determines sex and *physiology* is the stereotype. 822 F.3d 709, 721-22 (4th Cir. 2016); *see* Opp. 23-24.[3]

Plaintiffs are of course correct that statutory prohibitions often go further than the specific factual circumstances that prompted a statute, or the subjective motivations of the legislature that enacted it. Opp. 20-21 (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79 (1998)). But the range of permissible interpretations extends only to "reasonably comparable" situations within the original meaning of the text. *Oncale*, 523 U.S. at 79; *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (explaining that a court must "interpret the words consistent with their ordinary meaning at the time Congress enacted the statute"). It does *not* permit wholesale redefinitions that

---

[3] Plaintiffs argue that the Supreme Court's order vacating *G.G.* does not deprive "the remainder" of the case of binding effect. Opp. 23 n.10. Not so. Where the Supreme Court "vacated the Court of Appeals' judgment for further consideration in light of the subsequent development … the doctrine of the law of the case does not constrain either the District Court or, should an appeal subsequently be taken, the Court of Appeals." *Johnson v. Bd. of Educ. of City of Chi.*, 457 U.S. 52, 53-54 (1982).

were not "fairly" disclosed by the statute's words. *Barr v. United States*, 324 U.S. 83, 90 (1945).

Besides, it is *Plaintiffs'* theory that demands classifying people on stereotyped grounds, not HB 2. Witness Plaintiffs' position that transgender individuals should have access to restrooms and similar facilities corresponding with their gender identities in part because of how they conform (or fail to conform) to stereotypes about how men or women should look. 4AC ¶¶ 62, 70, 75; *see also id.* ¶¶ 107-09, 112 (Plaintiff McGarry); *id.* ¶¶ 130, 135, 145-46 (Plaintiff Schafer); *id.* ¶ 168 (Plaintiff Goss). HB 2, in contrast, was blind to gender identity and gender expression.

*Second*, Plaintiffs assert that because both "gender identity" and "sex designated at birth" are "sex-based characteristics," discrimination based on the "incongruence" between those characteristics must be sex discrimination. Opp. 19. That argument essentially restates Plaintiffs' sex-stereotyping theory because it rests on the premise that HB 2 penalized divergences between characteristics associated with sex. And just as above, although Plaintiffs *assume* that gender identity is a "sex-based characteristic" for purposes of Title IX and Title VII, *id.*, they once again fail to justify that argument with anything bearing on the statutory language.

*Third*, Plaintiffs claim that HB 2 involves discrimination against "gender transition." Opp. 19-20. But once more, HB 2 did not do anything of the kind. When a transgender individual obtained a birth certificate reflecting his or her gender identity, the

new certificate conclusively determined the person's biological sex. Plaintiffs concede the point, for at least one Plaintiff alleges that she actually *has* obtained a new birth certificate after transitioning to her female gender identity, and that her new certificate enabled her to access restrooms on the same terms as women who had not transitioned. *See* 4AC ¶ 166 (Plaintiff Goss alleging that she "was not prohibited by H.B. 2 from using women's restrooms in public buildings[] because her birth certificate lists her gender as female"). Provided birth certificates reflecting the same biological sex, HB 2 was completely evenhanded between individuals who had transitioned and those who had not. To be sure, HB 2's reliance on birth certificates created a standard for determining *who* had transitioned, but Plaintiffs do not argue that the act of classifying individuals as male or female for purposes of separate restrooms violates any law. Doc. 233 at 11 n.5, 42.

That, in short, disposes of Plaintiffs' three arguments why HB 2 violated Title IX and Title VII. Ironically, one of the best reasons to disregard Plaintiffs' arguments appears in one of their own authorities. In *Hively v. Ivy Tech Community College of Indiana*, an en banc majority adopted an interpretation of "sex" in Title VII identical to Plaintiffs'. 853 F.3d 339, 357 (7th Cir. 2017) (en banc) (cited at Opp. 22). Judge Posner concurred, but for a much more plainspoken reason:

> I would prefer to see us acknowledge openly that today we, who are judges rather than members of Congress, are imposing on a half-century-old statute a meaning of 'sex discrimination' that the Congress that enacted it would not have accepted. … We should not leave the impression that we are merely

> the obedient servants of the 88th Congress (1963–1965), carrying out their wishes. We are not.

*Hively*, 853 F.3d at 357 (Posner, J., concurring). For all Plaintiffs' rationalizations, they are ultimately seeking a judicial rewrite of Title IX and Title VII, not an interpretation grounded in the text.

Finally, even if Plaintiffs' interpretation of Title IX were colorable, it cannot survive under the Spending Clause. Int. Supp. Br. 13-1; *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981). Plaintiffs do not contest that a Spending Clause statute must provide fair notice of its conditions, but argue that "[r]ecipients of federal funds like UNC have clear notice that Title IX encompasses all forms of sex discrimination," including their allegations about HB 2. Opp. 33. That claim founders on Plaintiffs' inability to identify any sound historical basis for their interpretation of Title IX. On the contrary, Plaintiffs cannot disagree that their interpretation was universally rejected for decades after Title IX and Title VII became law. Int. Supp. Br. 10; Opp. 25 (rejecting prior cases as "superseded" law that "has been abrogated"). There is no way to reconcile Plaintiffs' rejection of decades of caselaw with their contention that their standard was fairly disclosed by the statute all along.

## CONCLUSION

Plaintiffs' claim for nominal damages should be dismissed.

Respectfully submitted,

By: /s/ Stephen S. Schwartz      / Robert D. Potter, Jr.

Gene C. Schaerr* (DC Bar #416638)
Stephen S. Schwartz* (DC Bar #477947)
*Counsel for President Pro Tempore
Phil Berger and Speaker Tim Moore*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Email: gschaerr@schaerr-jaffe.com
 sschwartz@schaerr-jaffe.com

Robert D. Potter, Jr. (State Bar #17553)
*Counsel for President Pro Tempore
Phil Berger and Speaker Tim Moore*
2820 Selwyn Avenue, #840
Charlotte, NC 28209
Telephone: (704) 552-7742
Email: rdpotter@rdpotterlaw.com

*appearing pursuant to Local Rule 83.1(d)

*Counsel for Intervenor-Defendants*

Date: December 7, 2018

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief complies with the word limits of Local Civil Rule 7.3(d) because, excluding the parts exempted by the rule, the brief contains 2196 words.


<u>/s/ *Stephen S. Schwartz*</u>

                                                 Counsel for Intervenor-Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.


/s/ *Stephen S. Schwartz*

                                                   Counsel for Intervenor-Defendants