# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOAQUÌN CARCAÑO, *et al.*,
                    *Plaintiffs*,
          v.

ROY A. COOPER, *et al.*,
                    *Defendants*,
          v.

PHIL BERGER, *et al.*,
                    *Intervenor-Defendants*

No. 1:16-cv-00236-TDS-JEP

**INTERVENOR-DEFENDANTS'
MEMORANDUM IN OPPOSITION
TO SUPPLEMENTAL JOINT
MOTION FOR CONSENT DECREE**

The consent decree proposed by Plaintiffs and the Executive Branch Defendants is flawed for two overarching reasons. *See* Doc. 264 (Joint Motion); Doc. 264-1 (proposed consent decree). *First*, it does not align with the few claims remaining in this case, but instead manufactures relief for dismissed claims over which this Court lacks jurisdiction. *Second*, it does not reflect a true settlement of legal conflict between adverse parties, but rather a collusive effort by the Plaintiffs and Executive Branch Defendants to obtain from this Court a political result they could not achieve through political means. Nor have Plaintiffs and the Executive Branch Defendants adequately justified the use of this Court's equitable power. The Court should deny the Joint Motion.

Legislative Intervenors respectfully request oral argument on the Joint Motion.

## BACKGROUND

The relevant facts are discussed in Plaintiffs' and Executive Branch Defendants' supporting memoranda (Docs. 265 & 266) and in this Court's September 30, 2018

1

Memorandum Opinion and Order (Doc. 248) dismissing most claims on standing or for failure to state a claim. For present purposes, it bears remembering that passage of H.B. 142 was a contentious process, fought until the last possible moment; that "clean repeal" alternatives were proposed and rejected; and that however much the Governor and others in the Executive Branch might have preferred such alternatives, a broad political compromise was reached.

After Plaintiffs filed their Fourth Amended Complaint challenging H.B. 142 on various theories, the Executive Branch Defendants did not meaningfully defend the new law — declining even to move to dismiss. On motions to dismiss filed by the Legislative Intervenors and the UNC Defendants, however, this Court disposed of most claims relating to H.B. 142.

This Court first dismissed, for lack of jurisdiction, Plaintiffs' due process and equal protection claims premised on substantive rights to access particular multiuser facilities or alleged uncertainty about applicable access rules. Those claims were based on Plaintiffs' alleged fear of enforcement of *other* laws (such as trespass laws), an injury this Court held is not traceable to H.B. 142, does not represent an actual injury, and is not redressable by this Court. Doc. 248 at 24-30. Because Plaintiffs do not have standing to raise those claims, Count I of the Fourth Amended Complaint (substantive due process) was dismissed in its entirety, and Count II (equal protection) was narrowed to *procedural* injuries arising from alleged loss of equal access to the political process. *Id.* at 31-39.

This Court dismissed Count II as to Section 2 of H.B. 142 for failure to state a claim. *Id.* at 49. That left only a portion of Count II — an equal protection challenge to the preemption of local lawmaking by Section 3 of H.B. 142 — that stated a justiciable claim upon which relief could be granted. Doc. 248 at 3-4. The sole procedural injury supporting that aspect of Count II was that H.B. 142 allegedly deprives Plaintiffs of a meaningful opportunity to advocate for new or amended local ordinances regulating employment practices and public accommodations. Doc. 248 at 33-37.[1]

## ARGUMENT

### I. THE PROPOSED CONSENT DECREE IS NOT ALIGNED WITH THE REMAINING CLAIMS IN THIS CASE.

Now that Plaintiffs' substantive claims have been dismissed for lack of jurisdiction, their only remaining challenge to H.B. 142 alleges that Section 3 of that law deprives Plaintiffs of their procedural right to equal participation in local politics. This Court expressly noted that the alleged injury does not concern Plaintiffs' potential *success* in advocating for favorable local ordinances, but loss of their *opportunity* to do so, win or lose. Doc. 248, at 35, 38. Plaintiffs now describe their remaining alleged injuries solely in procedural terms. Doc. 265 at 4 (alleging that H.B. 142 "render[s] meaningless any advocacy by Plaintiffs" on "public facility access or … local non-discrimination ordinances"). Because the remaining injury is undisputedly procedural rather than

---

[1] Counts VI and VII, brought against the UNC Defendants, were dismissed for lack of standing as they pertain to H.B. 142 and, in any event, are not relevant to the pending motion. Doc. 248 at 30-31, 38-39. Counts III, IV, and V relating to the repealed H.B. 2 were not dismissed, but are on hold pending resolution of Plaintiffs' H.B. 142 claims. Doc. 248 at 40-42.

