UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOAQUÍN CARCAÑO, *et al.*,

    *Plaintiffs*,

v.

ROY A. COOPER, III, *et al.*,

    *Defendants*,

and

PHIL BERGER, *et al.*,

    *Intervenor-Defendants.*

No. 1:16-cv-00236-TDS-JEP

### PLAINTIFFS' REPLY IN SUPPORT OF
### SUPPLEMENTAL JOINT MOTION FOR ENTRY OF A CONSENT DECREE

Intervenor-Defendants' ("Intervenors") opposition to Plaintiffs' and Executive Branch Defendants' (collectively "the Parties") joint motion for entry of a consent decree barely references Plaintiffs' strong arguments and the binding case law that support entry of the consent decree. Intervenors instead raise a red herring, claiming there is a mismatch between the decree and what they describe as the purely "procedural" remaining equal protection claims. Such a distinction does not exist in the law. Intervenors also cast unsupported aspersions about the Parties' motivations in proposing the consent decree. And Intervenors cite no authority for their remarkable claim that Executive Branch Defendants—the only named state defendants and the only parties

1

charged with enforcing H.B. 142—cannot settle the claims directed at them. When actually evaluated on its merits, the proposed decree is manifestly in the public interest and is "fair, adequate, and reasonable." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). This Court should enter it.

## I. This Court Undoubtedly Has Jurisdiction To Enter The Consent Decree.

This Court plainly has jurisdiction to enter the consent decree because it found subject matter jurisdiction over Plaintiffs' equal protection challenges to *both* Section 2 and Section 3 of H.B. 142. *See, e.g.*, Pls.' Mem. Supp. Consent Decree, at 9-12, ECF No. 265 ("Pls.' Mem."). Rather than grapple with the cases Plaintiffs cite, Intervenors raise an illusory distinction. They claim that Plaintiffs' injury "is undisputably procedural rather than substantive" such that "only a procedural remedy would address it." Opposition at 3-4, ECF No. 271. Intervenors argue that a consent decree can provide, at most, a "realistic opportunity for advocacy for new ordinances," and not "any particular outcome." *Id.*

As an initial matter, this argument is flawed because the consent decree is narrower than Intervenors claim. The consent decree interprets, rather than invalidates, H.B. 142, and thus causes no substantive change in the law. Pls.' Mem. at 15-17. Indeed, with respect to Section 2, the decree merely adopts this Court's reading that "[n]othing in the language of Section 2 can be construed to prevent transgender individuals from using the restrooms that align with their gender identity." Memorandum Opinion & Order at 49, ECF No. 248 ("Mem. Op.").

Even if the relief proposed *could* be described as a substantive change in law causing a particular outcome (which it cannot), each Paragraph of the consent decree is entirely appropriate. Intervenors cite no case law adopting their supposed "procedural rather than substantive" distinction. That is for good reason: the distinction does not exist. As the Supreme Court has "repeatedly emphasized," it is "discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community" that causes injury. *Heckler v. Mathews*, 465 U.S. 728, 739 (1984).

Thus, when an equal protection disparate treatment claim alleges that a statute was enacted with a discriminatory *intent*, the proper remedy typically is to invalidate the statute: "When discriminatory intent impermissibly motivates the passage of a law, a court may remedy the injury—the impact of the legislation—by invalidating the law." *N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 238 (4th Cir. 2016). This is so even if the invalidation incidentally has a substantive effect. When individuals are deprived of equal treatment, the "appropriate remedy is a *mandate of equal treatment*," which "can be accomplished" either through "withdrawal of the benefits from the favored class" *or* through "*extension of benefits to the excluded class*." *Heckler*, 465 U.S. at 740 (emphasis added).

