# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOAQUÍN CARCAÑO, *et al.*,

        *Plaintiffs*,

v.

ROY A. COOPER, III, *et al.*,

        *Defendants*,

and

PHIL BERGER, *et al.*,

        *Intervenor-Defendants.*

No. 1:16-cv-00236-TDS-JEP

## EXECUTIVE BRANCH DEFENDANTS' REPLY

Defendants Roy A. Cooper III, Joshua H. Stein, Machelle Sanders, Mandy K. Cohen, and James H. Trogdon III ("Executive Branch Defendants"), respectfully submit the following reply to the Legislative Intervenor-Defendants' ("Intervenors") memorandum in opposition to the Parties' joint motion for entry of a consent decree. [DE 271]

## ARGUMENT

The Intervenors oppose the entry of the proposed Consent Decree asserting three broad justifications:

- The Court lacks subject matter jurisdiction; [DE 271 at 3-13]

1

- The Consent Decree is a product of collusive political efforts; [DE 271 at 13-16]; and,

- The standard for injunctions has not been met. [DE 271 at 16-22]

For the reasons outlined below, these arguments are inaccurate. This Court possesses the requisite authority to approve the Consent Decree proposed by the Parties, and should do so notwithstanding the Intervenors' objection.

## I. THE TERMS OF THE PROPOSED CONSENT DECREE MAY ADDRESS ISSUES BEYOND PLAINTIFFS' SURVIVING CLAIMS.

After the consenting Parties submitted their original proposed Consent Decree on October 18, 2017, [DE 216, 216-1], Plaintiffs, the Intervenors, and the UNC Defendants fought a year-long battle over whether this case, and any of Plaintiffs' claims challenging NC Session Law 2017-4 ("HB 142") and NC Session Law 2016-3 ("HB 2"), should survive. This Court permitted the Executive Branch Defendants to conditionally abstain from engaging in the arguments over the merits of the requested dismissal. [DE 226]

With respect to dismissal, the Court concluded that it possesses subject matter jurisdiction over the case, dismissed some of Plaintiffs' claims, and allowed some other claims to go forward. [DE 248] The Court's authority to enter the pending Consent Decree springs from its now-established subject matter jurisdiction over this dispute[1]; analysis into the exact matching of the surviving claims *vis* a *vis* terms of the Consent Decree is not needed. The contrary assertions posed by the Intervenors are mistaken.

---

[1] If this Court declines to enter the proposed consent decree, the Executive Branch Defendants expressly reserve the right to assert all applicable defenses, including any appropriate jurisdictional challenges.

A. Public Policy Considerations that Favor Settlement Vest this Court with the Broad Authority to Approve the Proposed Consent Decree.

Consent decrees are frequently described as being a court-sanctioned arrangement between the settlement agreement and contract law. *See, e.g., United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 n.10, 95 S. Ct. 926 (1975); *Szaller v. Am. Nat. Red Cross*, 293 F.3d 148, 152 (4th Cir. 2002). Consent decrees are entered into "after careful negotiation has produced agreement[,]" "[t]he parties waive their right to litigate," "and thus save themselves the time, expense, and inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681-82, 91 S. Ct. 1752 (1971).

Public policy favors such settlements: "voluntary settlement of civil controversies is in high judicial favor." *Autera v. Robinson*, 419 F.2d 1197, 1199 (U.S. App. DC 1969). The approval of consent decrees is favored because "[n]ot only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (U.S. App. D.C. 1983). Consequently, the analysis of the Court regarding the subject Consent Decree, and the Intervenors' objections, should be viewed from the perspective of the beneficial public policy ramifications that will result from the Court's approval.

