```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
 2
   JOAQUIN CARCAÑO, et al.,      ) 1:16CV236
 3                               )
          Plaintiffs,            )
 4                               )
   V.                            )
 5                               )
   PATRICK McCRORY, in his       )
 6 Capacity as Governor of North )
   Carolina, et al.,             )
 7                               )
          Defendants,            )
 8                               )
          and                    )
 9                               )
   PHIL BERGER, in his official  )
10 Capacity as President Pro     )
   Tempore of the North Carolina )
11 Senate; and TIM MOORE, in his )
   Official capacity as Speaker of )
12 The North Carolina House of   ) Winston-Salem, North Carolina
   Representatives.              ) May 17, 2019
13                               ) 10:03 a.m.
          Intervenor-Defendants. )
14 _____

15        EXPEDITED TRANSCRIPT OF THE MOTIONS HEARING
           BEFORE THE HONORABLE THOMAS D. SCHROEDER
16                 UNITED STATES DISTRICT JUDGE

17 APPEARANCES:

18 For the Plaintiff:   ANDREW C. NOLL, ESQ.
                        JENNER & BLOCK, LLC.
19                      1099 New York Avenue, NW Suite 900
                        Washington, DC 20005.
20
                        SCOTT WILKENS, ESQ.
21                      WILEY REIN LLP
                        1776 K Street, N.W.
22                      Washington, DC 20006

23                      CHASE B. STRANGIO, ESQ.
                        AMERICAN CIVIL LIBERTIES UNION FOUNDATION
24                      125 Broad Street, 18th Floor
                        New York, New York 10004

25
```

```
1   APPEARANCES (Continued)

2

    For the Defendants:
3
    (State of NC,
4   Governor McCrory,
    DPS)                    OLGA E. VYSOTSKAYA, ESQ.
5                           AMAR MAJMUNDAR, ESQ.
                            NC DEPARTMENT OF JUSTICE.
6                           P. O. Box 629
                            Raleigh, North Carolina 27602
7
    (UNC)                   KRISTEN A. LEJNIEKS, ESQ.
8                           JONES DAY
                            51 Louisiana Avenue, N.W.
9                           Washington, DC 20001

10  (Intervenors)           GENE SCHAERR, ESQ.
                            ROBERT POTTER, ESQ.
11                          SCHAERR DUNCAN, LLP
                            1717 K Street, NW, Suite 900
12                          Washington, DC 20006

13  Court Reporter:         BRIANA NESBIT, RPR
                            Official Court Reporter
14                          P.O. Box 20991
                            Winston-Salem, North Carolina 27120
15

16

17

18

19

20

21

22

23

24
          Proceedings recorded by mechanical stenotype reporter.
25         Transcript produced by computer-aided transcription.
```

Carcano, et al. v. McCrory, et al. Motions 5/17/19

```
P R O C E E D I N G S
```

1          **THE COURT:**  All right.  Good morning.  We're here on

2 Carcano versus Cooper, et al., 16CV236.  The crowd seems to be

3 getting smaller as the case seems to be getting smaller.

4          Let me  ask the lawyers who are going to be speaking

5 to introduce yourselves, if you would, for the record, please.

6 We'll start with the Plaintiff.

7          **MR. STRANGIO:**  Good morning, Your Honor, Chase

8 Strangio from the ACLU for the Plaintiffs, and with me at

9 counsel table is Andrew Noll from Jenner & Block and Scott

10 Wilkens from Wiley Rein.

11          **THE COURT:**  Okay.  Hold on just a minute.

12          All right.  And for the Defendants?

13          **MS. VYSOTSKAYA:**  Your Honor, for the Executive Branch

14 Defendants, it's Olga Vysotskaya and Amar Majmundar.

15          **THE COURT:**  All right.  Thank you.

16          **MS. SCHAERR:**  Good morning, Your Honor.  For the

17 Legislative Intervenors, it's Gene Schaerr and

18 Stephen Schwartz.

19          **MS. LEJNIEKS:**  Good morning, Your Honor.  For the UNC

20 Defendants, it's Kristen Lejnieks of Jones Day.

21          **THE COURT:**  All right.  Now, I believe I have two

22 matters that are before me that have to be resolved.  That's

23 what I wanted to address today.  One of them is the pending

24 motion to dismiss the nominal damage claims under Title VII and

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  Title IX, and recently the Supreme Court took certiorari in

2  some cases, and the parties appear to be in agreement that we

3  should stay any further activity as to Counts Six and Seven

4  pending the outcome from the Supreme Court.

5          So I just wanted to make sure I understood that --

6  whether everybody is in agreement on that.  There was a little

7  bit of a discrepancy in the language.  I think the Defendants

8  urged that the matters be stayed, and the Plaintiffs, I think,

9  said they had no disagreement holding them in abeyance.  I

10 didn't know if the Plaintiffs meant something different from a

11 stay or whether everybody is in agreement that we should stay

12 all activity on those pending some guidance from the Supreme

13 Court.

14          **MR. STRANGIO:**  Your Honor, the Plaintiffs are in

15 agreement that we should stay the nominal damages claims

16 against UNC Defendants as to H.B. 2 pending resolution of the

17 pending cases at the Supreme Court.

18          **THE COURT:**  Okay.  I don't know if there would be any

19 discovery.  It's a nominal damage claim.  Is there any further

20 discovery that otherwise would have occurred from your

21 perspective?

22          **MR. STRANGIO:**  From Plaintiffs' perspective, there

23 would be discovery, you know, pending the outcome of the motion

24 to dismiss, but we're willing to, you know, stay the claims as

25 against UNC in their entirety pending the resolution because

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  even the discovery would be affected by the resolution of the

2  cases at the U.S. Supreme Court.

3        **THE COURT:**  Yes?

4        **MS. LEJNIEKS:**  From our perspective, we would dispute

5  the need for additional discovery on the claims altogether, but

6  agree that the contours of that can be determined after the

7  decision on the motion to dismiss.

8        **THE COURT:**  All right.  Well, then as a practical

9  matter, I think they just took certiorari, and that will be

10  decided next term, which means a decision may not come down at

11  the earliest until possibly June of 2020.

12        **MR. STRANGIO:**  That's correct, Your Honor.  That's

13  when we would anticipate a decision is at some point in 2020.

14        **THE COURT:**  Okay.

15        **MS. LEJNIEKS:**  We appreciate that as well, Your

16  Honor, and do believe that, although there could be some time

17  before the decision, it's appropriate to defer decision until

18  that time.

19        **THE COURT:**  Okay.  Well, I still -- I agree.  I think

20  that's the better use of the resources.  We'll wait and see

21  what the Supreme Court says.

22        **MR. STRANGIO:**  Thank you, Your Honor.

23        **THE COURT:**  All right.  So I'll stay any further

24  activity on Counts Six and Seven and the motion to dismiss.  So

25  it's not only holding the motion in abeyance, but the remainder

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  of that claim -- or the claims in Counts Six and Seven will be

2  stayed.

3          Okay.  That then I believe takes us to the proposed

4  consent decree that's been submitted for my consideration in

5  the case, which I believe is the only other issue for me to

6  decide.  Is there any disagreement about that?

7          **MS. VYSOTSKAYA:**  No, Your Honor.

8          **THE COURT:**  All right.  So I set this for a hearing

9  because I had a few questions about the language of the

10 proposed consent decree, and I'm looking really at paragraphs

11 1, 2, and 3 of the decree portion, which is pages 5 and 6, and

12 I understand the intent of the parties as set forth in

13 paragraphs 18 and 19 of the document, the consent judgment and

14 decree, which are at page 4 -- I'm sorry -- page 5, but it

15 seems to me that the actual language of paragraphs 1, 2, and 3

16 is a little different from what's expressed as the intent of

17 the decree.  So I wanted to address that today.

18         There is also the argument by the Intervenor

19 Defendants that the Court lacks subject-matter jurisdiction to

20 even consider the consent decree, and so maybe before I get

21 into the language, let me see if anybody wants to be heard

22 further on that issue.

23         Does anybody want to be heard on that?

24         **MS. SCHAERR:**  Sure, Your Honor, I'm happy to address

25 that if you'd like.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1          **THE COURT:**  All right.

2          **MS. SCHAERR:**  And I think the best way to approach

3    that perhaps is just to go through this proposal step by step.

4          If you begin with paragraph 1 and note that the first

5    sentence says, "With respect to public facilities that are

6    subject to Executive Branch Defendants' control or supervision,

7    nothing in H.B. 142 can be construed to prevent transgender

8    people from lawfully using public facilities in accordance with

9    their gender identity," now, on its face, that seems pretty

10   innocuous because it basically repeats an observation by the

11   Court in the Court's summary judgment order.

12         **THE COURT:**  Do you disagree with that proposition?

13         **MS. SCHAERR:**  I don't think we disagree with that

14   proposition on the merits, but the only possible reason to

15   include that observation in a decree, which, of course, carries

16   the threat of contempt -- the only possible reason to include

17   that is to give the Plaintiffs marginally greater certainty

18   about how North Carolina law will apply to the Plaintiffs'

19   desires to use the bathrooms of their choice, but the Court has

20   already held that the Plaintiffs don't have standing to assert

21   any claims based on legal uncertainty, and the Court even

22   dismissed Count One on that basis.

23         So the validity of paragraph 1 depends on the premise

24   that a consent decree can provide relief for claims on specific

25   matters that not only are not in litigation between the

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  parties, but not even within the jurisdiction of the Court, and

2  we think that premise is squarely rejected by, among others,

3  one of the cases on which the Plaintiffs rely, which is the

4  *Local 93* case from the Supreme Court, an opinion by Justice

5  Brennan.

6          If you look at the third -- the Court probably

7  doesn't have that case in front of you, but --

8          **THE COURT:**  Go ahead.

9          **MS. SCHAERR:**  If you look at the third sentence on

10  page 525 of that opinion, the Court says:  "To be sure, a

11  federal court is more than 'a recorder of contracts' from whom

12  parties can purchase injunctions; it is 'an organ of government

13  constituted to make judicial decisions.'  Accordingly, a

14  consent decree must spring from and serve to resolve a dispute

15  within the Court's subject-matter jurisdiction," and further,

16  "consistent with this requirement, the consent decree must come

17  within the general scope of the case made by the pleadings."

18          And so a portion of the consent decree that merely

19  seeks to resolve an issue that the Court has already held that

20  the Plaintiffs don't have standing to assert it seems to us is

21  not a proper subject of the consent decree.

22          **THE COURT:**  What if the language of paragraph 1 were

23  modified to say that with respect to public facilities that are

24  subject to Executive Branch Defendants' control or supervision,

25  Executive Branch Defendants agree that they are prohibited from

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1    attempting to construe H.B. 142 to prevent, blah, blah, blah,

2    blah, blah.

3            **MS. SCHAERR:**  And I think that would be

4    unobjectionable, but why not just put that in a settlement

5    agreement?  Why make it a consent decree?

6            **THE COURT:**  They want a consent decree, and so if it

7    were in a consent decree, would that be acceptable?

8            **MS. SCHAERR:**  No, Your Honor, because a consent --

9    because somebody can then allege that some Executive Branch

10   official has violated the consent decree and dragged them

11   before the Court and try to argue that they should be held in

12   contempt.

13           **THE COURT:**  But you already agreed with the

14   proposition that H.B. 142 doesn't, by its own terms, bar this

15   kind of activity; right?

16           **MS. SCHAERR:**  I think that's true, Your Honor.

17           **THE COURT:**  I mean, that seems to be pretty

18   self-evident from the face of --

19           **MS. SCHAERR:**  Right, but then why make that subject

20   to a -- part of a consent decree with the possibility of

21   contempt?  Why not just have it as a private settlement

22   agreement?

23           **THE COURT:**  The Plaintiffs would essentially be

24   agreeing with the Executive Defendants that they won't argue

25   something that's contrary to law.  What's wrong with that?

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1          MS. SCHAERR:  Well, it's perfectly fine for the

2  executive branch -- for the current Executive Branch Defendants

3  to enter into that kind of agreement if they want to, but --

4          THE COURT:  But if that's the law, what's the harm in

5  prohibiting anybody from arguing that?

