UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOAQUÌN CARCAÑO, *et al.*, <br> *Plaintiffs*, <br> v. <br> ROY A. COOPER, *et al.*, <br> *Defendants*, <br> v. <br> PHIL BERGER, *et al.*, <br> *Intervenor-Defendants* | No. 1:16-cv-00236-TDS-JEP <br><br> **INTERVENOR-DEFENDANTS' SUPPLEMENTAL OPPOSITION RE JOINT MOTION FOR CONSENT DECREE** |

Pursuant to this Court's Order of May 20, 2019, Doc. 286, Intervenor-Defendants Senator Phil Berger and Speaker Tim Moore ("Intervenors") file this supplemental opposition to the Joint Motion for Entry of a Consent Decree. Intervenors have attempted in good faith to negotiate an acceptable compromise with the other parties. But those efforts have been unsuccessful. Accordingly, Intervenors must continue to oppose entry of the proposed consent decree because — even with the modifications proposed by Plaintiffs and the Executive Branch Defendants — some of Intervenors' original objections to the consent decree remain unaddressed. *See* Intervenors' Mem. in Opp. (Doc. 271) ("Opp.").

1. Notwithstanding the superficial changes that Plaintiffs and the Executive Branch Defendants have proposed, the first two decretal paragraphs of the proposed decree still purport to resolve substantive issues about access to particular public facilities on the basis of gender identity. Opp. at 4–5 & n.2, 8–9. Those claims have been dismissed. A consent decree "must spring from and serve to resolve a dispute within the court's subject-

matter jurisdiction," *see Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986), and it must "arise from the pleaded case," *see League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 846 (5th Cir. 1993) (*en banc*) ("*LULAC*"). Claims that have been dismissed are no longer part of the "pleaded case" and thus cannot serve as a basis for a consent decree. This Court therefore lacks authority to enter the proposed decree.

2. The revised proposed consent decree also continues to raise the same federalism and separation-of-powers concerns that made previous iterations unacceptable to Intervenors. Even as revised, the proposed consent decree purports to bind North Carolina State officers and agencies, in perpetuity, to a temporary political settlement.[1]

3. The second decretal paragraph, for example, still appears to constrain not only the named Executive Branch Defendants, but all of their successors, in how they enforce State law. Intervenors remain concerned that it limits, for all time, how State officers can apply trespass and other laws, including how the Attorney General cooperates with local law enforcement. Opp. at 10, 13–16. Intervenors cannot accept that result: It is for the General Assembly, not any transient batch of executive officers, to establish the permanent requirements of North Carolina law. N.C. Const. Art. II, § 1 ("The legislative power of the State shall be vested in the General Assembly[.]"). It is not appropriate to use

---

[1] Intervenors sought a compromise with Plaintiffs and the Executive Branch Defendants that would have addressed those concerns. Specifically, Intervenors proposed that they may be able to accept a revised consent decree that limited the effect of paragraphs 1 and 2 to the named Executive Branch officials. Plaintiffs and the Executive Branch Defendants were unwilling to agree to that change.

a consent decree to allow the Executive Branch Defendants to usurp the General Assembly's institutional role. A number of commentators, including current and former federal appeals judges, have recognized as much.[2] Nor is it appropriate for a federal court to enter a consent decree on the effect of State law over the objection of Intervenors, who are independent State actors with their own interest in the integrity of State law. *See LULAC*, 999 F.2d at 849.

4. Intervenors' objections are heightened by Plaintiffs' and the Executive Branch Defendants' persistent insistence on the mechanism of a consent decree. If they were to resolve Plaintiffs' claims through a private settlement, many of Intervenors' objections would be resolved or lessened. But resolving them through a consent decree that entails permanent federal supervision of State processes, especially where different State entities are now in disagreement (and where future officials might wish to take different positions), creates unnecessary federalism and separation-of-powers problems.

---

[2] *See, e.g.,* Michael W. McConnell, *Why Hold Elections? — Using Consent Decrees to Insulate Policies from Political Change*, 1987 U. Chi. Legal F. 295, 301 ("[O]ne of the evils to be guarded against is the collusive settlement — government lawyers settling a suit on favorable terms to the opposing party precisely because they expect that successive administrations may be less sympathetic to its cause. . . . The constitutional issue is not whether those who bargained away executive authority decided wisely, but whether they had the authority to bargain with that currency at all."); Frank H. Easterbook, *Justice & Contract in Consent Judgments*, 1987 U. Chi. Legal F. 19, 35, 39 (arguing that a government litigant should not be permitted to enter into a consent decree requiring it to take actions that it would lack the authority to perform in the absence of the decree); *see also* Michael T. Morley, *Consent of the Governed or Consent of the Government*? 16 U. Pa. J. Const. L. 637, 675 (2014) ("[C]onsent decrees in government-defendant cases raise serious separation-of-powers problems."); Jeremy A. Rabkin & Neal E. Devins, *Averting Government by Consent Decree: Constitutional Limits on the Enforcement of Settlements with the Federal Government*, 40. Stan. L. Rev. 203, 245 (1987) ("If there are fundamental constitutional difficulties with direct judicial preemption of executive discretion, . . . these difficulties are no less fundamental when the executive seeks to preempt its own discretion — or that of its successors—in binding consent decrees.").

## CONCLUSION

For the foregoing reasons and those set out in Intervenors' Opposition, the Joint Motion should be denied.

Respectfully submitted,

By: /s/ Stephen S. Schwartz
Gene C. Schaerr* (DC Bar #416638)
Erik S. Jaffe* (DC Bar # 440112)
Stephen S. Schwartz* (DC Bar #477947)
*Counsel for President Pro Tempore
Phil Berger and Speaker Tim Moore*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Email: gschaerr@schaerr-jaffe.com
       ejaffe@schaerr-jaffe.com
       sschwartz@schaerr-jaffe.com

By: /s/ Robert D. Potter, Jr.
Robert D. Potter, Jr. (State Bar #17553)
*Counsel for President Pro Tempore
Phil Berger and Speaker Tim Moore*
2820 Selwyn Avenue, Suite 840
Charlotte, NC 28209
Telephone: (704) 552-7742
Email: rdpotter@rdpotterlaw.com

*appearing pursuant to Local Rule 83.1(d)

*Counsel for Intervenor-Defendants*

4

Case 1:16-cv-00236-TDS-JEP   Document 292   Filed 05/31/19   Page 4 of 5

# CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all CM/ECF participating attorneys.

This the 31st day of May, 2019.

                                                /s/ Stephen S. Schwartz
                                                *Counsel for Intervenor-Defendants*