3

substantive, only a procedural remedy would address it, *e.g.*, a realistic opportunity for advocacy of new ordinances, not any particular outcome.

But that is not the relief the consent decree contemplates. Instead, the first two paragraphs of proposed relief bear only on the substantive claims this Court has dismissed as nonjusticiable. The third paragraph does not address the alleged procedural claims either, but rather a hypothetical injury that Plaintiffs never pleaded and that would not support jurisdiction in any event. The lack of alignment between the surviving claims and the relief in the proposed consent decree violates the fundamental rule that a consent decree must arise from — and remedy — the particular claims giving the court jurisdiction.

### A. Paragraph 1 of the Proposed Decree Neither Arises from Nor Remedies the Surviving Equal Protection Claim and Inappropriately Binds the State.

This Court found that Plaintiffs' alleged "uncertainty" about their right to access multiuser facilities is not a justiciable injury and dismissed the claims premised on that injury. Doc. 248 at 24-39. Nonetheless, Paragraph 1 of the proposed consent decree seeks to remedy that very alleged uncertainty:

> With respect to public facilities that are subject to Executive Branch Defendants' control or supervision, nothing in H.B. 142 can be construed to prevent transgender people from lawfully using public facilities in accordance with their gender identity. The Executive Branch Defendants as used in this paragraph shall include their successors, officers, and employees. This Order does not preclude any of the Parties from challenging or acting in accordance with future legislation.

Doc. 264-1 at 5. That language is a complete mismatch with Plaintiffs' justiciable claims, for it says nothing about either preemption of local or agency policies or alleged deprivations of Plaintiffs' procedural rights. Because it is directed solely at the substantive

4

claims in Count I and Count II that were dismissed on jurisdictional grounds, it is beyond this Court's jurisdiction to enter.

As Plaintiffs acknowledge, a court must have subject matter jurisdiction over a claim to enter a consent decree. Doc. 265, at 9 (citing *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 299 (4th Cir. 2001), and *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986)). The Supreme Court has made clear that a "consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction." *Local No. 93*, 478 U.S. at 525. Because this Court has found subject matter jurisdiction only over narrow equal protection claims involving alleged loss of Plaintiffs' procedural rights, any relief sought from a consent decree must be "a tailored remedial response" to those claims, and cannot reach back to provide substantive relief deriving from nonjusticiable claims. *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 847 (5th Cir. 1993) (*en banc*) (hereinafter "*LULAC*").[2]

Here, where the remedies in the proposed consent decree extend beyond the remaining justiciable claims, the consent decree also takes on the appearance of prospective legislation rather than resolving a case or controversy. That, too, exceeds this Court's role.

---

[2] It does not matter that this Court dismissed Count II, as to Section 2 of H.B. 142, for failure to state a claim rather than lack of jurisdiction. The Court found standing for Plaintiffs' Count II equal protection challenge against Section 2, but only insofar as Plaintiffs argued that Section 2 "prevent[s] transgender individuals from being able to access the legislative process," *i.e.*, causes them a procedural injury. Doc. 248 at 31; Doc. 265 at 4-6 (Plaintiffs interpreting this Court's order in that way). Count II was only ever justiciable to the extent that it claimed procedural injuries — which, again, Paragraph 1 of the consent decree does not speak to. In the alternative, to the extent that any substantive aspects of Count II were justiciable, a "consent decree must arise from the pleaded case," *LULAC*, 999 F.2d at 846, so dismissal for failure to state a claim rules out a consent decree just as surely as dismissal for want of jurisdiction.

5

*Fairfax Covenant Church v. Fairfax County Sch. Bd.*, 17 F.3d 703 (4th Cir. 1994) ("It is axiomatic in our system that courts … decide actual cases and controversies, and that courts are not charged with responsibility for making new, prospective rules for society. That function is typically legislative.") (citation omitted).