Paragraph 1 remedies Plaintiffs' injuries as to Section 2 of H.B. 142 by construing the statute—consistent with this Court's and Executive Branch Defendants' reading—as imposing no *current* barrier to transgender individuals' use of public facilities consistent with their gender identity. In adopting that reading, and in confirming that H.B. 142 is

3

not itself a barrier, the decree directly remedies Plaintiffs' inability to advocate for "agency regulation of access to bathrooms and other facilities." Mem. Op. at 34. That the consent decree simply adopts an interpretation this Court has accepted (based on the statute's language) fully rebuts Intervenors' claim that the decree "takes on the appearance of prospective legislation." Opposition at 5-6. The consent decree also does not inappropriately "freeze the status quo." *Id.* at 7. Executive Branch Defendants and their successors remain free to take any action permitted by law under any other authority. The decree merely states that *H.B. 142* cannot serve as a basis for excluding transgender individuals from public facilities that accord with their gender identity.[1]

As Intervenors concede, Paragraph 2 is merely a corollary of Paragraph 1: if H.B. 142 cannot be construed to bar facility access, that law also cannot be used as a basis to *enforce* exclusion. Paragraph 2 reaches no further. It prohibits prosecution only when such restroom use is "otherwise lawful"—*i.e.*, when that use does not violate other laws. Intervenors' claim that the consent decree bars the enforcement of laws "not challenged in this case" is therefore specious. *See* Opposition at 10.

Paragraph 3 also remedies Plaintiffs' Section 3 claim. Plaintiffs clearly allege that Section 3 was "motivated by an intent to treat LGBT people differently" by "precluding any local government *from taking action* to protect LGBT people against discrimination

---

[1] At least as a basis for adopting the consent decree, Plaintiffs do not argue that the Court's standing dismissal might be reversed. *But see* Opposition at 6. For purposes of the proposed decree, Plaintiffs seek to settle the remaining equal protection claims for which the Court found standing. And, because the bar to Plaintiffs' ability to seek accommodations is *ongoing*, these claims are ripe, contrary to Intervenors' claim. Opposition at 7.

in private employment or places of public accommodation." Fourth Amended Complaint ¶ 329, ECF No. 210 ("FAC") (emphasis added). Naturally, Section 3's prohibition on *amending* laws might cause local governments to hesitate to interpret existing laws. Intervenors effectively concede as much when they argue that the decree might permit localities to "circumvent[] H.B. 142 by 'interpreting' existing laws rather than passing new ones." Opposition at 12. Plaintiffs' claim can be remedied, at least in part, by an interpretation clarifying that even under H.B. 142 localities remain free to interpret existing laws to encompass prohibitions on sexual orientation, gender identity, or gender expression based discrimination.[2]

Intervenors' passing claims that *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984), poses a problem for the consent decree are also wrong. *See* Opposition at 8 n.3 & 12. When a consent decree—like the one proposed here—is "reached to comply with *federal law*," entry and enforcement of the decree does not transgress *Pennhurst*'s limitations. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 439 (2004) (emphasis added). If a consent decree adopts a construction of state law as a means to "settle a live federal constitutional claim," the provisions of such a "validly-

---

[2] While Section 3 is set to expire on December 1, 2020, that is no reason to reject the consent decree. The law continues to cause *ongoing* injury. That the law will remain in effect for nearly 22 months decisively shows that Intervenors' ripeness argument is baseless. Opposition at 11-12. And, contrary to Intervenors' similarly baseless "loading the dice" argument, nothing in the decree *requires* local governments to adopt an interpretation of existing laws to cover discrimination on the basis of sexual orientation, gender identity, or gender expression. *Id.* at 12.

5

entered consent decree [are] an obligation on state officials to conform their conduct to federal law." *Komyatti v. Bayh*, 96 F.3d 955, 960 (7th Cir. 1996).

In a footnote, Intervenors half-heartedly argue that this Court's dismissal of the Section 2 claim under Rule 12(b)(6) bars a consent decree settling that claim. Opposition at 5 n.2. Intervenors cite no case adopting that premise. Their unsupported argument is directly contradicted by the numerous authorities Plaintiffs cite—and which Intervenors fail to address—explaining that arguments challenging "the merits of the settled claims" do not alter the court's jurisdiction to enter a consent decree. *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 299 (4th Cir. 2001); *see also* Pls.' Mem. at 10-12 & n.2.