B. Precedent Does not Strip the Court of its Authority to Approve a Consent Decree Based on the Lack of Exact Matching.

Although Article III of the Constitution of the United States and related precedent do place a limit on the court's authority to approve a consent decree, the limit is not as described by the Intervenors. A federal court must possess subject matter jurisdiction

3

over a case impacted by the propounded settlement in order to approve a consent decree. *E.g.*, *Pac. R. R. v. Ketchum*, 101 U.S. 289, 297 (1879)(the consent decree must be "within the general scope of the case made by the pleadings"); *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525, 106 S. Ct. 3063, 3077 (1986) ("a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction").

The Intervenors argue that this Court's power to approve the pending Consent Decree is confined by the boundaries of the surviving claims, and the potential relief that may be afforded to Plaintiffs. That argument is mistaken.

The Intervenors' contend that the Court is narrowly constricted in addressing consent decrees solely within the precise parameters of HB 142 or Plaintiffs' potentially successful claims. However, that assertion belies applicable jurisprudence. First, "[t]he fact that certain provisions in the Decree track the language of the [challenged statute] more closely than others is irrelevant[.]" *Citizens for a Better Environment*, 718 F.2d at 1125–1126.

Second, a determination of the merits of the underlying claims is unnecessary; it would "require the court to undertake a close examination of each part of the Decree in order to establish that it was responsive to a specific violation, [and] detailed findings that the Act had been violated in various ways." *Id.* Instead, "a district court has power to enter a consent decree without first determining that a statutory violation has occurred." *Id.* (*citing Swift & Co. v. United States,* 276 U.S. 311, 327-331 (1928) (*Swift I*) (Brandeis, J.)). "The trial court in approving a settlement need not inquire into the precise legal

4

rights of the parties nor reach and resolve the merits of the claims or controversy[.]" *Id.*
The Court simply is not required to engage in a close examination of the merits. Yet, that
scrutiny is exactly what the Intervenors' narrow reading of the Court's authority calls for.

Third, "in addition to the law which forms the basis of the claim, the parties'
consent animates the legal force of a consent decree." *Local No. 93*, 478 U.S. at 525–526
(citing *Pac. R. R.*, *supra*; *Citizens for a Better Environment, supra,*). Federal courts
possess well-established authority to approve a consent decree that "provides broader
relief than the court could have awarded after a trial." *Id.* (citations omitted).
Importantly, as to jurisdictional limits, the question is whether the court maintains "the
power of the court to adjudicate between the parties[.]" *Swift I*, 276 U.S. at 327.

The Intervenors seem to recognize the precedential weight that is contrary to their
narrow interpretation regarding the Court's authority to approve broad settlements, and
therefore suggest that "[t]o the extent precedent allows broader relief … it is mistaken
and should be overruled.") [DE 271 at 22 fn 8]   The Executive Branch Defendants
instead ask the Court to follow Supreme Court precedent, and rely on its subject matter
jurisdiction over the case to approve the proposed Consent Decree.

    C.    Even Under a Narrow Interpretation, this Court has Requisite Jurisdiction
to Approve the Consent Decree.

Even if the Court was strictly limited in its authority to approve the subject
Consent Decree, the Court has nevertheless already found that Plaintiffs established
standing with respect to their Equal Protection claims related to both Section 2 and
Section 3 of HB 142. [DE 248 at 3-4, 31-39]   As the Court explained, "the Fourth

5

Amended Complaint alleges an injury in fact on Plaintiffs' equal protection claim" because "[w]hile HB142 does not prohibit Plaintiffs' efforts at advocacy, it plainly makes them meaningless by prohibiting even the prospect of relief at the local level." [*Id*. at 33-34]  With respect to Section 2, the Court then held that Plaintiffs failed to state a claim because they had not pleaded that Section 2 "impacts them disproportionately." [*Id*. at 49]  With respect to Section 3, the Court found that Plaintiffs pleaded sufficient facts to show that the provision disproportionately impacts them. [*Id*. at 51]

Ultimately, this Court has concluded that it possesses subject matter jurisdiction over claims challenging both Section 2 and Section 3 of HB 142.  Even under a narrower interpretation of its authority, this Court may nevertheless render an opinion regarding the proposed Consent Decree that serves to settle a dispute between Plaintiffs and Executive Branch Defendants that implicates both challenged sections of HB 142.