6          MS. SCHAERR:  Well, one harm is that it puts a

7  federal court in the position of essentially overseeing the

8  State's operation of an area of its authority.  So I think

9  there is a significant federalism problem with that by itself.

10 If there's not a need for a consent decree, if the consent

11 decree is essentially doing nothing other than restating the

12 law, there's no reason to put it in a decree and make people

13 subject to potential contempt and to involve both the Court and

14 the parties in a potentially continual round of court

15 proceedings at issue.

16         THE COURT:  As to your subject-matter jurisdiction

17 argument, any other portions of the decree subject to that?

18         MS. SCHAERR:  Yeah, I think so, Your Honor.  If you

19 look at paragraph 2, much of that paragraph just parrots an

20 executive order that's been issued by Governor Cooper and that

21 was discussed in the Court's summary judgment opinion.  And,

22 here again, the only possible reason to include that in a

23 federal decree is to give the Plaintiffs greater certainty that

24 Governor Cooper's order will stay in effect perpetually even

25 after he leaves office and not be rescinded by a successor.  As

Carcano, et al. v. McCrory, et al. Motions 5/17/19

Case 1:16-cv-00236-TDS-JEP  Document 287  Filed 05/21/19  Page 10 of 78

1  with paragraph 1, the only apparent purpose of that is to

2  respond to the Plaintiffs' claims of legal uncertainty, which

3  the Court has held is not a proper basis for seeking relief.

4  It's not a basis for standing.

5          And, similarly, with respect to paragraph 3, that

6  provision doesn't have a lot of practical significance, given

7  the 2020 sunset that's written in Section 3 of the statute, but

8  still it seems to be built around the idea that the Plaintiffs

9  need greater legal certainty; they need the Court to tell them

10 and tell the world that it's okay for local governments to

11 interpret the statutes and regulations that may already be in

12 effect and that they can do that without violating Section 142.

13 If that's just a statement of the law, as they seem to suggest,

14 then, again, there's no reason to put it in a decree.

15          **THE COURT:**  Well, I'll hear from them in a minute,

16 but I know in an earlier part of this case I was presented with

17 an affidavit of an individual in Wilmington, I believe, who

18 claims in a school system that they were told by some school

19 official that a transgender individual could not use the

20 facilities they wished to use because it was barred by 142.

21          **MS. SCHAERR:**  Right.

22          **THE COURT:**  And this kind of consent decree, I

23 presume, is what the Plaintiffs are interested in, that they

24 could say, no, you're wrong about that and the judge has said.

25          **MS. SCHAERR:**  I think that's exactly right.  I think

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  that is the reason --

2          **THE COURT:**  So that -- would that not be some value,

3  though, of having that kind of provision?

4          **MS. SCHAERR:**  Well, it might be of some value, but

5  it's not an injury that gives them standing to seek any relief,

6  including a consent decree.  The Court has already ruled to

7  that effect in your summary judgment order.  If they don't have

8  standing to support claims for legal uncertainty as a matter of

9  law, then they don't have standing to use that concern as a

10 basis for a consent decree.

11         **THE COURT:**  Now, they do have standing to challenge

12 the preemption provision because that part of the case is going

13 forward; right?

14         **MS. SCHAERR:**  Well, they -- that's true.  They have

15 standing to challenge that as a violation of equal protection.

16 They don't have standing to challenge that because they think

17 they need more certainty about it.

18         **THE COURT:**  Okay.  Thank you.  Plaintiffs want to

19 respond?

20         **MR. NOLL:**  Thank you, Your Honor, Andrew Noll from

21 Jenner & Block for the Plaintiffs.

22         Your Honor, Your Honor's motion -- order on the

23 motion to dismiss unambiguously found subject-matter

24 jurisdiction under the equal protection claims for both Section

25 2 and Section 3 of Plaintiffs' fourth-amended complaint, the

       Carcano, et al. v. McCrory, et al. Motions 5/17/19

1 Count Two claim for equal protection.  We think that that

2 subject-matter jurisdiction finding is sufficient to find

3 standing and, thus, subject-matter jurisdiction for purposes of

4 the consent decree.

5 The consent decree seeks to provide a remedy to

6 Plaintiffs' claim that they have unequal access to an ability

7 to seek access -- both facility access and public combination

8 laws in their favor before state boards and agencies and local

9 governments, and so we don't see any mismatch between the

10 relief that we seek through the consent decree and the

11 remaining claims in this case.

12 We brought a number of different claims premised on

13 both due process and equal protection grounds as alternative

14 theories for relief in this case.  It is true that in the

15 motion to dismiss Your Honor found a lack of standing on our

16 claims that there was not -- that there was credible threat of

17 prosecution to proceed under due process claims.  That's a very

18 specific standing inquiry, and I don't think that can be

19 expanded to say that we can't seek legal certainty as a more

20 general and colloquial matter through a consent decree.

21 I mean, part of the virtue of a consent decree is to

22 seek a statement of what the law says that would provide from,

23 you know, layman's terms a very clear statement of the law that

24 could then be enforced, if necessary.

25 **THE COURT:**  Most consent decrees that I've had the

Carcano, et al. v. McCrory, et al. Motions 5/17/19

Case 1:16-cv-00236-TDS-JEP   Document 287   Filed 05/21/19   Page 13 of 78

1   experience of reviewing address agreements by the parties of

2   what they will do and won't do, and one of the questions I have

3   on this one is it goes a little bit beyond that.  This one

4   wants some declarations made.  So I do have a little bit of

5   question about that.

6           Other than -- what's your response to the *Local 93*

7   case and the argument that the Intervenors make about that?

8           **MR. NOLL:**  Certainly, Your Honor.  Again, I think

9   the --

10          **THE COURT:**  Let me stop -- I'm sorry.  Let me

11  interrupt you.  Do you dispute the fact that there is a

12  subject-matter jurisdiction limitation to a federal court when

13  it comes to imposition of a consent decree?

14          **MR. NOLL:**  Not as a general matter, Your Honor.

15          **THE COURT:**  Okay.

16          **MR. NOLL:**  Your Honor must have subject-matter

17  jurisdiction over the claims in the case.

18          **THE COURT:**  So there is a case-or-controversy

19  question, and the parties can't, by agreement, extend

20  subject-matter jurisdiction to a court?

21          **MR. NOLL:**  That's right.

22          **THE COURT:**  You agree with that?

23          **MR. NOLL:**  I agree with that proposition.

24          **THE COURT:**  All right.  So let's narrow it down then

25  a little bit.  As to these claims, though, it's your contention

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  that there is subject-matter jurisdiction over the claim more

2  generally; is that what you're saying?

3         **MR. NOLL:**  I think there is subject-matter

4  jurisdiction over the equal protection claim.  The question of

5  what relief we could get over that claim I think goes to sort

6  of nonjurisdictional questions about the reasonableness of

7  this -- of the outcome of the consent decree.

8         I think it's also important to remember that the

9  relief we seek in the fourth-amended complaint, both under our

10 due process claims, which Your Honor has dismissed on standing

11 grounds, but also the equal protection claims, is complete

12 invalidation of H.B. 142 in its entirety.  That is relief we

13 could get under either alternative claim, and we've pled

14 alternative claims as an effort to get that relief.

15        You found subject-matter jurisdiction over Count Two,

16 the equal protection claim, and so we think there is

17 jurisdiction in this case.  The question becomes whether the

18 relief that we're seeking through the consent decree is fair,

19 adequate, and reasonable to remedy those claims.

20        We think it is, particularly in light of Your Honor's

21 reading of the law under your 12(b)(6) analysis when you

22 resolved the Section 2 claim, that there's nothing in H.B. 142,

23 in that statute, that would bar or impede transgender

24 individuals using public facilities, and so we're seeking

25 simply to memorialize an understanding and reading of the law

1 in that consent decree to resolve that Section 2 equal

2 protection claim.

3        **THE COURT:**  All right.  Well, even if I have

4 subject-matter jurisdiction over a claim, there still are some

5 limitations as to what the Court can sign on to by way of a

6 consent decree.

7        **MR. NOLL:**  Your Honor certainly still has to evaluate

8 whether the consent decree is fair, adequate, and reasonable.

9 That's something Your Honor must decide in terms of entering

10 the consent decree.  We think this consent decree far passes

11 that test, particularly given the modest relief that is sought

12 through the consent decree.

13        **THE COURT:**  All right.  Do you want to be heard any

14 further -- I'm sorry.  Anything else on the subject-matter

15 jurisdiction issue?

16        **MR. NOLL:**  I think that's all on the subject-matter

17 jurisdiction issue, Your Honor.

18        **THE COURT:**  Any response briefly?

19        **MS. SCHAERR:**  Yes, Your Honor.  In addition to

20 subject-matter jurisdiction, there is another limit articulated

21 in the *Local 93* case, which is that the provisions of the

22 decree, quote, must spring from and serve to resolve the

23 dispute that's within the claims that are properly in the case,

24 and that condition is just not met with respect to paragraph 3.

25        If you look at the specific claims that were asserted

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1   in Plaintiffs' submitted complaint, they allege that Section 3

2   of H.B. 142 violates the Fourteenth Amendment, not by

3   preventing local government officials from interpreting their

4   existing laws, but from -- but by preventing new laws that

5   benefit the LGBT community.  That's the claim with respect to

6   Section 3 in their complaint.

7        The claims did not even raise the possibility that

8   state officials might try to prevent localities from merely

9   interpreting existing laws in a way that benefit the

10  Plaintiffs, and so to put this again in the framework of the

11  *Local 93* decision, that paragraph of the decree does not and

12  never did come within the general scope of the case made by the

13  pleadings.

14       **THE COURT:**  What part of the fourth-amended complaint

15  addresses this issue; do you know?  What paragraph are we

16  talking about?

17       **MS. SCHAERR:**  I can't remember which paragraph it's

18  in, Your Honor.  It's addressed partly in paragraph 320 where

19  it says that H.B. 142 was motivated by an intent to preclude

20  local government, et cetera, from "regulation of access to

21  multiple occupancy restrooms, showers, or changing facilities."

22  Then paragraph 332, "by blocking anti-discrimination

23  protections for LGBT people at the local level, H.B 142 imposes

24  a different and more burdensome political process" --

25       **THE COURT:**  They're basically, as I understand it,

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1 asking approval of an agreement that nothing in Section 3 will

2 restrict them from making arguments on laws other than H.B.

3 142; right?

4        MS. SCHAERR:  Well, I think what they're asking for

5 there is that they want the decree to say that the Executive

6 Branch Defendants are permanently enjoined from enforcing

7 Section 3 of H.B. 142 to restrict any local government from

8 interpreting other existing laws as protecting against

9 discrimination on the basis of sexual orientation, et cetera.

10 So they're -- that's right; they are trying to memorialize an

11 agreement with the Executive Branch Defendants that would also

12 bind their successors.

13        THE COURT:  I understand that.  So my question again

14 is they're asking, as I understand it, for agreement --

15 approval of their agreement that Section 3 and, that is, the

16 prohibition that's contained in Section 3 --

17        MS. SCHAERR:  Right.

18        THE COURT:  And I should add Section 3 is only a

19 prohibition, as I read it -- that that prohibition deals with

20 enactments and amendments of ordinances and that they want an

21 agreement of their understanding that that won't address other

22 laws so that nobody will argue that Section 3 purports to

23 prevent interpretation of other laws?

24        MS. SCHAERR:  I think that's fair, Your Honor.

25        THE COURT:  Isn't that -- do you have a dispute with

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1 that?

2        **MS. SCHAERR:**  Well --

3        **THE COURT:**  Forget the consent decree.  As a legal

4 proposition.

5        **MS. SCHAERR:**  We think that's potentially

6 problematic.

7        **THE COURT:**  Why is that?

8        **MS. SCHAERR:**  Because you might well have a local

9 government that through highly creative interpretation of some

10 existing law would essentially attempt to reimpose, for

11 example, the substance of the Charlotte ordinance, which was

12 the law that got this whole thing moving in the first place,

13 and we think that -- we think that the Executive Branch should

14 have the ability -- if a local government adopts an

15 interpretation of an existing law that is -- you know, that is

16 really, in effect, an attempt to enact a new law under a

17 different name, we think the Executive Branch Defendants

18 certainly in a future administration should have the ability to

19 challenge that.