Plaintiffs' jurisdictional argument misses the point. Doc. 265 at 9-12. Plaintiffs rely entirely on the fact that this Court found jurisdiction over aspects of their equal protection claims based on alleged impairment of political participation rights. *Id.* at 9. But it does not follow that the Court also has jurisdiction to enter a consent decree bearing on their *substantive* claims. To the contrary: jurisdiction over one claim does not imply jurisdiction over another claim. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (explaining that "a plaintiff must demonstrate standing for each claim he seeks to press"). And the theoretical possibility that this Court's jurisdictional dismissal might be reversed does not permit relief on nonjusticiable claims now. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed *at all* in any cause.") (quotes omitted; emphasis added); *see* Doc. 265 at 11-12.

Plaintiffs also say this paragraph only recognizes that H.B. 142 does not itself regulate access to public facilities, and preempts further executive action on the topic. Doc. 265 at 15-16. On Plaintiffs' theory, the consent decree merely codifies and freezes that status quo. But that argument is self-defeating, for federal courts cannot announce binding legal rules just because the parties agree on them. In the absence of a justiciable claim remediable by the decree's terms, freezing the status quo exceeds this Court's jurisdiction.

*Brady v. Thurston Motor Lines*, 726 F.2d 136, 146 (4th Cir. 1984) ("Litigants cannot, by their own act or omission, invoke the jurisdiction of a federal court where there is no 'case or controversy.'") (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 7-8 (1978)).

Plaintiffs' effort to freeze the status quo also exceeds this Court's jurisdiction because there is no risk that the status quo will be upset. All parties, and this Court, have always agreed that H.B. 142 does not itself regulate access to multiuser facilities. There is no impending danger of the Executive Branch Defendants changing their position; indeed, the Governor has issued an executive order similar in substance to Paragraph 1 of the proposed consent decree. Doc. 248 at 27. A controversy on that point is therefore unripe. *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court.") (citation omitted); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quotes omitted); *see also Toilet Goods Assn., Inc. v. Gardner*, 387 U.S. 158, 163 (1967) (issue is unripe where "we have no idea whether or when such an [anticipated action] will be ordered and what reasons the Commissioner will give to justify his order"). This Court lacks jurisdiction to enter a decree seeking to "remedy" such non-injury.

The fact that Plaintiffs and the Executive Branch Defendants are so anxious to have this Court include Paragraph 1 in a consent decree suggests that something more is afoot.

Perhaps they want an "advisory" injunction to make a political point — to use this Court to advance a public relations battle — or to constrain hypothetical policy judgments by future elected Executive Branch officials. Neither is permissible: An advisory injunction freezing a preferred status quo without any live controversy is just as problematic as an advisory opinion. *City of Fredericksburg, Va. v. F.E.R.C.*, 876 F.2d 1109, 1113 (4th Cir. 1989) (court lacks jurisdiction to issue advisory rulings on future hypothetical circumstances); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Furthermore, fears of how a *future* executive officer might construe H.B. 142 are unripe and too speculative to confer standing. If claims are unripe when they are "contingent upon a decision to be made by a third party that has not yet acted," *e.g.*, *Doe*, 713 F.3d at 758, *a fortiori* they are unripe when even the *identity* of the supposed third party who might someday act is unknown. Whatever function Paragraph 1 is supposed to serve, it is inappropriate for this Court to enter it.[3]

### B. Paragraph 2 of the Proposed Decree Neither Arises from Nor Remedies the Surviving Equal Protection Claim and Inappropriately Constrains Unchallenged Executive Functions.

The second paragraph of the consent decree goes beyond pointlessly freezing the status quo and seeks to interfere with laws and Executive Branch duties beyond H.B. 142:

> The Executive Branch Defendants, in their official capacities, and all successors, officers, and employees are hereby permanently enjoined from

---

[3] It is possible that Plaintiffs and the Executive Branch Defendants mean Paragraph 1 to apply to a broader class of decisionmakers than the Executive itself — perhaps State courts. But if *that* is the intent, Paragraph 1 impermissibly purports to tell State courts how to interpret State law, to the detriment of parties neither present nor represented in this Court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (federal courts may not direct State officers on how to comply with State law).

enforcing Section 2 of H.B. 142 to bar, prohibit, block, deter, or impede any transgender individuals from using public facilities under any Executive Branch Defendant's control or supervision, in accordance with the transgender individual's gender identity. Under the authority granted by the General Statutes existing as of December 21, 2018, and notwithstanding N.C.G.S. § 114-11.6, the Executive Branch Defendants are enjoined from prosecuting an individual who uses public facilities under the control or supervision of the Executive Branch, when such use conforms with the individual's gender identity, and is otherwise lawful.