On all accounts, the proposed consent decree "spring[s] from and serve[s] to resolve a dispute within the court's subject-matter jurisdiction." *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986).

## II. Intervenors Cannot Forestall Entry Of The Consent Decree With Executive Branch Defendants.

Intervenors also appear to suggest that the consent decree cannot be entered without their agreement, or that the decree subverts the political process. Both claims lack merit.

"It has never been supposed that one party—whether an original party, a party that was joined later, or an intervenor—could preclude other parties from settling their own disputes and thereby withdrawing from the litigation." *Local No. 93*, 478 U.S. at 528-29. Although an intervenor may "present evidence and have its objections heard at the

6

hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent." *Id.* at 529.

Here, the Court granted Intervenors permissive intervention. *See* ECF No. 44. Plaintiffs have not pressed any claims against the General Assembly or Intervenors. Intervenors cannot block entry of a consent decree resolving Plaintiffs' claims against Executive Branch Defendants—whom Plaintiffs actually (and properly) named as defendants under *Ex parte Young*.

To be sure, a court cannot "enter a consent decree that imposes obligations on a party that did not consent to the decree." *Local No. 93*, 478 U.S. at 529. Yet, the proposed consent decree in no way impinges on Intervenors' legislative prerogatives. The decree expressly acknowledges the General Assembly's ability to enact new or to amend existing legislation. *See* Consent Judgment and Decree at 5 ¶ 1, ECF No. 264-1 (the Order "does not preclude any of the Parties from challenging or acting in accordance with future legislation"). And the decree does not reach the application of or enforcement of laws *other than* H.B. 142. *Id.* at 6 ¶ 2 (enjoining Executive Branch Defendants from enforcing *H.B. 142* to block individuals from using facilities only when use is *otherwise lawful*).

Nor does the consent decree invalidate H.B. 142. It merely asks the Court to adopt its own reading of the statute or, if necessary, exercise its constitutional prerogative to endorse a reasonable construction of that statute to avoid constitutional doubts. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Exercise of that power does not

7

interfere with the state legislature's interests. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 177 (4th Cir. 2010).

Intervenors repeatedly cite a Fifth Circuit decision, *League of United Latin American Citizens, Council No. 4434 v. Clements* ("*LULAC*"), to support their erroneous claims that the consent decree would improperly subvert the political process. That case is entirely inapposite.

Intervenors fail to mention the key facts in *LULAC*, which reveal that that case is wholly distinguishable. In *LULAC*, the Texas Attorney General sought remand so that the district court could consider a consent decree to which certain (but not all) named defendants agreed. 999 F.2d 831, 839 (5th Cir. 1993). The proposed decree sought to enact a change in Texas law that would have otherwise required a state constitutional amendment. The Attorney General had first sought to obtain agreement from the legislature, but "[n]othing with the force of law could be obtained from the legislature." *Id.* It was only *after* the Attorney General "[f]ail[ed] to obtain any positive enactment from the legislature" that he asked the Fifth Circuit to remand for a hearing on and entry of the proposed decree. *Id.* And it was in that context that the Fifth Circuit concluded the parties may be "seek[ing] to grant themselves powers they do not hold outside of court." *Id.* at 846. What is more, it was only because one specifically named defendant had not agreed to the decree—the Chief Justice, who possessed "state constitutional duties" which would be impinged by the proposed decree—that the Fifth Circuit explained that the Attorney General "cannot bind state officials, his clients, to his own policy preferences." *Id.* at 840-41.

8

Here, unlike in *LULAC*, the General Assembly has already acted, and spoken, when enacting H.B. 142.  There is nothing unusual about a court *interpreting* that enactment, particularly when federal constitutional claims are raised.  With respect to Section 2, the consent decree endorses this Court's reading of the law.  As Plaintiffs explained, interpreting both sections of the statute to avoid its invalidation is an act of deference to the legislature.  Pls.' Mem. at 13-14.  Moreover, despite Intervenors' claims to represent North Carolina's real interest, they cite no provision of state law giving them such power.  Unlike the Chief Justice in *LULAC*, Intervenors' legislative interests are not implicated by the proposed decree here.  And Intervenors cite no authority supporting the remarkable proposition that Executive Branch Defendants—the only named state defendants and the parties charged with enforcing H.B. 142—cannot settle the claims directed at them.