## II.   THE CONSENT DECREE FAIRLY SETTLES A CONTROVERSY BETWEEN THE ADVERSE PARTIES.

The Intervenors additionally argue that the Consent Decree invites the Court to take sides in a "contentious political issue," that the consenting Parties are not truly adverse to each other, and that the Consent Decree "raises a possibility of collusion[.]" [DE 271 at 13-16, 20-21]

Yet, the Court has already determined that Plaintiffs and Executive Branch Defendants are meaningful adversaries by finding that Plaintiffs have "adequately alleged traceability [to their alleged HB 142, Section 2 and 3, equal protection injury] as to the Executive Branch Defendants[.]"  [DE 248 at 37]  The contrary objection posed by the

6

Intervenors defies the law of the case that dismissal for a lack of standing was unwarranted. *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999).

Moreover, the numerous counts and factual allegations made by Plaintiffs against the Executive Branch Defendants in the Fourth Amended Complaint reflect the presumption of adversity between those parties. [DE 210 at 78-97]  That legal adversity is not diminished by the fact that the Parties, after careful negotiation, were able to reach an agreement of how to settle the controversy between them.

Indeed, the opportunity to participate in the negotiation process, and join the Consent Decree, was offered as early as July 24, 2017 by Plaintiffs to each of the named Defendants.  Yet, the Intervenors declined to participate in any meaningful negotiations over the terms, and instead relied upon the hope of prevailing on their motions to dismiss.[2]  The Executive Branch Defendants chose a different approach, and fiercely negotiated over what should be included in the proposed Consent Decree, while striving for the best available terms of settlement to serve both the public and the Parties alike. Again, settlement through a consent decree is ordinarily in the general public's interest. *Citizens for a Better Environment*, 718 F.2d at 1126.  The Intervenors' suggestion of a possible collusion based on the very fact that the Parties have been able to reach an agreement, therefore, fares no better than their suggestion of lack of adversity.

---

[2] To the extent the Court finds it necessary to consider the extent of settlement negotiation involved, and attendant lack of "collusion," the Executive Branch Defendants would agree, subject to Plaintiffs' similar agreement, to furnish to the Court under seal (due to confidentiality afforded by Rule 408 of the Federal Rules of Civil Procedure) a copy of the early drafts of the proposed Consent Decree offered to all Defendants.

Nor do the Intervenors show that this Court's approval of the proposed settlement terms would interfere with any democratic process in the State of North Carolina. As this Court has already acknowledged, and Intervenors do not dispute, "HB142 says nothing about Plaintiffs' ability to use any facility of any kind[.]" [DE 248 at 24-25, 29] The proposed Consent Decree reiterates that very same understanding of HB 142 on the part of the Executive Branch Defendants. [DE 264-1 at 6 ¶ 2] The Intervenors neither show that there is an ongoing public dialogue about returning NC to anything other than the current status *quo ante*, nor argue that this is the outcome they seek. Therefore, no democratic process concerns would be implicated by the Court's approval of second clause of the pending Consent Decree. [*Id.*]

Because it addressed only the interpretation of existing local laws in a nondiscriminatory manner, the proposed third clause of the Consent Decree was likewise drafted narrowly with the goal of avoiding any interference with local governments' ability to derive their own legal interpretations of the existing law, and HB 142's temporary prohibition against enactment of new ordinances. [DE 264-1 at 6 ¶3] This clause simply affirms that the Executive Branch Defendants will not encroach upon a local governments' authority to interpret their own pre-existing local laws in a nondiscriminatory way in the light of HB 142 temporary ban on new ordinances. To the extent the Intervenors disagree with any future local interpretation of existing law, the Consent Decree certainly does not preempt their ability to seek a redress in the appropriate State courts. No democratic process is violated by this agreement.