20        **THE COURT:**  Well, the legislature used the words

21 "enact" or "amend."  I presume those were chosen with purpose,

22 because we always presume the legislature chooses words with

23 purpose.

24        **MS. SCHAERR:**  True.

25        **THE COURT:**  They don't say "or interpret any other

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1   law to so enact."

2          MS. SCHAERR:  Right, but it would be an important

3   question of law and really state law as to when an

4   interpretation has actually, in substance, become an amendment

5   and, therefore, a violation of H.B. 142.  So you're, again,

6   faced with the specter of a federal court having to oversee

7   what amounts to the resolution of a state law issue; that is,

8   when is a change properly viewed as an interpretation versus an

9   amendment.

10          And, of course, you know, you would then create a

11  situation where potentially a state court would have to decide

12  the state law question.  Is this a legitimate interpretation,

13  or does this really bleed over into an amendment?  And at the

14  same time you've got the possibility of this Court having to

15  resolve disputes as a matter of interpreting a consent decree,

16  and there is a potential for -- you know, there is a potential

17  for some conflict in the results of those decisions.

18          THE COURT:  All right.  Getting back --

19          MS. SCHAERR:  So we do have a substantive problem

20  with that provision, Your Honor.

21          THE COURT:  Getting back to the subject-matter

22  jurisdiction inquiry, though, which is what got us down this

23  road --

24          MS. SCHAERR:  Right.

25          THE COURT:  -- do I have subject-matter jurisdiction

Carcano, et al. v. McCrory, et al. Motions 5/17/19

as a general proposition to enter a consent decree that
includes an articulation by the parties of their agreement of
the scope of what they're agreeing to and what it doesn't
cover?  Under your argument, you would say there's no
subject-matter jurisdiction because if it doesn't cover it,
then it's not a case or controversy as to that.

      **MS. SCHAERR:**  I think that's true.  So I think –– at
least with respect to this particular consent decree, we think
the three core provisions of the proposed decree are not within
the Court's jurisdiction because they are seeking legal
certainty, which the Court has held is not a proper basis for
standing.

      Now, perhaps they could come up ––

      **THE COURT:**  Well, to be fair, the legal certainty
they were arguing for, I will hear from them in a minute, was
their rights under the law, I think, generally, and the consent
decree, at least in its decretal paragraphs, speaks to the
legal uncertainty as to the application of 142, which is a
narrower proposition.  In other words, they want some certainty
as to how H.B. 142 will be applied or not be applied.  That's a
separate question for what their rights are more generally.  In
fact, the Supreme Court is taking up that issue right now.  We
just stayed part of the case because of that.

      **MS. SCHAERR:**  Right, but the injury they're claiming
is the same –– is essentially the same injury that they were

Case 1:16-cv-00236-TDS-JEP  Document 287  Filed 05/21/19  Page 21 of 78

1 claiming more broadly and that the Court has now held is not a

2 proper basis for the courts to exercise jurisdiction over that

3 claim.

4          The fact --

5     **THE COURT:**  It stems from a different legal source,

6 though, does it not?  The injury they're claiming now stems

7 from possibly application of other laws.  This lawsuit is about

8 H.B. 142.

9     **MS. SCHAERR:**  Right.

10     **THE COURT:**  It used to be about H.B. 2.  It's now the

11 fourth-amended complaint.  The case is much narrower now.  It's

12 about H.B. 142 and the application of H.B. 142 and whether or

13 not it was constitutionally or unconstitutionally enacted in

14 any form.  So it's been whittled down.  There are but a few

15 claims left, and they want, as I understand it, some agreement

16 as to what H.B. 142 will do and won't do.  Why is that not

17 within my subject-matter jurisdiction?

18     **MS. SCHAERR:**  Well, is it really a proper function of

19 a consent decree of a federal court to simply state what the

20 law is?  I mean, as to paragraph 1, they're just asking the

21 Court to state in the form of a consent decree what the Court

22 has already said in Your Honor's opinion.

23     **THE COURT:**  That's why I asked you:  What if they

24 were to rephrase it and say that they agree that they're not

25 going to argue that the law is different from that?  In other

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  words, they are agreeing to be bound by the law, as I've said

2  in my opinion.  I mean, frequently, I do enter consent decrees

3  with the EEOC and others where they agree to be bound by the

4  law.

5          **MS. SCHAERR:**  Right, but the problem is, and

6  especially when you're dealing with state actors, that creates

7  the possibility that somebody down the road will make some

8  argument that the other side will think transgresses the bounds

9  of the order, the bounds of the decree, and then you'll be here

10  entertaining a motion for a contempt, and you'll be parsing the

11  language that the lawyer used in making the particular argument

12  in an effort to try to determine whether it's really fully

13  consistent with what you said.  And it just -- there just

14  doesn't seem to be any point to that, you know, especially

15  given the federalism concerns here.

16          **THE COURT:**  All right.  I understand.

17          Do you want to be heard any further?

18          **MR. NOLL:**  Yes, Your Honor.

19          **THE COURT:**  We're kind of bleeding into a discussion

20  of the merits, and so I'm going to get into that next as well.

21          **MR. NOLL:**  Certainly.  Just to briefly address the

22  claim about the subject-matter jurisdiction on the Section 3

23  claim, I mean, we've brought an equal protection claim about

24  the barrier to access antidiscrimination policies as to

25  Section 3 at the local level.  Obviously, the thrust of our

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1 complaint talks about the ability to access new positive

2 statutes that are passed, but there are several paragraphs of

3 our complaint that talk more generally about the ability to

4 obtain antidiscrimination protections under local law.

5          **THE COURT:**  Do you have any --

6          **MR. NOLL:**  Certainly.  So in paragraph 289 of the

7 fourth-amended complaint, we allege that H.B. 142 strips

8 individuals, quote, from obtaining antidiscrimination

9 protections under local law.

10          **MS. SCHAERR:**  I'm sorry.  That's paragraph 289?

11          **MR. NOLL:**  289.

12          **MS. SCHAERR:**  This is the fourth-amended complaint?

13          **MR. NOLL:**  Yes, sir.

14          **THE COURT:**  Now, isn't, to be fair, that allegation

15 protections by seeking an amendment or further enactment under

16 local law?

17          **MR. NOLL:**  That's certainly the thrust and primary

18 relief that we seek, Your Honor, in terms of overturning H.B.

19 142 or striking it down in its entirety, but I do think the

20 claim that we are unable to obtain any action -- so, also,

21 paragraph 329 talks about H.B. 142 precluding local government

22 from taking action to protect LGBT people.

23          Again, certainly because of the bar that Section 3

24 puts in place, the thrust of our argument and the relief that

25 we would seek at trial absent this agreement to enter a consent

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  decree is invalidation of Section 3 in its entirety; but I

2  think there are a range of ways to create equality or provide

3  some relief to our equal protection claim for some remedy in

4  the consent decree that are short of the total relief that we

5  would seek after trial. I don't believe there is a mismatch

6  here between the claims we're alleging and the modest relief

7  that we're seeking.

8        Section 3 very specifically talks about enacting new

9  or amending existing laws, as Your Honor pointed out. We think

10 the consent decree is fully consistent with the language of the

11 statute, and, thus, we think it would be a clear statement of

12 what the law is.

13        **THE COURT:** Okay. Let me flip to the merits of what

14 you're asking for and address that. We already kind of bled

15 into it, but let's start with paragraph 1, and there are three

16 basic paragraphs here of relief that you're asking for.

17        To my way of reading, paragraph 1 seems to

18 incorporate or parrot the language that I had in my prior

19 opinion, which was my observation that there was nothing in

20 H.B. 142, more specifically Section 2, which can be argued to

21 be a basis for preventing transgender individuals from using

22 restrooms, showers, or changing facilities of their choice,

23 which seemed self-evident to me because it's a paragraph that

24 preempts regulation of access.

25        The first paragraph of your proposed consent decree

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  seems to just repeat that legal proposition.  I'm not sure I
2  have ever seen a consent decree that simply puts forth a
3  proposition of law.  They're usually agreements between the
4  parties as to what they will and won't do in light of the law.
5          So my first question is:  Are you aware of any other
6  consent decree where statements of law were provided?
7          **MR. NOLL:**  Yes, Your Honor.  I can point you to at
8  least two cases that, although involving federal law, the
9  consent decree was entered to codify an interpretation of a law
10 and then set forth, consistent with that interpretation,
11 certain injunctive remedies or other remedies.
12         **THE COURT:**  What are those?
13         **MR. NOLL:**  Sure.  *Berger v. Heckler*, 771 F.2d 1556.
14 It's a Second Circuit case from 1985.  And there the Department
15 of Health and Human Services, the secretary, agreed to a
16 reading of the Social Security Act about what the statutory
17 term in the United States under color of law meant in terms of
18 whether certain immigrants to this country could access the
19 Social Security benefits under the act, and that case was
20 litigated on a contempt motion after the secretary took certain
21 action that was inconsistent with that understanding of the
22 law.
23         **THE COURT:**  All right.
24         **MR. NOLL:**  The second case is *Citizens for a Better*
25 *Environment v. Gorsuch*, which we cite in our motion for an

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1 entry of consent decree, and that's at 718 F.2d 1117, D.C.

2 Circuit, 1983.  And there the parties in a consent decree

3 agreed to a particular reading of the Clean Water Act and what

4 type of regulations needed to be promulgated by the EPA in that

5 case.

6         **THE COURT:**  So were the agreements as to the

7 application -- or the interpretation of the law as they would

8 be then applied to the parties in those cases?

9         **MR. NOLL:**  So I believe they were more general, Your

10 Honor.  In fact, in *Berger*, there was a question -- a separate

11 question in the case about whether a nonparty could come in to

12 seek contempt, putting that aside, but the Second Circuit

13 resolved the contempt motion by saying it was fully within the

14 District Court's discretion to enter an interpretation, and the

15 Second Circuit agreed that interpretation was fully consistent

16 with the act and the legislative history; and, thus, that was a

17 proper use of the Court's equitable power to enter a consent

18 decree.

19         **THE COURT:**  Okay.  So let me ask this then:  Since

20 I've already said that's the law, what benefit is there to

21 having it repeated in paragraph 1 in the fashion of a statement

22 of law?

23         **MR. NOLL:**  So I think it's a statement of law that

24 then, through the consent decree, becomes enforceable as

25 against the Executive Branch Defendants.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1          Now, I think it's important to emphasize that, you

2     know, that statement of law, we think based on your Court's

3     order, is quite obvious, but, again, because of the arguments

4     being raised by Intervenors at this stage, the Intervenors who

5     actually advanced this argument at the motion to dismiss stage,

6     we have some concern that absent a binding judicial order, we

7     certainly are not going to get the certainty about what the law

8     means that we need as relief for this case.

9          **THE COURT:**  What about my question earlier as to

10    whether paragraph 1 could be slightly revised to reflect not

11    just a bold statement of law, which I've already made, but an

12    agreement between the parties that the Executive Branch

13    Defendants would be prohibited from construing Section 2 to

14    prevent transgender people from lawfully using public

15    facilities in accordance with their gender identity?

16         **MR. NOLL:**  So I'm not sure that there is a meaningful

17    distinction between those two, Your Honor.

18         **THE COURT:**  If there's not, would you be amenable to

19    prohibitory?

20         **MR. NOLL:**  Can I check with cocounsel?

21         **THE COURT:**  Sure.  And you don't have to make a

22    decision in realtime right here, but I'm just curious as to

23    whether there's a meaningful distinction.  The other -- well --

24         **MR. NOLL:**  Whether it's Your Honor construing or the

25    Executive Branch construing, I think, ultimately, there is no

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  meaningful distinction because the question is what does the
2  law say you do.

3          THE COURT:  I think it's more in keeping generally
4  with consent decrees, that they are agreements between the
5  parties, and then they want some judicial approval for the
6  reasons that the Intervenor Defendants indicate and, that is,
7  of course, a violation is subject to contempt.  So it has a
8  higher heightened standard.