The first sentence seems largely redundant with Paragraph 1: insofar as the Executive Branch Defendants may not construe H.B. 142 to have such an effect, they presumably cannot "enforce[e] Section 2 of H.B. 142" in such a way either. The objections explained above thus apply equally to the first sentence of Paragraph 2.

The second sentence of Paragraph 2 raises additional issues. It is either pointless or faithless: It is likely pointless in that to the extent some law other than H.B. 142 provides the basis for prosecution — and that would *always* be the case, for H.B. 142 has no enforcement provision, prohibits no private conduct, and carries no penalties — then the use of the facilities would not be "otherwise lawful."[4] That sentence of Paragraph 2, in other words, may not actually exempt any conduct from prosecution. Furthermore, considering that that the Executive Branch Defendants have given no indication that they would ever support such a prosecution, disputes over their authority to do so are hypothetical and unripe. *E.g.*, *Doe*, 713 F.3d at 758. The fact that Paragraph 2 has no

---

[4] The referenced statute, N.C.G.S. § 114-11.6, establishes a Special Prosecution Division within the office of the North Carolina Attorney General, "available to prosecute or assist in the prosecution of criminal cases when requested to do so by a district attorney[.]"

obvious object suggests that its main value is for public relations, not resolution of legal disputes.

In the alternative, Plaintiffs and the Executive Branch Defendants may seek to bind the Executive Branch Defendants' *successors* by permanently immunizing from prosecution any "use [of public facilities] that conforms with the individual's gender identity," regardless of H.B. 142. That would have two invidious results. First, it would set the precedent that when private parties and the Executive Branch agree on how a law should be enforced, they can use the mechanism of a consent decree to bind all future State officers to a temporary political settlement. As discussed in more detail below, that is not a proper use of a consent decree. Second, it would enjoin the Executive Branch Defendants (including their successors) from enforcing other laws *not challenged in this case*. This Court has already held that fear of prosecution under other laws is insufficient to confer standing here, Doc. 248 at 29-30, so that sentence reflects yet another effort to obtain a consent decree that exceeds this Court's jurisdiction. The relief it would provide to Plaintiffs, once more, has nothing to do with the procedural claims that remain, and relates only to the substantive injuries that this Court has held nonjusticiable. Paragraph 2 thus does not remedy any current or likely injury but seeks to lock in a favorable political moment.

**C.**    **Paragraph 3 of the Proposed Decree Neither Arises from Nor Remedies the Specific Injuries Alleged in the Surviving Equal Protection Claim, but Instead Remedies Hypothetical or Speculative Injuries that Would Not Support Standing.**

The final paragraph of the proposed consent decree purports to bar enforcement of H.B. 142 against local governments that choose to interpret pre-existing sex discrimination laws in broad ways:

> The Executive Branch Defendants, in their official capacities, and their successors, officers, and employees are hereby permanently enjoined from enforcing Section 3 of H.B. 142 to restrict any local government from interpreting other existing laws as protecting against discrimination on the basis of sexual orientation, gender identity or gender expression.

This paragraph would remedy a claim that Plaintiffs never even pleaded. At no point have Plaintiffs alleged that Section 3 of H.B. 142 barred transgender-favorable *interpretations* of *existing* discrimination laws, let alone that they were injured by such prohibitions. They certainly have not alleged that Section 3 preempts application of existing laws by local governments. And because Paragraph 3 bears only on *interpretations of existing law*, it also does not remedy Plaintiffs' surviving Count II claim, which seeks to re-establish the opportunity to lobby for *new or amended laws* by enjoining Section 3 of H.B. 142. By creating an injunction over a claim Plaintiffs never raised, all the while ignoring the sole alleged injury this Court found to be justiciable and the only claim to survive dismissal, the proposed decree exceeds the power of this Court. *See LULAC*, 999 F.2d at 847.

There is once again no reason to anticipate that the Executive Branch Defendants would ever interpret Section 3 of H.B. 142 in the way this paragraph forbids, so the issue is unripe. And Section 3 expires on December 1, 2020 anyway, at which point Plaintiffs'

11

claims involving that aspect of H.B. 142 will be moot. *See* H.B. 142, § 4; *Burke v. Barnes*, 479 U.S. 361, 363 (1987); *Cox v. Phillips*, 145 F.3d 1323, 1998 WL 231229, at *2 (4th Cir. 1998) (table) ("As a general rule, if a challenged law expires, the case becomes moot.") (quotes and alterations omitted). The fact that Plaintiffs and the Executive Branch Defendants seek a consent decree "permanently" enjoining the Executive Branch from something it is unlikely to do, involving a problem Plaintiffs never complained of and which will shortly be moot, suggests once again that the consent decree is part of an ulterior strategy rather than a genuine legal settlement.