## III. The Consent Decree Is Fair, Adequate, And Reasonable.

Finally, the proposed consent decree is "fair, adequate, and reasonable." *North Carolina*, 180 F.3d at 581.[3]  Rather than addressing Plaintiffs' strong showing, Intervenors fall back on their flawed jurisdictional arguments and make unsupported claims about Executive Branch Defendants' motivations in this case.  Neither strategy succeeds in undermining the decree.

---

[3] Intervenors cite no authority for their claim that the Parties are "required to meet the ordinary criteria for an injunction," Opposition at 16, or that this Court should adopt the standard articulated in *LULAC*, to the extent it differs from the Fourth Circuit's clear precedent.

### A. The Consent Decree's Narrow Relief And The Strength Of Plaintiffs' Claims Weigh In Favor Of Entering The Consent Decree.

Both the narrow interpretations embodied in the consent decree and the strength of Plaintiffs' claims weigh in favor of entering the decree. Pls.' Mem. at 14-20. The Court has concluded that "[n]othing in the language of Section 2 can be construed to prevent transgender individuals from using the restrooms that align with their gender identity." Mem. Op. at 49. The interpretation of Section 3 offered in the consent decree also would leave H.B. 142 in place and, consistent with the statute, would not permit new or amended local laws. Pls.' Mem. at 16-17. Coupled with these narrow remedies is the fact that this Court found that Plaintiffs plausibly pled their equal protection claims as to Section 3—in particular, that Plaintiffs had plausibly pled that H.B. 142 was enacted with discriminatory intent under the *Arlington Heights* factors and without any rational basis. Mem. Op. at 50-60. Because Section 2 was enacted as part of the same statute, these findings apply equally to Section 2. The Court's conclusion that Plaintiffs had not plausibly pled disparate impact as to Section 2 also depends on the very reading the consent decree seeks to adopt. Absent that conclusion (which Plaintiffs would otherwise appeal), Plaintiffs make strong claims that Section 2 is unconstitutional.

In response, Intervenors simply reiterate their unsupportable claim that the remedies embodied in the consent decree do not match the remaining equal protection claims. *See* Opposition at 17-18 (arguing that the decree remedies claims "too insubstantial to support standing," "insufficient to confer standing," or "dismissed as nonjusticiable"). As explained in Part I, *supra*, those arguments are legally flawed.

10

Nowhere do Intervenors dispute, for example, the fact that the consent decree saves, rather than invalidates, H.B. 142, or that the Court's discriminatory intent analysis supports the strength of Plaintiffs' claims as to both Sections 2 and 3. These facts weigh strongly in support of entry of the consent decree.

### B. The Consent Decree Is Not Collusive.

The consent decree is the product of good-faith negotiation. Although Intervenors cast passing aspersions on the supposedly untoward negotiations between the Parties, they point to nothing supporting their claim. Indeed, the only fact Intervenors identify is that the Parties reached a compromise.

Contrary to Intervenors' theory, the Parties attempted to include Intervenors in settlement negotiations. In July and August 2017, Plaintiffs first approached all parties, *including Intervenors*, about settlement discussions. Intervenors declined to engage in those discussions. Thereafter, Plaintiffs and Executive Branch Defendants engaged in extensive, good faith negotiations to explore whether a compromise could be reached. Those negotiations lasted for twelve weeks before the initially proposed consent decree, and for two months following the Court's resolution of the motions to dismiss. The length of time it took to arrive at a compromise acceptable to both Parties itself demonstrates an absence of collusion.

To the extent Intervenors contend that the consent decree is collusive because it inappropriately deprives them of an ability to defend state law, they again point to no legal authority allowing them to continue defending a claim when the state officials who have actually been sued have decided to settle, rather than spend limited state resources

11

continuing to litigate the case.  *See Local No. 93*, 478 U.S. at 528-29.  The consent decree in no way interferes with Intervenors' ability to legislate.