8

III.   **THE PROPOSED CONSENT DECREE SATISFIES THE APPLICABLE STANDARD OF APPROVAL.**

A.   The Standard of Approval.

The Intervenors have misapprehended the applicable standard the Court should apply in considering the Consent Decree.  Specifically, the Intervenors argue that the Parties should meet "the ordinary criteria for an injunction, or at least for a preliminary injunction." [DE 271 at 16]  That contention is incorrect.

None of the cases cited by the Intervenors stand for the proposition that the criteria associated with the issuance of an injunction is applicable to the approval of a Consent Decree.  In fact, multiple courts have manifestly adopted the considerably more lenient standard; that the parties need only demonstrate that a consent decree is "fair, adequate, and reasonable," in public's interest, and not otherwise unlawful. *E.g.*, *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999); *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991); *Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1240 (11th Cir. 1997).  The narrow standards applicable to the issuance of permanent or preliminary injunctions are simply not a part of the calculus in determining whether a consent decree is properly presented and approved.

B.   The Consent Decree is Fair, Adequate, Reasonable, and in the Public's Interest.

The proposed Consent Decree is fair, reasonable, and adequate.  As previously discussed in the Executive Branch Defendants' memorandum in support of its entry, the Consent Decree recognizes that transgender people may access public facilities in accordance with their gender identity, and that the Executive Branch Defendants do not

9

prohibit local governments from interpreting existing regulations as protecting against discrimination on the basis of gender identity and sexual orientation. [DE 266 at 4] These two concepts square with the fundamental objectives of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. The Consent Decree additionally fully comports with this Court's most recent conclusion that HB 142 does not in any way regulate individuals' ability to use any facility in accordance with their gender identity. [DE 248 at 24, 29]

The agreement reached by the Parties safeguards substantial public resources. This litigation commenced on March 28, 2016, has spanned, thus far, a period of nearly three years, and has implicated two different State administrations. [DE 1] "Both the parties and the general public benefit from the saving of time and money that results from the voluntary settlement of litigation." *Bragg v. Robertson*, 83 F. Supp. 2d 713, 717 (S.D.W. Va. 2000), *aff'd sub nom. Bragg v. W. Virginia Coal Ass'n*, 248 F.3d 275 (4th Cir. 2001). The public savings here are substantial. Plaintiffs agree to forego any past or future "fees, expenses and costs" to be paid by the Executive Branch Defendants. Plaintiffs also agree to terminate all claims against the Executive Branch with prejudice, thereby protecting against additional public expenditure. Given the existing length of this litigation, and the likelihood of a protracted litigation over Plaintiffs' claims to basic civil rights, the public savings negotiated by the Executive Branch Defendants are sizeable and should weigh upon the Court's consideration.

At least in part, the entry of the proposed Consent Decree will also help facilitate a closure of this controversial chapter of our State's history as it pertains to alleged

discrimination against transgender individuals. That public interest should not be underestimated, and in that vein, the terms of this agreement clarify and affirm that the Executive Branch Defendants will not enforce HB 142 in a discriminatory manner.

Finally, although the Intervenors object to the proposed Consent Decree, they do not argue that the Executive Branch Defendants should prevent transgender individuals' access to public facilities in accordance with their gender identity, or that local authorities should be prohibited from interpreting the existing regulations in a non-discriminatory manner. That lack of directive reveals a universal, fundamental understanding: the substance of the Consent Decree undermines no public policy, and is in public's best interests.