9          MR. NOLL:  Do you mind if I confer just quickly?
10         THE COURT:  Sure.
11         MR. NOLL:  And I will say, Your Honor, we'd have to
12 also -- the agreement would have to come from both sides to
13 this consent decree obviously.

14         THE COURT:  Sure.  Well, let me just leave it there
15 for a minute and ask you -- we'll take a break at some point
16 and ask you to put that down as something to consider, and if
17 they have any response to that, I will consider that.

18         Let me turn to paragraph 2 then.
19         MR. NOLL:  Certainly.
20         THE COURT:  The first sentence appears to be closer
21 to what I just mentioned about paragraph 1, and, that is, it's
22 an agreement that the Executive Branch Defendants will be
23 permanently enjoined from essentially attempting to use
24 Section 2 to prohibit any transgender individual from using a
25 public facility under Executive Branch control when it's used

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  in accordance with their gender identity.  That's the purpose;

2  right?

3        **MR. NOLL:**  Certainly, Your Honor.  I think one states

4  the law and two provides for obligations that -- or

5  prohibitions that flow from that statement.

6        **THE COURT:**  So one of the questions I had was the use

7  of the word "enforcing" and why that, because that suggests, at

8  least to me, that Section 2 has that capability.  I've already

9  said, I believe, that it doesn't, and so it seems to me that

10  that's a little vague here.  You wouldn't be enforcing

11  Section 2 because I've already, I think, indicated that that's

12  not what Section 2 does.  And so I was curious as to whether

13  that was purposefully chosen or whether that was a drafting

14  decision that might be subject to further --

15        **MR. NOLL:**  So I think it was purposefully chosen,

16  Your Honor, in part, to track the language.  I mean, you've

17  indicated that, in your view, Section 2, I think, in that

18  serves as a source of enforcement authority to bar individuals

19  from using restrooms consistent with their gender identity.  So

20  I think we're just saying that that law, H.B. 142, Section 2,

21  cannot serve as any authority to enforce any bar or barrier.

22  There certainly are other statutes out there.  In fact, we've

23  inserted in paragraph 1 the word "lawfully using" to make sure

24  that the consent decree is narrowly crafted to only reach the

25  enforcement of H.B. 142.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1          **THE COURT:**  Hold on just a minute.

2          So then what is the purpose of the second sentence of

3  paragraph 2?

4          **MR. NOLL:**  The sentence that begins "Under the

5  authority granted"?

6          **THE COURT:**  Yes.

7          **MR. NOLL:**  So, Your Honor, North Carolina General

8  Statute 114-11.6 provides the Executive Branch Defendants with

9  certain authority in certain cases to assist district attorneys

10 with prosecuting cases.  We just -- because Your Honor read

11 Section 2 to not be in itself a barrier to individuals' use of

12 restrooms consistent with their gender identity, we're, again,

13 just simply seeking to codify that that law cannot be used as a

14 source to enforce such a barrier --

15         **THE COURT:**  Okay.

16         **MR. NOLL:**  -- in the limited confines of the

17 authority that the Executive Branch Defendants, who are the

18 defendants who've sued here, have authority under state law to

19 assist district attorneys.

20         **THE COURT:**  So is it your intention that the second

21 sentence of paragraph 2 is meant to indicate that nothing in

22 Section 2 of section -- of H.B. 142 can be used to argue or

23 prohibit transgender individuals from using public facilities,

24 including the Executive Branch Defendants' authority under

25 114-11.6?

1          **MR. NOLL:**  Essentially, Your Honor.  I think that's

2   another way to put it.

3          **THE COURT:**  So, in other words, the second sentence,

4   is that intended to still be the enforcement of Section 2 of

5   H.B. 142?

6          **MR. NOLL:**  Yes, to the extent that section in

7   particular would be used as a source of authority to bar

8   individuals.

9          **THE COURT:**  Because it doesn't say that to me on the

10  face, and one issue that I had was it seemed to be much broader

11  because it omits any reference to H.B. 142.

12         **MR. NOLL:**  So Your Honor is saying because the

13  sentence does not specifically tie the limitation to Section 2?

14         **THE COURT:**  Yes.

15         **MR. NOLL:**  I think that was certainly the intent,

16  Your Honor.  We can confer with cocounsel and Executive Branch

17  Defendants, but, again, we're trying to draw a distinction

18  quite clearly between the use of Section 2 of H.B. 142 --

19         **THE COURT:**  And let me tell you one of the concerns I

20  had, and I believe it was mentioned in the briefing, but the

21  use of public -- the phrase "public facilities" is not used in

22  the statute, I don't believe.  The statute speaks in terms of

23  multiple occupancy restrooms, showers, or changing facilities,

24  and then public facilities are not defined in the consent

25  decree.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

So a concern I had was -- and this does relate to the Intervenor Defendants' argument about subject-matter jurisdiction. The concern I had was whether that second sentence of Section 2 was ever intended to be a broader prohibition generally against prosecution of any individual in any public facility irrespective of Section 2 of H.B. 142, because -- and if that were the case, then I would have some issues with it. If that's not the case, then I think if you could address that issue, it would be more appropriately tailored to the claims in the case.

**MR. NOLL:** Certainly, Your Honor. From Plaintiffs' perspective, the intention was not to seek any relief broader than the facilities that are specifically defined in Section 2 of H.B. 142. So the language talks about access to multiple occupancy restrooms, showers, or changing facilities, and I think we would -- we intend the consent decree to be fully parallel with that statutory statement of scope.

**THE COURT:** Okay. That wasn't clear to me in the draft, and that's an issue that I think should be addressed so it's clear that this springs from this litigation and is not a broader agreement. Okay.

**MS. VYSOTSKAYA:** Your Honor, to the extent if it helps the Court, paragraph 4 of the proposed consent decree defines and links the definition of public facilities to H.B. 142 definition, and it's the last portion of that paragraph 4.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1    MR. NOLL: Thank you for finding that.

2    THE COURT: Okay. It uses the phrase "types of

3    facilities." So if it means the same thing, I think it should

4    say that.

5    MR. NOLL: So just the facilities identified in

6    instead of types of?

7    THE COURT: Yes.

8    MR. NOLL: I don't think that we -- we intended it to

9    be fully, again, parallel with the statute, at least from the

10   Plaintiffs' perspective.

11   THE COURT: So my concerns with the second paragraph

12   were the use of the word "enforcing" in the context we

13   discussed, because Section 2 would not have that power, and so

14   enforcing gives some suggestion about its capability to be used

15   for that. As I've said, the use of the phrase "public

16   facilities" and narrowing that, the second sentence not being

17   tied to H.B. 142, specifically Section 2, and the use of the

18   phrase "public facilities" there, and if it's more

19   appropriately -- the second sentence more appropriately tied to

20   H.B. 142 and specifically Section 2, then the scope issue might

21   be addressed. I would have to see what language you have.

22        It begins to get a little redundant, it seems to me,

23   because it's saying the same thing in three different

24   paragraphs -- or three sentences. Paragraph 1 is the way you

25   had it, the statement of law. Paragraph 2 is the prohibition,

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  but then it said it in different ways. Every time it's said
2  differently, my concern is does this mean something new and
3  different and, if so, how and how is it tied to the claim in
4  this case. So those were my concerns with that.

5        Let me turn to -- well, before I leave that, at the
6  end of that whole section in paragraph 2 is the phrase "and is
7  otherwise lawful." That seemed to be a little vague in the way
8  it's used. So I was concerned about that as well.

9        **MR. NOLL:** Again, we were attempting to make clear
10  that the consent decree only reaches H.B. 142 and not any other
11  statute that might be applied in a particular instance to a
12  particular individual to govern their use of a restroom.

13        **THE COURT:** Okay. So, I mean, to be clear, I'll
14  consider the arguments on subject-matter jurisdiction. There's
15  clearly an issue about how far the consent decree in any case
16  should go based on the claims in the case, and this is a highly
17  charged issue, and you're purporting to bind not only this
18  executive, but all executives in the future, and I'm certainly
19  keeping that in mind as I consider what's reasonable and what
20  might exceed that.

21        I want this -- if you're proposing a consent decree
22  for my approval, I will, of course, review it carefully.

23        **MR. NOLL:** We would expect you would, Your Honor.

24        **THE COURT:** And I am looking carefully to make sure
25  that there's nothing in here that's purporting to achieve some

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  expansion of a claim or right that's not actually made in the

2  case, particularly in this environment, and so that's why I'm

3  parsing through each of these words pretty carefully.

4       **MR. NOLL:**  Certainly, Your Honor.

5       **THE COURT:**  So let me turn to paragraph 3.  What's

6  your response to the legislators' concern expressed about

7  whether there could be, in effect, a de facto amendment of the

8  law by interpreting, if you will, some other statute that

9  effectively isn't an amendment to an existing regulation?

10       **MR. NOLL:**  So, Your Honor, that's certainly not how

11  we understand H.B. 142, Section 3, to be drafted, and I think

12  the arguments that are being made, in fact, make clear that

13  there is -- in this environment without a clear statement of

14  what that law means, there's some risk to localities being able

15  to or being willing to interpret existing laws.  I think even

16  our allegations about the chain of events that led Charlotte to

17  appeal its statute as a prerequisite for H.B. 2's repeal and

18  the enactment of H.B. 142 certainly make clear that localities

19  are likely quite hesitant to take any action, even an

20  interpretation of an existing statute, which H.B. 142, by its

21  plain terms, wouldn't seem to bar --

22       **THE COURT:**  Is there any way to address that concern

23  in drafting?  Have you given some thought to that?

24       **MR. NOLL:**  I mean, I don't think so, Your Honor, to

25  the extent we talk about other existing laws.  I think the

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  consent decree is supposed to make quite clear that it does

2  not, consistent with Section 3, permit the enactment of new or

3  amendment of existing laws.  So I struggle to find a specific

4  way to address it that isn't what's already written in the

5  consent decree.

6          **THE COURT:**  Let me ask about the scope of this.

7  Section 3 is essentially a preemption provision against local

8  governments from passing through enactment or amendment any

9  ordinance that regulates private employment practices or public

10 accommodations; right?

11         **MR. NOLL:**  Yes, Your Honor.

12         **THE COURT:**  So what happens if a local government

13 reinterprets an ordinance, if you will, and the phrase "based

14 on sex" is in the ordinance already?  What if a local

15 government reinterprets that to mean gender identity?  Is that

16 a violation of Section 3 currently in your view?

17         **MR. NOLL:**  We don't believe so, Your Honor.  I mean,

18 of course, the validity of that interpretation is something

19 that in an appropriate case perhaps brought in state court

20 under state law a party could challenge, but we don't believe

21 Section 3 in any way would reach that conflict.  It only talks

22 about limitations on local governments enacting or amending

23 existing laws.

24         **THE COURT:**  Okay.  So in that situation, the

25 Executive would still be free to argue that that's an improper

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  interpretation of the local ordinance?

2          MR. NOLL:  To the extent they are involved in the

3  case in some capacity, I guess.  So I think it may be that some

4  other private entity or someone else might -- that has an

5  injury, based on that interpretation, might bring that case in

6  state court somehow, but I don't know how the Executive Branch

7  Defendants would necessarily be implicated in a case --

8          THE COURT:  Well, that begs the question:  Who has

9  enforcement power for Section 3?

10         MR. NOLL:  So Your Honor found quite clearly in your

11 traceability and redressibility analysis in the motion to

12 dismiss that the Executive Branch Defendants are the proper

13 parties, and because they're charged with enforcing the

14 statute, that they have the power to do so and, thus, an

15 injunction against them would remedy our claims.  So they are

16 the entity under as we understand the North Carolina system

17 that are in charge of enforcing the laws.

18         THE COURT:  Okay.  Thank you.

19         MR. NOLL:  Thank you, Your Honor.

20         THE COURT:  Do you want to be heard at all on any of

21 this?