Plaintiffs and the Executive Branch Defendants may envision localities circumventing H.B. 142 by "interpreting" existing laws rather than passing new ones. The question whether that conflicts with H.B. 142 would be a State-law issue, not a federal one, and this Court should not interfere with it in advance. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). It would be especially inappropriate for the Court to load the dice for one side, *i.e.*, by solely protecting local governments that expand sex discrimination statutes in ways Plaintiffs prefer but not local governments that continue to interpret "sex" discrimination in the orthodox way. If the Executive Branch Defendants do not intend to evenhandedly execute the laws of North Carolina, they should not be permitted to use this Court's powers in doing so. Rather, let them do so on their own authority, without the cover of an injunction by this Court allowing them to pretend it was not a choice.

12

\* \* \* \*

The glaring mismatch between the injunctions sought in the consent decree and the claims that survived the motion to dismiss demonstrates that the decree exceeds this Court's jurisdiction. Here, parties dissatisfied with political compromises seek to upend those compromises and use the Court to bar future elected officials from taking a different view. That is improper.

## II. THE CONSENT DECREE WOULD IMPROPERLY INTERFERE WITH THE STATE'S POLICTICAL PROCESSES AND TAKE SIDES IN A CONTENTIOUS POLITICAL ISSUE.

A second overarching problem with the proposed consent decree is that it inserts this Court into the middle of a political dispute between the Executive Branch and the Legislature. Seemingly dissatisfied with the political compromise that resulted in H.B. 142, the current Executive has never defended the law in this Court. Rather, by cooperating with Plaintiffs, the Executive Branch Defendants seek to achieve through a contrived settlement what they could not achieve in the give-and-take of the political arena.

As the Fifth Circuit has recognized, consent decrees are prone to abuse in such circumstances: "Courts must be especially cautious when parties seek to achieve by consent decree what they cannot achieve by their own authority. Consent is not enough when litigants seek to grant themselves powers they do not hold outside of court." *LULAC*, 999 F.2d at 846. Indeed, using language especially applicable to this case, the Fifth Circuit "recognized the danger of manipulation faced by federal courts. We may be asked to effectuate substantive results that government officials are not empowered to bring about

13

themselves. ... The risk can be realized in many ways, but is palpable where sharply divided state officials would draw the federal courts into a partisan political battle." *Id*. at 846-47 (citation omitted).

Related concerns with drawing federal courts into political battles underpin multiple limiting doctrines such as jurisdiction, standing, ripeness, and abstention. The case or controversy requirement of Article III, for example is "an essential limit on [federal court] power: It ensures that we act as judges, and do not engage in policymaking properly left to elected representatives." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013). Similarly, the "doctrine of standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id*. at 704. The standing requirement of personal and concrete injury, rather than speculative future harm, "ensures that the Federal Judiciary respects 'the proper — and properly limited — role of the courts in a democratic society.'" *Id*. at 715 (quoting *DaimlerChrysler*, 547 U.S. at 341 (internal quotation marks omitted)). And State sovereign immunity prevents federal judicial interference in political and other matters except where it is "is necessary to 'give[] life to the Supremacy Clause.'" *Bragg*, 248 F.3d at 292 (citation omitted).

The consent decree sought in this case is incompatible with all of those principles. The current Executive Branch Defendants and Plaintiffs have never been meaningfully adverse to each other. Now, the consent decree — which pursues overbroad remedies for non-existent and non-justiciable claims — shows that they instead intend to cooperate to undercut H.B. 142 and its defense by Legislative Intervenors. That goes to the Court's

14

Article III jurisdiction: Because an actual controversy must exist at *all* stages of the litigation lest the case becomes moot, *Action NC v. Strach*, 216 F. Supp. 3d 597, 612 (M.D.N.C. 2016), this Court might properly wonder whether the Executive Branch Defendants remain adverse to the Plaintiffs in any sense.[5]

Two parties on the same side of a dispute cannot agree to a consent decree over the objections of the only parties who are actually adverse to them.[6] The Fifth Circuit articulated the central concern over the federalism implications of such a requested consent decree, noting:

> The suggestion that state political groups, unable to muster sufficient political force to change the system, can by "agreement" enlist the preemptive power of the federal court to achieve the same end stands federalism on its head. Of course, we defer to legislative will and state decision. Here, the "decision" to which we are asked to defer is a decision by a political faction that the federal court should order the state to change its system. We do not share this curious view of federalism.