*** 

Although this Court dismissed some of Plaintiffs' claims for lack of standing, the Parties seek through the consent decree to resolve the remaining equal protection claims.  Plaintiffs accept this Court's standing conclusions for purposes of the consent decree.  By contrast, Intervenors try to have it both ways.  In their motion to dismiss, Intervenors argued that H.B. 142 merely "returns North Carolina to the *status quo ante*" before H.B. 2.  Intervenors' Brief Supp. Motion to Dismiss, at 7, ECF No. 221-1.  But Intervenors' argument now betrays their belief that H.B. 142 *itself* can and does pose an actual barrier to transgender individuals' use of facilities.  *See, e.g.*, Opposition at 8 (arguing that adopting the Court's interpretation of H.B. 142 would "constrain hypothetical policy judgments by future elected Executive Branch officials").  Intervenors state quite clearly that they object to the proposed decree because it would bar future executive officials from prosecuting use of public facilities "*regardless of H.B. 142*"—suggesting H.B. 142 could be invoked to exclude transgender individuals from public facilities.  *Id.* at 10 (emphasis added).  Indeed, these sentiments are consistent with Intervenors' past public statements, and continue to pose the exact fear that Plaintiffs allege cause them injury.  *See* FAC ¶ 246.

This Court has concluded the law should be read otherwise.  The consent decree would adopt that construction to remedy Plaintiffs' remaining equal protection claims.  "[A] district court should be guided by the general principle that settlements are

12

encouraged," *North Carolina*, 180 F.3d at 581, and this Court should enter the consent decree.

## CONCLUSION

Plaintiffs respectfully request that the Court enter the proposed consent decree.

Dated: February 22, 2019                    Respectfully submitted,

/s/ Christopher A. Brook
Christopher A. Brook (NC Bar No. 33838)     Tara L. Borelli*
Irena Como*                                 Peter C. Renn*
AMERICAN CIVIL LIBERTIES UNION OF           LAMBDA LEGAL DEFENSE AND
   NORTH CAROLINA LEGAL FOUNDATION         EDUCATION FUND, INC.
Post Office Box 28004                       730 Peachtree Street NE, Suite 1070
Raleigh, North Carolina 27611               Atlanta, GA 30308-1210
Telephone: 919-834-3466                     Telephone: 404-897-1880
Facsimile: 866-511-1344                     Facsimile: 404-897-1884
cbrook@acluofnc.org                         tborelli@lambdalegal.org
icomo@acluofnc.org                          prenn@lambdalegal.org

James D. Esseks*                            Devi M. Rao*
Leslie Cooper*                              Andrew C. Noll*
Elizabeth O. Gill*                          JENNER & BLOCK LLP
Chase B. Strangio*                          1099 New York Avenue, NW Suite 900
AMERICAN CIVIL LIBERTIES UNION              Washington, DC 20001-4412
   FOUNDATION                           Telephone: 202-639-6000
125 Broad St., 18th Fl.                     Facsimile: 202-639-6066
New York, NY 10004                          drao@jenner.com
Telephone: 212-549-2627                     anoll@jenner.com
Facsimile: 212-549-2650
jesseks@aclu.org
lcooper@aclu.org
egill@aclunc.org
cstrangio@aclu.org

*Appearing by special appearance pursuant to L.R. 83.1(d)

*Counsel for Plaintiffs*

## CERTIFICATE OF WORD COUNT

This brief complies with Local Rule 7.3(d) because, excluding the parts of the brief exempted by Rule 7.3(d) (cover page, caption, signature lines, and certificates of counsel), this brief contains 3,122 words.

Dated: February 22, 2019 /s/ Christopher A. Brook

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Christopher A. Brook, hereby certify that on February 22, 2019, I electronically filed the foregoing PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL JOINT MOTION FOR ENTRY OF A CONSENT DECREE using the CM/ECF system, and have verified that such filing was sent electronically using the CM/ECF system to all parties who have appeared with an email address of record.

/s/ Christopher A. Brook

*Counsel for Plaintiffs*