C.      The Terms of the Consent Decree Exist within the Parameters of Appropriate Executive Discretion.

The terms of the Consent Decree are drawn to comport with powers that are clearly afforded to the Executive Branch. First, the terms of the settlement voluntarily limit only the Executive Branch's authority to enforce, in a discriminatory manner, access to "public facilities under any Executive Branch Defendant's control or supervision[.]" The Executive Branch Defendants carefully negotiated the terms so as to not to encroach upon the Intervenors' or any other third-party's potential authority. To the extent these parties wish to prolong the litigation, it should be noted that nothing in the Consent Decree deprives them of that opportunity. *See Local No. 93*, 478 U.S. at 529 ("the valid claims of nonconsenting intervenors; if properly raised … may be litigated by the

intervenor.") The Consent Decree does not prevent the Intervenors from defending whatever aspects of HB 142 they deem worth of defense. [DE 271 at 19-20]

Second, in essence, the Intervenors argue that Court should not approve the proposed Consent Decree because they disagree with the terms of the negotiated settlement, and are instead inclined to keep the Executive Branch Defendants involved in this protracted litigation. [DE 271 at 19-21] In doing so, however, the Intervenors have misinterpreted the role of the Court.

If this Court circumscribes the Executive Branch's ability to enter into a settlement agreement, "the practical effect would have been to limit [the executive] discretion to move forward" with its preferred, and lawful, approach to administering HB 142 in Executive Branch buildings and facilities. *Citizens for a Better Environment*, 718 F.2d at 1127. In that respect, "the court's role should be more restrained." *Id.*

Third, the Intervenors simply cannot halt an otherwise lawful settlement agreement on the grounds that they disagree with the consenting Parties' agreed-upon resolution of their claims. "[A]n intervenor … does not have power to block the decree merely by withholding its consent." *Local No. 93*, 478 U.S. at 529. As long as this Court satisfies itself that the settlement is fair and consistent with the public's interest, it should approve the Consent Decree, the Intervenors' objections notwithstanding. *See United States v. Trucking Emp., Inc.*, 182 U.S. App. D.C. 315, 561 F.2d 313, 317 (1977).

12

## CONCLUSION

For the reasons stated herein, the Executive Branch Defendants respectfully request that the Court enter the proposed Consent Decree.

Dated: February 22, 2019     Respectfully submitted,

JOSHUA H. STEIN
ATTORNEY GENERAL
STATE OF NORTH CAROLINA

/s/ Amar Majmundar
Amar Majmundar
NC Bar No. 24668
SPECIAL DEPUTY ATTORNEY
GENERAL
NORTH CAROLINA DEPARTMENT OF
JUSTICE
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6821
Facsimile: (919) 716-6759
amajmundar@ncdoj.gov

/s/ Olga E. Vysotskaya de Brito
Olga E. Vysotskaya de Brito
NC Bar No. 31846
SPECIAL DEPUTY ATTORNEY GENERAL
NORTH CAROLINA DEPARTMENT OF
JUSTICE
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-0185
Facsimile: (919) 716-6759
ovysotskaya@ncdoj.gov

*Counsel for Defendants GOV. ROY A. COOPER, III in his Official Capacity as Governor of North Carolina; JOSHUA H. STEIN, in his official capacity as Attorney General of North Carolina; MACHELLE SANDERS, in her official capacity as Secretary of the North Carolina Department of Administration; MANDY K. COHEN, in her official capacity as Secretary of the North Carolina Department of Health and Human Services; and JAMES H. TROGDON III, in his official capacity as Secretary of the North Carolina Department of Transportation.*

13

## CERTIFICATE OF COMPLIANCE

This brief complies with Local Rule 7.3(d) because, excluding the parts of the brief exempted by Rule 7.3(d) (cover page, caption, signature lines, and certificates of counsel), this brief contains less than 3,125 words.

/s/Olga E. Vysotskaya de Brito
Olga E. Vysotskaya de Brito

## CERTIFICATE OF SERVICE

I, Olga E. Vysotskaya de Brito, hereby certify that on February 22, 2019, I electronically filed the foregoing EXECUTIVE BRANCH DEFENDANTS' REPLY, using the CM/ECF system, and have verified that such filing was sent electronically using the CM/ECF system to all parties who have appeared with an email address of record.

/s/Olga E. Vysotskaya de Brito
Olga E. Vysotskaya de Brito

15