22         MS. VYSOTSKAYA:  Unless Your Honor has questions to

23 the Executive Branch specifically, I don't.  I do want to point

24 to the Court that *Local No. 93* has been misinterpreted by the

25 other side.  The case actually stands for a proposition that

Carcano, et al. v. McCrory, et al. Motions 5/17/19

broader relief than the one that is available under the
challenged statutes is appropriate for the Court to enter by
way of a consent decree.  It's on page 526 of the Supreme
Court's opinion in that case.

Also, I would like to point out that the Fourth
Circuit's precedent in *Bragg* case has concluded the same.  In
that case, the Fourth Circuit actually dismissed the state
official from the lawsuit, finding that *Ex Parte Young*
exception did not apply and yet chose to affirm the consent
decree that that state official has entered into with
plaintiffs at the district court level.  So certainly the Court
has much broader discretion to provide a broader relief than
the one that is alleged in the lawsuit or even the one that is
pled under any particular --

THE COURT:  Is there a distinction as to
subject-matter jurisdiction between a situation where a Court
dismisses a claim for -- because there's no viable claim versus
the Court concluding there's no standing to assert the claim,
which would be a subject-matter jurisdiction argument?

MS. VYSOTSKAYA:  I think there is a big distinction
between the Court concluding that it has subject-matter
jurisdiction over a case.  In this case the Court has already
found it has subject-matter jurisdiction over equal protection
claim, and that makes the -- that enables this Court with an
authority to approve this consent decree, which is tailored to

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  the statute that is being challenged in the case, and it also

2  promotes the goals of the Equal Protection Clause, which is

3  what Plaintiffs seek to enforce in the case.

4      And Your Honor had questions about what happens with

5  the future successors to the Executive Branch Defendants.  So

6  the ability of the future successors, if they disagree with the

7  policies adopted by this administration, would be, under the

8  appropriate circumstances, to seek modification of the consent

9  decree.  Courts —— much of cases that we cited, even that

10  Legislative Intervenors have cited, all agree that modification

11  would be appropriate mechanism to seek changes, if the law

12  changes, if administration changes.  So that ability exists in

13  the future.

14      **THE COURT:**  Ordinarily, consent decrees are modified

15  subsequently when there's some change of circumstance as

16  opposed to a policy choice being made.  So to the extent that

17  consent decrees reflect policy choices or, put alternatively,

18  to the extent that they reflect enforcement priorities, it

19  strikes me that that's a weaker ground for approval of a

20  consent decree versus one that enforces the law.

21      In other words, if there's no dispute as to what

22  Title VII holds in a case involving race, then one wouldn't

23  expect somebody to come back later and argue, well, we want

24  that reinterpreted.  Now, you might argue that the relief is no

25  longer necessary in a consent decree because the remediation

Carcano, et al. v. McCrory, et al. Motions 5/17/19

has occurred.  That happens in school desegregation cases from
time to time, but it strikes me it might be a different
proposition that if it's an enforcement priority or a policy
issue, that you're sounding like that's a little more of a
political issue.  Where, as courts, we're -- we look a little
harder at those as to what extent we should put our imprimatur
on the agreement of the current parties when it purports to
bind subsequent elected officials.

        **MS. VYSOTSKAYA:**  Yes, Your Honor.  But what this
agreement does in -- at the heart of this agreement is what the
Court has already found is the truth.  Now, Your Honor pointed
out that you found in your order on the motion to dismiss that
H.B. 142 does not prohibit or the law does not in any way, I
guess, regulate the access issue.  When we submitted the
proposed agreed-to in the first instance, it was before the
Court's order.  So those words do affirm our understanding of
the law, but that may explain why paragraph 1 exists.  It
exists because the Court at that point still has not ruled what
H.B. 142 says, but what this decree essentially does is what
all the parties have already agreed to, including Legislative
Intervenors, that 142 does not prevent anybody from accessing
the restrooms.  So I do not anticipate that there will be a
change on that position by anybody if it's already the
established law of this case, by future administration or
anyone else.

1          What will continue throughout this litigation is

2   what -- the meaning of what 142 means, which is embodied in

3   paragraph 1 of this agreement.

4          **THE COURT:**  Okay.  It may be that the original

5   language preceded my opinion, but I think the revised consent

6   decree came after my opinion, if I'm not mistaken.

7          **MS. VYSOTSKAYA:**  And the only -- and the final

8   comment that I will make -- and we agree with the positions

9   that have been taken by the Plaintiffs, explaining what

10  animates the law behind approval of consent decrees.

11         Your Honor emphasized the word "enforcement"

12  throughout this consent is something that gave you somewhat of

13  a trouble.  The reason why the word "enforcement" was used in

14  this proposed consent decree was not to say that H.B. 142

15  contains an enforcement provision, but instead to point out the

16  proper boundaries of the Executive Branch that is entering into

17  the agreement.

18         Legislature passes the laws, the Courts interpret it,

19  and Executive Branch enforces.  So we very narrowly limited the

20  terms of the proposed agreement to enforcement by the Executive

21  Branch on its own premises, which is what the law allows, the

22  state laws and the constitutional laws.

23         **THE COURT:**  Since you're speaking, the Legislative

24  Defendants have at least made an argument and a charge that the

25  negotiation for the consent decree is not fully at arm's

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1   length.  I hesitate to use the word "collusion," but that it's

2   not really an arm's length agreement, that the Plaintiffs and

3   the Executive Branch Defendants largely are aligned at this

4   point in the case.

5           What's your response to that, and what was the nature

6   of the negotiation process?

7           **MS. VYSOTSKAYA:**  We obviously disagree with that

8   assertion and would like to point out that the way our

9   Legislative Intervenors made that assertion, they cite to not a

10  single fact of what constitutes a collusion.  They cite to no

11  improprieties that occurred during the negotiation process.

12  They simply invite the Court to explore that issue.

13          The negotiation process, Your Honor, was lengthy and

14  extensive.  We made multiple changes to paragraphs.  The decree

15  paragraphs were modified at least 10, 20, maybe more times than

16  that, and at the onset of this process, all the parties were

17  invited to participate in settlement agreement, including

18  Legislative Intervenors and UNC, first to draft -- at least two

19  drafts, maybe more, of the original proposed consent decree

20  were shared with the other side.  The other side has decided

21  instead to pick a different path, to pursue a path of

22  litigation, to argue motions to dismiss.  We continued

23  negotiating the terms.  We narrowed it down significantly, and

24  to the extent the Court is interested in exploring this issue

25  further, we certainly do not object to submitting first one or

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  two drafts of the original consent decree that was given to all

2  the parties.

3          **THE COURT:**  The Executive Branch Defendants, though,

4  have not moved to dismiss any of the claims; right?

5          **MS. VYSOTSKAYA:**  We have preserved that right very

6  clearly in all of our pleadings.  We did not move to dismiss

7  because we believe it would be waste of public resources in

8  case if this Court is to approve our proposed consent decree,

9  and if the Court is to approve it, we're saving significant

10 litigation efforts.  We're saving, of course, expenses to the

11 state taxpayers.  We are saving money and resources in

12 connection with additional discovery.  And, clearly, as a

13 result of the motions to dismiss stage show, we would have been

14 left in this litigation because the Court have found that the

15 reason *Ex Parte Young* connection between Executive Branch

16 Defendants and H.B. 142, and we would have wasted all this

17 money and resources meanwhile.  That was our choice to --

18 instead of moving to dismiss, to wait for this Court to

19 decide --

20         **THE COURT:**  And as part of the proposed consent

21 decree, as I understand it, then if there is an agreement that

22 the Court can approve, then that would resolve the litigation

23 between the Plaintiffs and the Executive Branch Defendants; is

24 that right?

25         **MS. VYSOTSKAYA:**  That's right, Your Honor.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1 Attorney's fees included.  So that's significant expense.

2          THE COURT:  And that would also resolve then the

3 remaining claim about whether or not the statute was passed

4 with some discriminatory intent?

5          MR. NOLL:  Yes, Your Honor.  We think the consent

6 decree, by leaving H.B. 142 in place, would resolve all the

7 claims in the case, including our discriminatory intent claim,

8 and also would resolve the contingent H.B. 2 claims that we've

9 brought as an alternative claim.  To the extent Your Honor were

10 to find the statute not severable, it would completely end that

11 portion of the litigation.  All that would be left would be the

12 nominal damages claims against UNC.

13          THE COURT:  All right.  Thank you.

14          MS. VYSOTSKAYA:  Yes, Your Honor, and to the extent

15 Legislative Intervenors would like to argue regarding any other

16 additional provision of H.B. 142, clearly, Executive Defendants

17 took care to draft the agreement only to where Executive

18 Defendants are being dismissed from this action, and we didn't

19 waive any arguments about constitutionality of the statute that

20 Legislative Defendants are clearly welcome to do after we exit

21 the litigation, if the Court approves the decree.

22          THE COURT:  Okay.  Thank you.  Mr. Schaerr, do you

23 want to be heard any further on any of this?

24          MS. SCHAERR:  Yes, Your Honor, there are several

25 things to address.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1          **THE COURT:**  All right.  Why don't we do this?  We've
2    been going here for a little over an hour.  Why don't we take a
3    break for about 10 minutes.

4          I do want to ask you during the break -- this has
5    been pending for a while.  I would like to wrap this up, if
6    possible, or make a decision and decide where the case is
7    headed.  I don't know if there is any possibility that during
8    the break you all can confer as to any of these provisions to
9    see if there is any agreeable middle ground.  They are not
10   seeking the Intervenors to sign anything.  I think they're just
11   asking whether it's going to be opposed.

12         So in light of my questions and concerns I've
13   expressed, I am wondering whether there is any ability the
14   lawyers can get together and see if there's not some way to
15   address these issues so it can be resolved.  Is that a
16   possibility, do you think, or not?

17         **MS. SCHAERR:**  Obviously, Your Honor, we would have to
18   consult with our clients if we were to be brought into the
19   negotiations about ending the suit.

20         **THE COURT:**  Okay.  Well, I'm not inviting you into
21   the negotiations.  That's up to them.  It's their consent
22   decree.  I'm only asking whether at some point if they could
23   come up with an agreement that, from the Legislative
24   Defendants' point of view, is one they wouldn't object to,
25   which I would interpret to mean that it doesn't harm the

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  interests of the legislators who passed H.B. 142, from their

2  point of view, keeping in mind the language they used when they

3  wrote the law, which was obviously a comprised law, and we all

4  lived through the process, so we're familiar with it.  Let's

5  take a break for --

6        **MR. STRANGIO:**  Your Honor, if I could just quickly?

7        **THE COURT:**  Yes.

8        **MR. STRANGIO:**  Plaintiffs are definitely amenable to

9  working through language.  In order to do that most

10 consistently with Your Honor's concerns, if you could -- we

11 tried to write down some of the questions you had about decree

12 paragraph 1, and I just want to make sure that when we're

13 having these discussions, we're doing it consistent with what

14 your concerns were.

15       So we have the first sentence was with respect to

16 public facilities that are subject to Executive Branch

17 Defendants' control or supervision, nothing in H.B. 2 and I

18 think -- so nothing in H.B. 142, you know -- or nothing -- or

19 the Defendants are prohibited from interpreting or construing

20 H.B. 142?  If you could --

21       **THE COURT:**  My comment was that ordinarily consent

22 decrees are agreements between the parties as to how they will

23 conduct themselves, and they're not, in my way of thinking,

24 ordinarily pronouncements of law.  I wrote an opinion.  That

25 was a pronouncement of law, correct or incorrect.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1          I was encouraging the parties to consider whether

2     there is a way they could phrase what they're willing to agree

3     to do or not do with respect to not only H.B. 142, but I think

4     that paragraph deals with Section 2 of H.B. 142.  So I'm very

5     well aware that any time something is less than specific, that

6     it could then later be used to argue something different, and

7     I'm just trying to get this as closely tailored to what your

8     claims were in the case and then seeing if there's any

9     opposition to that.  If there is, I will address it at that

10    time.

11         I was hopeful that if it's tailored to what I thought

12    your interests were, based on the decretal paragraphs of the

13    proposed consent decree, then there might be less disagreement

14    between the parties because the language seemed looser, if you

15    will, than what you were trying to accomplish.

16              **MR. STRANGIO:**  I understand, Your Honor.