*LULAC*, 999 F.2d at 849.

This Court should reject movants' efforts to use the federal judicial power to circumvent democratic politics. Rather, it should allow Legislative Intervenors to continue to defend H.B. 142 without the Executive Branch effectively undercutting such defense by

---

[5] While Plaintiffs remain adverse to the Legislative Intervenors and UNC, the Executive Branch Defendants might even be best realigned with the Plaintiffs. *Cf. LULAC*, 999 F.2d at 844 (in discussing actions of an Texas Attorney General seeking to settle a case out from under his clients through a consent decree, court notes that "if the Attorney General changes his views on the merits of the case, realigning him with the plaintiffs may be appropriate.").

[6] Legislative Intervenors note that to the extent the Executive Branch Defendants are purporting to waive the State's Eleventh Amendment Immunity by proposing the consent decree, they are exceeding their proper authority and thus demonstrate the need for Intervenors to protect the interests of the State and its laws.

15

decree. If at some point all parties to this case eventually agreed on a settlement, that would be different. But where the parties representing the interests of the State are divided, this Court should stay its hand and allow Intervenors to defend this case.

## III. ADDITIONAL CONSIDERATIONS WEIGH AGAINST THE PROPOSED CONSENT DECREE.

Given that the movants are seeking various permanent injunctions, they should also be required to meet the ordinary criteria for an injunction, or at least for a preliminary injunction. Merely consenting to a course of action should not be sufficient for this Court to exercise its coercive power. But movants have not met their burden of justifying this Court's exercise of equitable discretion.

The proper perspective on consent decrees was described by the Fifth Circuit in *LULAC*, 999 F.2d at 845-47. There the court recognized that:

> [e]ven if all of the litigants were in accord, it does not follow that the federal court must do their bidding. The proposal is not to dismiss the lawsuit, but to employ the injunctive power of the federal court to achieve a result that the Attorney General and plaintiffs were not able to achieve through the political process. The entry of a consent decree is more than a matter of agreement among litigants. It is a "judicial act." … Courts must exercise equitable discretion before accepting litigants' invitation to perform the judicial act.

*Id* at 845-46 (citations omitted). It follows that a "consent decree must arise from the pleaded case and further the objectives of the law upon which the complaint is based." *Id* at 846. Likewise, a consent decree "involves the court's sanction and power and is not a tool bending without question to the litigants' will. … '[P]arties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction.'" *Id*. (quoting *System Fed'n No. 91, Ry. Employees' Dep't, AFL–CIO v. Wright*, 364 U.S. 642, 651

16

(1961)). Any agreement for a consent decree must be "'fair, adequate, and reasonable' and 'is not illegal, a product of collusion, or against the public interest.'" *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999) (internal citation omitted).[7]  The proposed decree fails these requirements.

### A.  The Benefits of the Decree and the Strength of Plaintiffs' Case Are Exaggerated and Insufficient to Justify Injunctive relief.

First, the proposed consent decree is not fair, adequate, and reasonable.  Plaintiffs admit that a consent decree should only be entered upon considering "the strength of the plaintiff's case" and "likelihood of success on the merits." Doc. 265 at 8.  Here, where most of Plaintiffs' claims have been dismissed, including the claims for substantive relief on which Paragraphs 1 and 2 of the consent decree are premised, the likelihood of success on those claims is minimal. The benefits Plaintiffs seek come exclusively from freezing the status quo and remedying supposed injuries that are not well-pleaded or justiciable. But this Court already has held Plaintiffs' substantive injuries — for example, from "uncertainty" about applicable rules — to be speculative and inadequate for standing. Doc. 248 at 24-39. Remedying injuries too insubstantial to support standing is thus almost definitionally inadequate to count as a benefit justifying the exercise of this Court's injunctive power. Paragraph 3 of the consent decree relates to theories and claims Plaintiffs never brought in the first place, and which would not be justiciable even if Plaintiffs had.