17              **THE COURT:**  And what I'm hearing today is maybe that

18    was not intentional, and, if so, I was hopeful that, well,

19    maybe with all the legal brain power we have here at the table,

20    you all could clearly up with some language everybody could

21    agree to.  That was my hope.

22              **MR. STRANGIO:**  Thank you, Your Honor.

23              **THE COURT:**  We'll take a 20-minute break, and then

24    I'll come back and I'll be glad to hear from you Mr. Schaerr.

25         (The court recessed at 11:13 a.m.)

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1      (The court was called back to order at 11:42 a.m.)

2           **THE COURT:**  Mr. Schaerr, I think you wanted to make

3  some other comments or not.

4           **MS. SCHAERR:**  Sure, Your Honor.  First of all, I want

5  to just be sure that I understand something that the Plaintiffs

6  said earlier about the intention behind Section 3 of the

7  proposed decree.  My understanding is that they actually do

8  intend to have that provision provide authority or provide

9  cover for local governments to be able to reinterpret existing

10  nondiscrimination laws, prohibitions on sex discrimination as

11  also covering gender identity discrimination.  I thought what's

12  I heard them say, and I just wanted to confirm that that's

13  true.

14           **THE COURT:**  Do you want to speak to that?

15           **MR. NOLL:**  I'm happy to address it, Your Honor.  I

16  think it wouldn't -- I wouldn't describe it as providing cover,

17  but I think we're just intending it to say that any local

18  government can exist any terms in an existing ordinance -- can

19  interpret those in a way they choose fit.  That may be

20  interpreting what sex means, it may be what gender means, but I

21  think it will allow them to, consistent with Section 3,

22  interpret existing statutes as they see fit.

23           **THE COURT:**  Okay.

24           **MS. SCHAERR:**  And then if I also understand the

25  further implication of that, that also means that no one who

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  agrees to this consent decree would be able to argue that that

2  kind of an reinterpretation is, in fact, an amendment; is that

3  correct?

4        **THE COURT:**  Do you want to respond?

5        **MR. NOLL:**  Sure.  I think it would just prevent the

6  Executive Branch Defendants from arguing that that

7  interpretation is in any way inconsistent with H.B. 142.

8        **THE COURT:**  All right.

9        **MS. SCHAERR:**  So nobody in the Executive Branch could

10 make that kind of an argument?

11       **MR. NOLL:**  That's what we believe Section 3 says,

12 that there's nothing barring interpretations of existing

13 statutes.  Consistent with that, we think that the decree would

14 prevent them from arguing that something in Section 3 bars

15 that.

16       **THE COURT:**  So that section sunsets, right,

17 December 2020?

18       **MS. SCHAERR:**  Right.

19       **THE COURT:**  All right.

20       **MS. SCHAERR:**  Well, Your Honor, we certainly

21 appreciate the Court's desire to find a way to settle this

22 case; and if the Court wants to direct the parties to engage in

23 a certain period of negotiations over a potential settlement,

24 we would be more than happy to participate in that, and we

25 would be happy to review a new draft of the proposed decree

Carcano, et al. v. McCrory, et al. Motions 5/17/19

that addresses some of the concerns that the Court has
mentioned here.  This issue with respect to Section 3 I think
is a significant issue for us.

**THE COURT:**  Would the Legislative Defendants have the
authority to do anything in that regard?  Under the statute
that allows them to intervene in this litigation, do they have
any authority to intervene in any kind of action?

**MS. SCHAERR:**  I'm not sure, Your Honor, standing here
today.  I would have to take a closer look at that.

I don't want to mislead the Court.  Our clients care
a lot about federalism, and so the idea of subjecting any area
of state authority to an ongoing federal consent decree that
binds not only the current Executive Branch, but also future
officers of the Executive Branch is going to be an issue.  It
would be much easier for us to agree to some kind of a garden
variety settlement agreement than that, but, again, we're --
I'm happy to take back to my clients whatever the other parties
would like to propose, and we'll see where that goes.

But as to this particular decree, we believe that
even if the Court thought it had the authority to enter what's
been proposed, that there are at least four powerful equitable
considerations that militate against that kind of an order, and
some of those have been raised obliquely by the other parties
today.

First, the Executive Branch Defendants addressed the

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  arm's length negotiation issue.  We think it's quite clear that

2  there has been no genuine arm's length negotiation between

3  genuine adversaries.  As the Court pointed out, the Executive

4  Branch Defendants have not defended H.B. 142 at all.  They did

5  not even file a motion to dismiss any of the claims directed at

6  H.B. 142, even though those claims were, in many cases,

7  dismissed by the Court.  And, of course, one could hardly

8  expect the current governor or the attorney general to be

9  adverse to the Plaintiffs as to H.B. 2 and as to the underlying

10  bathroom issue, since both of those officials ran against

11  H.B. 2 when they -- during the 2016 election when they were

12  elected.

13          And so as we've explained in our briefing, that lack

14  of genuine adversity, or collusion, as it's sometimes called,

15  is a well-established equitable reason to reject a proposed

16  consent decree and a reason to let the Plaintiffs and the

17  Executive Branch Defendants settle by way of an ordinary

18  settlement agreement, if what's they want to do.

19          Second, as has become increasingly clear from our

20  discussion today, the proposal as it stands has some troubling

21  ambiguities that would make it very difficult to administer.

22  We talked about paragraph 3 a minute ago.  Paragraph 3 really

23  would allow localities to essentially end run Section 3 of

24  H.B. 142 simply by reinterpreting existing laws and

25  regulations.

1          And then, of course, if the decree were adopted, the
2    resulting controversy over whether an interpretation was in
3    substance, an amendment would then have to get resolved in two
4    places.  It would likely be challenged in state court, and then
5    it would also have to be resolved here on a contempt motion in
6    all likelihood.

7          And so -- and let me raise another issue that's of
8    some importance to us that we haven't discussed yet, and, that
9    is, the second sentence of paragraph 2 could, we think, be
10   interpreted to prevent Executive Branch officials from applying
11   ordinary North Carolina trespass law to deal with issues that
12   might arise with respect to bathroom use.  Now, that may not --
13   may not be the intent of the parties, but it seems to us that
14   the language that they proposed could be interpreted to
15   foreclose the application of trespass laws in those situations,
16   and, obviously, that's important to the General Assembly since
17   they have overall responsibility for the integrity of North
18   Carolina law generally.

19         And, again, any ambiguities in a consent decree are
20   especially problematic given that alleged breaches require a
21   resolution by the Court on pain of contempt, and a simple
22   settlement agreement doesn't create those kinds of problems.

23         Third, we've already talked a bit about the ongoing
24   federalism problem that would be created by almost any consent
25   decree, and that, of course, is one reason why federal consent

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  decrees against states have fallen out of favor.

2          And, fourth, the proposed decree would keep this

3  Court in the middle of what is likely to be an ongoing struggle

4  between the two political branches of the North Carolina state

5  government for some time to come, and that, of course, is the

6  exact concern that led the Fifth Circuit in the *LULAC* case that

7  we've cited in our briefs to conclude that a consent decree

8  isn't appropriate in these kinds of circumstances where you

9  essentially have a tug of war between the two political

10 branches of a state government.

11         And even if the parties were to agree to a consent

12 decree that simply stated the law as it exists now or in which

13 everybody has simply agreed to follow the law as it exists now,

14 even that would still be problematic because a decision

15 entering a consent decree is likely to be spun as the Court's

16 agreement with the Plaintiffs and the Executive Branch

17 Defendants that there's something constitutionally suspect

18 about H.B. 2 and H.B. 142.

19         **THE COURT:**  Why would that be?

20         **MS. SCHAERR:**  Well, just, you know, the way -- the

21 way the press and the public perception work.  If the Court

22 enters a consent decree, that, you know, that enjoins anybody

23 in North Carolina government from taking action on this issue,

24 it's going to be perceived, or at least there's a big risk that

25 it will be perceived, as the Court siding with those who say

1    that the laws are at least constitutionality suspect; and,

2    again, a simple settlement agreement wouldn't pose that problem

3    either.

4              **THE COURT:**  Wouldn't there be an argument that it

5    might be -- that Court's approval that the law is not

6    constitutionality suspect, insofar as the Plaintiffs would be

7    dropping their claim that the law was enacted with some kind of

8    discriminatory intent, wouldn't it actually cut the other way?

9              **MS. SCHAERR:**  It could be spun that way, but I

10   suspect -- you know, there's a big PR machine behind this --

11             **THE COURT:**  I think all the parties have PR machines.

12   I can't deal with that.

13             **MS. SCHAERR:**  Theirs is more effective than ours.  I

14   will say that.

15             And let me finally just address another issue that

16   the Executive Branch Defendants raise, and that is the little

17   statement in *Local 93* that says that a consent decree can grant

18   broader relief than the Court could have awarded after trial.

19   You know, that's from a fairly old Supreme Court decision, and

20   I think it's a fair question whether the current justices would

21   still adhere to that view; but in any event, that statement in

22   *Local 93* can't really help the parties here because whatever

23   relief is granted still has to be designed to remedy some

24   injury that flows from conduct and claims that are subject to

25   the Court's jurisdiction.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1           And so we think that language from *Local 93* doesn't

2    really help the other side, and, of course, our opponents

3    haven't actually cited any case for the proposition that a

4    Court can enter a consent decree based upon unasserted or

5    dismissed claims and especially where those claims were

6    dismissed for lack of jurisdiction.

7           **THE COURT:**  If I'm not mistaken, I think there is at

8    least case law that says that even a dismissed claim can be the

9    subject of a consent decree because the question whether it was

10   properly dismissed would be before the Court.

11          **MS. SCHAERR:**  I don't recall seeing that, Your Honor,

12   but I'll take your word for it.

13          **THE COURT:**  Whether they're dismissed on

14   subject-matter grounds might be a different proposition because

15   it goes to the Court's subject-matter jurisdiction.

16          **MR. NOLL:**  I'm happy to address --

17          **THE COURT:**  Do you want to address any of those?  I'm

18   trying to see if we can --

19          **MR. NOLL:**  Certainly.  In terms --

20          **THE COURT:**  -- narrow the issues.

21          **MR. NOLL:**  Yes, certainly.  In terms of the alleged

22   ambiguities in the decree, both Plaintiffs and the Executive

23   Branch Defendants have conferred about those.

24          **THE COURT:**  If you wouldn't mind taking the

25   microphone and just bending it up a little bit.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1    **MR. NOLL:**  We conferred during the break, and we

2    think we have a proposal that would solve those ambiguities.

3    I'm happy to let cocounsel discuss that --

4         **THE COURT:**  Have you shared that with all the

5    parties?

6         **MR. NOLL:**  So the break that we had took time to

7    hammer that out, and given that our agreement is with the

8    Executive Branch Defendants, we wanted to ensure we were on the

9    same page.  We're happy to share that with all the parties, but

10   we have not yet an opportunity to do so.

11        **THE COURT:**  All right.

12        **MR. NOLL:**  In terms to the arm's length agreement, I

13   would just raise the same arguments that counsel for Executive

14   Branch Defendants raised, in particular, the Eleventh Amendment

15   argument.  I mean, they have preserved their right to continue

16   to litigate this case to the extent the decree is not entered.

17   The Fourth Circuit decision in *Bragg* quite clearly states that

18   that if a party -- if the Executive Branch chooses not to raise

19   Eleventh Amendment immunity or other types of defenses on the

20   way to entering the consent decree, that should be respected.

21   So we don't see a reason for -- we believe that we're truly

22   adverse parties here, Your Honor.

23        And the last thing I would just say is in terms of

24   the case law about granting further relief than could be

25   awarded after trial, we, as plaintiffs, don't believe that's an

Carcano, et al. v. McCrory, et al. Motions 5/17/19

accurate characterization of what the consent decree does; but
even to the extent that Your Honor has some concern about that,
there is more recent case law from the last several years from
the Third Circuit and the Fourth Circuit reinforcing the
statement in *Local No. 93* that parties, as long as there is
subject-matter jurisdiction, can agree to a consent decree that
is broader relief than the parties could get after trial.