---

[7] Plaintiffs implicitly concede as much, noting that the Court is to weigh various factors such as the strength of Plaintiffs' case and the public interest. Doc. 265 at 7-8.

Case 1:16-cv-00236-TDS-JEP   Document 271   Filed 02/08/19   Page 17 of 25

And the consent decree provides *no* benefit relevant to the remaining equal protection claim based on Section 3 of H.B. 142, which the consent decree does not address at all.

Plaintiffs' principal argument is that providing "clarity" about H.B. 142 serves the public interest. Doc. 265 at 13-14. But that merely repackages the very alleged interest this Court held was insufficient to confer standing. Doc. 248 at 24-30. Plaintiffs also forget that providing clarity prematurely has potentially serious harms and costs of its own. *Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 78 (1961) ("[T]he reason of postponing decision until a constitutional issue is more clearly focused by, and receives the impact from, occurrence in particular circumstances is precisely that those circumstances may reveal relevancies that abstract, prospective supposition may not see or adequately assess.").

Nor does it make sense to rely on the doctrine of constitutional avoidance to enter substantive relief on claims that have been dismissed as nonjusticiable. Doc. 265 at 14, 20. There is no constitutional issue to avoid as to preemption of Executive action, for example, because *all* Section 2 claims have been dismissed, and none of the proposed decree's provisions address the remaining Section 3 claim. This Court's jurisdictional dismissal has *already* avoided the constitutional issues; the consent decree revives them.

That argument also makes no sense in light of the consent decree's particular provisions. Given the jurisdictional and federalism concerns discussed above, entry of the consent decree would *raise* more constitutional questions than it avoids. And the mismatch between Plaintiffs' claims and the consent decree's provisions minimize any benefit.

18

Assuming that Legislative Intervenors will be permitted to continue to defend H.B. 142, the consent decree does not even provide the benefit of saving the Plaintiffs or the State money that will be spent on litigation.

In any event, Plaintiffs concede that constitutional avoidance is for the presumed benefit of the State itself, based on federal courts' reluctance to strike down State laws unnecessarily. *See* Doc. 265 at 21 (citing *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 300 (4th Cir. 2009)). It is not for the benefit of the Executive Branch Defendants, who in this instance are unwilling and inadequate defenders of State law. The Legislative Intervenors alone represent any underlying State interest in potentially avoiding constitutional scrutiny of H.B. 142, and Intervenors do not wish to settle on the consent decree's terms.

### B. The Decree Collusively Interferes with the Legislative Intervenors' Ability to Defend the Law and hence Is Contrary to the Public Interest.

The proposed consent decree is also contrary to the public interest because it interferes with Legislative Intervenors' ability to defend State law. While Plaintiffs note that settlement generally is favored, Doc. 265 at 7-8, that principle has little application in current circumstances where the Legislature asserts its *independent* interest in defending State law. Doc. 33; Doc. 34 at 15-20; Doc. 44. The Executive Branch Defendants' refusal to defend the law independently underscores the importance of that interest. Allowing the Executive Branch Defendants to settle most of the case out from under the Legislative Intervenors undermines the point of intervention, and hence is not remotely fair, adequate, or reasonable. *Local No. 93*, 478 U.S. at 529 ("A court's approval of a consent decree

19

between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors[.]").

The lack of genuine adversity undermines the very operational premise of the federal courts, namely, that parties contesting a genuine case or controversy offer an adverse presentation that provides sufficient information and opposition for the court to make a judicial decision. *See, e.g.*, *United States v. Fruehauf*, 365 U.S. 146, 157 (1961). Such consent cannot support the imposition of what amounts to an advisory injunction converting a private agreement into public federal law, still less when it would supersede *State* law over the objection of the Legislature. *Cf. LULAC*, 999 F.2d at 840 (rejecting State Attorney General's claim to be the "sole arbiter of State policy when the State's interest is in litigation" and finding "remarkable" his contention that "he need not represent the State's policymakers [and] … can ignore them and impose his own views"; an "Attorney General cannot bind state officials, his clients, to his own policy preferences" by accepting a settlement impairing the enforcement of State law).