We, again, don't believe that's a proper or an
accurate characterization of what this decree does, given that
it saves -- it keeps H.B. 142 in place rather than invalidates
it, which is what we were seeking under the fourth-amended
complaint, and it interprets it narrowly, which we think is
within this Court's wheelhouse and something courts do all the
time and even would be a remedy in terms of constitutional
avoidance to the extent we got to post-trial proceedings.  I
just want to be clear that that is still good case law, in our
view, if you take a different view of what the consent decree
does here.

I'm happy to address any other question, but I think
those are the points I wanted to raise, Your Honor.

**THE COURT:**  All right.  One concern I have, in
addition to the ones I mentioned, is Section 3 does seem to go
a little further than what was in the fourth-amended complaint.
I am going to go back and review the fourth-amended complaint,
but let me make an observation as to a practical issue, and,

Carcano, et al. v. McCrory, et al. Motions 5/17/19

that is, H.B. 142 provides that Section 3 is going to sunset on
December 1, 2020.  So it's got, I don't know what that is,
eighteen months or so left.  I was hoping that the fact that
it's got a short lifespan relatively might provide some
practical incentive to the parties to be able to come to some
resolution of that.

On the one hand, it's a narrow window of time, all
things considered.  On the other hand, I guess there's nothing
to prevent the legislature from enacting new laws, and you
wouldn't be -- your consent decree wouldn't cover any new law.
I just make those observations.  I would think there's some way
to work around that between the parties.

I do have some concern about the contention that's
raised.  Clearly, Section 3 seems to be designed to put a
moratorium on any further activity regarding local ordinances
until December 1, 2020, and I'm just going to have to think
about whether a reinterpretation of the local ordinance could
arguably be some kind of an amendment.  I don't know that I
have seen any cases on that.

Do you have any cases on whether that would
constitute an amendment?  Does anybody have any case one way or
the other on whether that would be an amendment?

**MR. NOLL:**  We do, Your Honor.  Let me just find them.

**THE COURT:**  Sure.

**MR. NOLL:**  Just the general principle that an

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  interpretation of an existing law is not an amendment or a

2  change to the law.  Let me just take a moment to find that in

3  our briefing.

4          **THE COURT:**  All right.

5          **MS. SCHAERR:**  Well, it really depends on how

6  extensive the change is.  I mean, I haven't seen case law on

7  this point, but it's because there aren't my legal regimes

8  where there's an incentive -- well, actually, I take that back.

9  There are lots of situations in federal practice where federal

10  agencies will really change the meaning of a federal regulation

11  through what they call interpretation.  I mean, we had an

12  example of that in the situation that led to the *G.G.* case,

13  Your Honor.  That's exactly what the education department did.

14  That was a pretty dramatic change in the meaning of that

15  regulation but was adopted through an interpretation rather

16  than through a straight-up amendment.

17          **MR. NOLL:**  So, Your Honor, on pages 16 to 17 of our

18  opening brief, we cite both to the *Hively* case out of the

19  Seventh Circuit, which, again, is one of the cases that is

20  involved in the case before the Supreme Court now, but the

21  question of what a term in a statute means is a pure question

22  of statutory interpretation and not an amendment of a law.

23          And, similarly, I think we cited a case out of the

24  Fourth Circuit, *Glenn v. Johnson*, talking about the more

25  general practice of the federal agencies reinterpreting or

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  state agencies reinterpreting statutes, and that is not a new

2  statute; it's just an interpretation of a statute.

3          So there is that general principle of the law that I

4  think, given, in particular, the specific terms that Section 3

5  used, we think quite intentionally, talking about amendment or

6  enactment of new laws -- we just don't think there is anything

7  to the argument that an interpretation of what a term means in

8  an existing law is something that Section 3 reaches.

9          And in terms of the short time period, Your Honor,

10  before it sunsets, I mean, candidly, we think that's something

11  that weighs in favor of the consent decree and even shows that

12  the relief is quite modest.  There's nothing to prevent the

13  legislature from after that sunset passing a different statute.

14  The fact that the decree at least says to Section 3 will only

15  run for that many months, because then the law will be

16  sunsetted, we think weighs in favor of the decree because it

17  demonstrates quite clearly how modest the relief is in terms of

18  the scope and length of the consent decree on that provision.

19          **MS. VYSOTSKAYA:**  Your Honor, may I also offer an

20  observation on --

21          **THE COURT:**  Do you have any other arguments you want

22  to make?

23          **MR. NOLL:**  Unless Your Honor has other questions,

24  that's all I have to say.

25          **THE COURT:**  Yes, ma'am.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1          **MS. VYSOTSKAYA:**  I just wanted to point out how

2   narrow Section 3 of the proposed consent decree is.  It is not

3   as broad as Legislative Intervenors suggest it is.  It is

4   explicitly limited to the Executive Branch's authority.  It

5   only prohibits Executive Branch Defendants from applying

6   Section 3 to restrict local governments from interpreting laws.

7   So there is no affirmative mechanism in that section that

8   require local governments from adopting any laws or from

9   interpreting any laws.  All this says is that the Executive

10  Branch Defendants would be prevented from applying 142 in a way

11  that restricts local government's ability to interpret

12  preexisting laws.

13          **THE COURT:**  So let me ask this question:  Current

14  executive is serving out a term that will exceed this period of

15  time, right, December 1, 2020?

16          **MS. VYSOTSKAYA:**  The elections will be November;

17  that's right.

18          **THE COURT:**  In other words, Governor Cooper's current

19  term includes through December 1, 2020?

20          **MS. VYSOTSKAYA:**  That's correct, Your Honor.

21          **THE COURT:**  And try as the Intervenor Defendants may

22  wish at some point in time, if the current executive decides

23  not to seek to argue that Section 3 would bar any

24  reinterpretation, if you will, of any local ordinance, I would

25  suspect there's little Intervenors Defendants could do about

       Carcano, et al. v. McCrory, et al. Motions 5/17/19

1 that because that's the executive's prerogative.  Is that a

2 fair statement?

3          **MS. SCHAERR:**  Well, Mr. Potter tells me that -- and I

4 haven't researched this personally, but he tells me that the

5 legislature would have the ability, if it believes the

6 Executive Branch is simply not enforcing the law, to go into

7 court in North Carolina and seek a mandamus requiring the

8 executive to enforce the law.  So conceivably there is a

9 mechanism by which that issue could get raised, but, of course,

10 if the --

11          **THE COURT:**  Do you have that remedy even if the

12 executive agrees otherwise?

13          **MS. SCHAERR:**  Well, that's the problem.  If the

14 consent decree is entered --

15          **THE COURT:**  Well, I'm suggesting maybe that's not the

16 problem.  If the consent decree is entered and the executive

17 says, I'm not going to enforce that part of the law -- I use

18 the term "enforce" loosely because there's a question whether

19 that would be an enforcement.

20          **MS. SCHAERR:**  Right.

21          **THE COURT:**  -- does the Legislative Defendant group

22 still have the authority under the statute to do what you're

23 saying?  It seems to me that's the only condition when they

24 would want to do that because, otherwise, they would want the

25 executive to do whatever it is they agree should be done; true?

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1          MS. SCHAERR:  Right.

2          THE COURT:  So I guess what I'm missing is if the

3  executive agrees that until December 1, 2020, it's not going to

4  argue that Section 3 addresses any interpretation of existing

5  law, and as a practical matter, there's nothing you can do to

6  force the executive to do otherwise, that leaves you with your

7  option of whether you can intervene under the statute --

8          MS. SCHAERR:  No, I think what I was suggesting

9  earlier is that independently of intervening under the statute,

10 the legislature would have the ability to go to state court and

11 seek a mandamus ordering the attorney general to enforce the

12 law if the legislature believes that the attorney general is

13 not enforcing the law.

14         So take a hypothetical situation where the city of

15 Charlotte -- you know, if this consent decree were adopted

16 today, tomorrow the city of Charlotte decides that it's going

17 to interpret its existing law banning sex discrimination to

18 apply to discrimination on the basis of gender identity, that

19 would at least arguably be, in fact, an amendment of the law

20 and not a mere interpretation.

21         If the consent decree were in place, the Executive

22 Branch would be obligated under the Court's consent decree not

23 to do anything about that, and that would foreclose the

24 legislative branch and other potential people who might want to

25 try to pressure the Executive Branch to enforce the law as they

Carcano, et al. v. McCrory, et al. Motions 5/17/19

Case 1:16-cv-00236-TDS-JEP  Document 287  Filed 05/21/19  Page 64 of 78

1   see it. That would preclude that option. So I think there is

2   a real practical effect, albeit, short lived.

3            **THE COURT:** All right. Do you want to address that?

4            **MS. VYSOTSKAYA:** Yes, Your Honor.

5            In that situation, the proper remedy for Legislative

6   Intervenors would be to go to state court and seek mandamus

7   writ against Charlotte, not against attorney general or

8   Executive Branch Defendants, but against the local government

9   that adopted the interpretation. We do not call for any

10   particular way for local governments to adopt those

11   interpretations. So the remedy absolutely does exist, and

12   state courts would be the final arbitrators of that remedy.

13   This agreement does not affect it in any way.

14            **THE COURT:** Okay. So let me -- if that's an option

15   that's available to the Intervenor Defendants, and given the

16   Governor's executive order and the fact the Governor is going

17   to be in place during the period and up until when this would

18   sunset anyway, what is the practical benefit of this provision?

19            It seems to me that the Plaintiffs already have what

20   they want, and, that is, that there's -- they have an executive

21   order that essentially gives them what they are looking for,

22   and this provision is going to sunset anyway in 2020, and the

23   Intervenor Defendants could at any point seek to step in if

24   they think they have a legal right to do so.

25            What does this give you that you don't already have?

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1    **MR. NOLL:**  My understanding is the executive order

2    does not reach Section 3 of H.B. 142, or at least does not

3    include this provision, but in any event -- (conferred with

4    cocounsel.)

5          **THE COURT:**  All right.  Well --

6          **MR. NOLL:**  I can even put that aside.  There is an

7    ongoing injury for the next 18 months, as short as that period

8    may be, that is not moot, that continues to be ripe, given the

9    barrier that's in place.

10         **THE COURT:**  Well, there's an ongoing injury if you

11   conclude that the preemption provision is unlawful, and that's

12   still subject to litigation.  And so my concern is if Section 3

13   were to be interpreted to resolve that issue in a way that an

14   interested party, since the legislators' view is that it

15   eliminates their rights -- I have a question as to whether a

16   federal court should be agreeing to that, given that these are

17   contested issues at this point and also given the federalism

18   concerns.

19         So I guess that raises a question of whether there is

20   any way to deal with your third paragraph in a way that would

21   get the agreement you want with the Executive Branch Defendants

22   but not resolve the issue in such a way that would prevent the

23   Intervenors, who have intervened in a lawsuit, from being able

24   to at least participate in that process.

25         **MR. NOLL:**  So I don't think there's anything in the

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  consent decree that limits the Intervenors' ability to

2  participate --

3      **THE COURT:**  Well, not directly, but what Mr. Schaerr

4  says is that his understanding of the law is that the agreement

5  with the Executive Defendants and the Plaintiffs would

6  supersede any mandamus that they could seek.  I don't know the

7  answer to that.

8      **MR. NOLL:**  Yeah, I'm not familiar with that aspect of

9  state law.  Irrespective of that, Your Honor, the question of

10 what is a valid interpretation of any local ordinance is

11 certainly something that could be litigated in such a case and

12 that Intervenors presumably could seek to intervene and advance

13 those arguments in those cases.

14      I mean, I think we have a fundamental potential

15 misunderstanding about what the terms "amend" and "enact" mean

16 in Section 3, and I don't really see a more narrow way to craft

17 a remedy that would be acceptable to Plaintiffs that's narrow

18 and leaves H.B. 142, Section 3, in place while still remedying

19 our ongoing injury.

20      **THE COURT:**  Well, what I was trying to suggest was

21 the executive can agree to whatever the executive wants to

22 agree to because -- and because of the fact this is going to

23 sunset in 18 months roughly, I'm wondering whether there's not

24 some way to resolve that so you get the agreement of the

25 executive, but preserve at least the right of whatever it is of

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1    the legislators under the statutory right, if they have such a

2    right, to at least be able to make whatever argument they want

3    to make.