If the Legislative Intervenors are allowed to continue defending H.B. 142, the consent decree should at least be contingent on the outcome of that defense. Otherwise, Intervenors run the risk of successfully defending the law, yet having the Executive Branch restricted by the consent decree, with the power of a federal court used to enshrine Plaintiffs' failed claims. That would be an inappropriate use of Article III power — certainly of this Court's equitable discretion — and contrary to the public interest.

Case 1:16-cv-00236-TDS-JEP   Document 271   Filed 02/08/19   Page 20 of 25

Finally, the lack of any meaningful defense from the Executive Branch Defendants raises the possibility of collusion that should be investigated before entering a consent decree. While the parties' memoranda both claim that extensive "negotiations" led to this settlement, Doc. 265 at 4-5, 22-23; Doc. 266 at 2-3, 4, there is no evidence that they negotiated from a position of adverseness rather than merely spending time predicting what they could collectively get away with. Rubber-stamping such an alliance as if it were an arms-length negotiation between adversaries stretches credulity too far. Movants should be required to do more to satisfy their burden of disproving the inference of collusion among political allies.

## C. Consent Decrees Should Not Be Allowed to Provide Relief Beyond That Available had the Plaintiffs Succeeded on their Viable Claims.

Movants may argue in response that consent decrees can exceed the relief available for successful claims. *See*, *e.g.*, *Berry v. Schulman*, 807 F.3d 600, 610 (4th Cir. 2015) (discussing class action certification and consent decree between private parties). However, to Intervenors' knowledge no such case controls the precise issues presented here, which involve a proposed consent decree impacting State law and opposed by the State legislature. In any event, if applied here such a view of judicial power would exceed Article III's *jurisdictional* limits on federal courts, violate separation of powers and federalism doctrines, and otherwise be an abuse of discretion. *See Local No. 93*, 478 U.S. at 525 ("[A] consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction.").

Federal courts have only the power granted to them by the Constitution and Congress. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (federal district courts are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute") (quotes and citation omitted). If Plaintiffs' claims are nonjusticiable, Plaintiffs should not be able to expand the scope of permissible statutory or constitutional remedies merely because the parties agree. *United States v. City of Miami, Fla.*, 664 F.2d 435, 441 (5th Cir. 1981) (consent decree is an "adjudication," not a mere agreement, and a court must not "put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence"). A contrary rule would be no different from allowing the parties to agree on jurisdiction. Even if the Court could enter a consent decree "provid[ing] broader relief than the court could have awarded after a trial," *Local No. 93*, 478 U.S. at 525, it cannot have unlimited discretion to grant relief without a close nexus to particular well-pleaded and justiciable claims.[8]

At a minimum, even if this Court could enter a consent decree granting broader relief than provided by statute or the constitution, discretion suggests extreme caution in such a course of action, which would be challenged as unconstitutional or an abuse of discretion on appeal.

---

[8] To the extent precedent allows broader relief than Congress or the constitution has authorized, regardless of a court's jurisdiction and power to provide relief, it is mistaken and should be overruled.

22

## CONCLUSION

Because the consent decree (1) does not align with the remaining claims — and indeed seeks relief on claims over which there is no jurisdiction — and (2) inappropriately involves a federal court in a State political dispute, this Court should deny the Joint Motion.

Respectfully submitted,

By: /s/ Stephen S. Schwartz
Gene C. Schaerr* (DC Bar #416638)
Erik S. Jaffe* (DC Bar # 440112)
Stephen S. Schwartz* (DC Bar #477947)
*Counsel for President Pro Tempore*
*Phil Berger and Speaker Tim Moore*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Email: gschaerr@schaerr-jaffe.com
        ejaffe@schaerr-jaffe.com
        sschwartz@schaerr-jaffe.com

By: /s/ Robert D. Potter, Jr.
Robert D. Potter, Jr. (State Bar #17553)
*Counsel for President Pro Tempore*
*Phil Berger and Speaker Tim Moore*
2820 Selwyn Avenue, #840
Charlotte, NC 28209
Telephone: (704) 552-7742
Email: rdpotter@rdpotterlaw.com

*appearing pursuant to Local Rule 83.1(d)

*Counsel for Intervenor-Defendants*

Date: February 8, 2019

23

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief complies with the word limits of Local Civil Rule 7.3(d) because, excluding the parts exempted by the rule, the brief contains 6249 words.

/s/ *Stephen S. Schwartz*
Counsel for Intervenor-Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

/s/ *Stephen S. Schwartz*
Counsel for Intervenor-Defendants

2