4           I'm not saying it's merited.  I'm not saying it

5    doesn't have merit, but I don't want to be the one to have to

6    sit there and resolve those kinds of questions.  It ought to be

7    resolved wherever that issue may pop up, if it even pops up.  I

8    don't even know that this will arise.

9           Is there some way to consider addressing whether's

10   that's an option, because what you're basically asking me to do

11   is to agree to an interpretation of Section 3 in a hypothetical

12   situation.  I don't know what kind of activity may happen at

13   the local level.  I'm hesitant to make a pronouncement in that

14   fashion.

15           **MR. NOLL:**  So I think, first of all, Your Honor, the

16   consent decree runs against the Executive Branch Defendants.

17   We aren't taking a position that it imposes any affirmative

18   obligation or prohibition on the Legislative Intervenors.

19           Now, to the extent there's potentially a desire to

20   maybe craft the language more carefully to make that clear,

21   that it only reaches the ability of the Executive Branch

22   Defendants to interpret the law in a certain way, we could

23   discuss that.  I mean, the Legislative Intervenors aren't

24   consent parties to the decree.  There's nothing in the recitals

25   or the decree provisions that impose any obligations or

Carcano, et al. v. McCrory, et al. Motions 5/17/19

Case 1:16-cv-00236-TDS-JEP   Document 287   Filed 05/21/19   Page 68 of 78

1  limitations on them.  So I just -- I don't think that the

2  decree that settles our claims under *Ex Parte Young* against

3  particular Executive Branch Defendants, that we believe we

4  properly pled against those Defendants, impact --

5          **THE COURT:**  Would you take the position that if the

6  Legislative Defendants had a right to participate in a claim

7  involving a local ordinance, that your agreement in paragraph 3

8  would prohibit them from doing that?

9          **MR. NOLL:**  From participating in that dispute?

10         **THE COURT:**  Right.  I use my words loosely because --

11 or carefully because I don't know exactly what the nature of

12 their intervention right is.  I am familiar with it in terms of

13 litigation.  I don't even know in what context this would

14 arise.  So this is very hypothetical, which is another reason

15 I'm concerned about the provision.

16         All I'm asking is whatever right they claim they're

17 worried about, is there some way to carve out that as not part

18 of your agreement with the executive so that that's preserved?

19 This all may be hypothetical.  I'm just trying to see whether

20 you can assuage that concern given what you said.

21         **MR. NOLL:**  So I don't think the intent is to prohibit

22 in any way Legislative Intervenors' ability to participate in

23 any proceeding that they are able to participate in under state

24 law.

25         **THE COURT:**  What Mr. Schaerr says is his

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  understanding is their ability to participate is by getting a

2  mandamus to force the Executive Branch to do something; in

3  which case, this agreement would be cited as a prohibition

4  against that.

5          **MR. NOLL:**  Certainly.  And I'm not familiar again

6  with that statute, but I will say, I mean, to the extent the

7  Executive Branch Defendants have agreed to take a certain

8  interpretation of the law, they could certainly seek that

9  remedy, but I think their agreement to be bound by that

10  interpretation is something that this decree covers.  I don't

11  frankly see a problem with that in terms of the plain text of

12  the statute or federalism concerns.

13          **THE COURT:**  Okay.  All right.  Anybody else have

14  anything they wanted to add?

15          **MR. STRANGIO:**  Your Honor, in the interest of trying

16  to resolve this matter, as I think we all want to do, would it

17  be helpful to Your Honor for us to go through -- putting aside

18  paragraph 3 of the decree, would it be helpful to go through

19  sort of our agreement in principle with the Executive Branch

20  Defendants to see if it helps resolve some of Your Honor's

21  concerns?

22          **THE COURT:**  Sure.

23          **MR. STRANGIO:**  So that when we -- because then we can

24  then return something to you on Monday in writing, but it would

25  be helpful since we're all here now.

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1          THE COURT:  All right.

2          MR. STRANGIO:  So as to paragraph 4 of the consent

3   judgment and decree, this was concerning the language of public

4   facilities where --

5          THE COURT:  Paragraph 4?

6          MR. STRANGIO:  Paragraph 4, sorry, of sort of the

7   opening -- the recitals.

8          THE COURT:  Oh, okay.

9          MR. STRANGIO:  We have the last sentence of paragraph

10  4 of the recitals is "The term 'public facilities,' as used

11  throughout this decree, refers to" and I believe Your Honor had

12  some concerns with the imprecise language of the types of

13  facilities, where we would instead have "refers to multiple

14  occupancy restrooms, showers, changing facilities as referenced

15  under N.C.G.S. 143-760 and Section 2 of H.B. 142," and this

16  would then be a global --

17         THE COURT:  So the intent is to track the language of

18  Section 2?

19         MR. STRANGIO:  Correct, Your Honor.

20         THE COURT:  All right.

21         MR. STRANGIO:  And then with respect to the decree

22  paragraph 1 that begins -- so for the first sentence that

23  begins "With respect to public facilities," I'm going then to

24  offer some changes here, so changing that sentence now to read:

25  "With respect to public facilities that are subject to

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  Executive Branch Defendants' control or supervision, the

2  consent parties agree that nothing in Section 2 of H.B. 142 can

3  be construed by the Executive Branch Defendants to prevent

4  transgender people from lawfully using public facilities,"

5  which then references back to the statutory language itself,

6  "in accordance with their gender identity."

7          **THE COURT:**  All right.

8          **MR. STRANGIO:**  And then on decree paragraph 2, now

9  I'm reading from that paragraph:  "The Executive Branch

10 Defendants, in their official capacities, and all successors,

11 officers, and employees are hereby permanently enjoined from,"

12 now switch out "enforcing" to "applying Section 2 of H.B. 142

13 to bar, prohibit, block, deter, or impede any transgender

14 individuals from using public facilities," again referring back

15 to the statute, "under any Executive Branch Defendants' control

16 or supervision in accordance with the transgender individual's

17 gender identity."

18         Now, for this next sentence, the first clause would

19 remain the same, "ending at 2018 and notwithstanding N.C.G.S.

20 Section 114-11.6, the Executive Branch Defendants are enjoined

21 from prosecuting an individual under Section 2 of H.B. 142 for

22 using public facilities under the control or supervision of the

23 Executive Branch when such otherwise lawful use conforms with

24 the individual's gender identity."

25         And so I'm going to leave paragraph 3 except for we

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  would submit switching "enforcing" for "complying," but I

2  wanted to make sure that we were addressing Your Honor's

3  concerns as to ambiguities in the first two paragraphs.

4          **THE COURT:**  All right.  Is there any possibility as

5  to Section 3 you could find some way to preserve whatever

6  rights the Legislative Intervenors believe they have and also

7  achieve what you want by way of the executive?

8          **MR. STRANGIO:**  I mean, I think that we could add a

9  sentence saying, you know, nothing in this decree, you know,

10 limits the rights of any -- of the Legislative Intervenors or

11 anyone else to object to an interpretation of --

12         **THE COURT:**  I mean --

13         **MR. STRANGIO:**  -- local law or to limit their rights

14 in any other way.

15         **THE COURT:**  Is it your view that you would be of the

16 opinion that the consent decree could not be argued to prevent

17 whatever right they may have in that regard as to Section 3?

18         **MR. STRANGIO:**  Absolutely, I don't think it would

19 limit their right as to Section 3; and to the extent there is

20 language that could effectuate that, it finds Executive Branch

21 Defendants only as the consent parties.

22         I will say it doesn't sound like, even with all of

23 these changes and even taking paragraph -- decree paragraph 3,

24 putting that aside, that they would consent to this in

25 principle, but we're open to whatever sort of language to make

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1 clear that their rights are in no way abrogated by this

2 directly.

3     **THE COURT:**  All right.  Thank you.

4         Well, you have an idea now at least of what they are

5 willing to do.  The Legislative Defendants indicated they might

6 be interested in considering other language; fair?

7     **MS. SCHAERR:**  Sure.

8     **THE COURT:**  All right.  So what I am going to do is

9 ask if -- I don't know -- if there were private parties,

10 usually things get done fairly quickly.  I don't know what kind

11 of time period it would take to work with the various folks we

12 have here.  I get the impression that the Plaintiffs and the

13 Executive Branch Defendants will work fairly quickly.  I'm

14 concerned when legislators get involved, it might take a little

15 longer.

16         If I give you two weeks to and order you to meet and

17 confer and see if you can come up with some language that you

18 don't -- you don't have to agree to any of this.  The question

19 is whether you oppose it or have no view on it, and then submit

20 that to the Court with an indication of whether there is any

21 opposition to any portion of it.

22         I will make the observation that I am sensitive to

23 the federalism concerns here.  I'm sensitive to the nature of

24 the issues here on a number of fronts, but I'm also looking at

25 H.B. 142, and it says what it says and it's been passed by the

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  legislature, and so it does say some things, and it clearly

2  doesn't say other things.

3         A consent decree that lays out what it is that the

4  legislators crafted seems to me to reduce what otherwise might

5  be some of the federalism concerns that might be implicated in

6  a situation like this.  Put another way, the legislators

7  drafted the statute, passed it.  They get to choose what

8  language they wanted to choose, and that's what they came up

9  with.

10        This case is about 142.  It's not generally about the

11 broader issues that are here.  That may be insofar as the

12 nominal damage claim still exists.  So you earlier made

13 reference to different people report differently what's being

14 decided.  I write my opinions, and people can construe them the

15 way they want, but I'm not deciding broad issues here.  I'm

16 deciding this case that's before me, and this is about H.B.

17 142.  That's what the parties have brought before me.

18        So I'm going to encourage everybody to work together.

19 I appreciate the efforts that are being made to resolve this.

20 There are benefits to resolving it because it would get rid of

21 the remaining claims except for the nominal damage, and we'll

22 wait to see what the Supreme Court says on that.  I would like

23 to do it sooner rather than later.

24        I am going to ask you to get together within the next

25 two weeks and then submit at that period of time a proposed

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  consent decree with whatever modifications were made with an

2  indication of whether there's agreement or at least there's no

3  objection, and if there is objection, you can indicate what

4  objections there are.  I don't need a whole new round of

5  briefing, unless you think that's necessary.  I would rather

6  have a filing.  If you want to explain the reasons, that's

7  fine; but I would rather have one filing, which would be like

8  when I ask parties to submit proposed jury instructions, I like

9  what's agreed to and then anything that's not agreed to, a

10 short explanation of why.

11          I would be surprised if there is a legal issue that

12 needs briefing, other than the one that you've mentioned, and

13 that is, whatever rights the Intervenors believe they have that

14 might affect Section 3.

15          So I ask you to limit your filings to, let's say, 15

16 pages max.  I know we do it by words.  I don't know how many

17 words that is, but you get the point, and file it in two weeks.

18 So that would be May 28th.  Hold on a minute.  I missed one.

19 No, the 31st would be two weeks.  That's good.  Let's do it on

20 the 31st.  File it by the end of the day on the 31st of May.

21          Does anybody need any more guidance than that or any

22 questions?  I hear silence.

23          Again, thank you for your efforts on this, and I do

24 want to hear even if there's no concern -- if UNC has no

25 concern or no view, you can simply say we take no position,

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  however you want to.

2          **MS. LEJNIEKS:**  Yes, Your Honor, we continue to take

3  no position and will indicate as much in the filing.

4          **THE COURT:**  All right.  Thank you for coming in, and

5  I appreciate your efforts.

6          Please adjourn Court.

7      (END OF PROCEEDINGS AT 12:28 P.M.)

8

9                          ******

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Carcano, et al. v. McCrory, et al. Motions 5/17/19

1  UNITED STATES DISTRICT COURT

2  MIDDLE DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF REPORTER

4

5

6          I,  Briana L. Bell, Official Court Reporter, certify

7  that the foregoing transcript is a true and correct transcript

8  of the proceedings in the above-entitled matter.

9

10          Dated this 21st day of May 2019.

11

12

13                    _____
                      Briana L. Bell, RPR

14                    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

Carcano, et al. v. McCrory, et al. Motions 5/17/19