```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
 2
   JOAQUIN CARCAÑO, et al.,      ) 1:16CV236
 3                               )
          Plaintiffs,            )
 4                               )
   v.                            )
 5                               )
   PATRICK McCRORY, in his       )
 6 Capacity as Governor of North )
   Carolina, et al.,             )
 7                               )
          Defendants,            )
 8                               )
          and                    )
 9                               )
   PHIL BERGER, in his official  )
10 Capacity as President Pro     )
   Tempore of the North Carolina )
11 Senate; and TIM MOORE, in his )
   Official capacity as Speaker of )
12 The North Carolina House of   ) Winston-Salem, North Carolina
   Representatives.              ) July 17, 2019
13                               ) 4:05 p.m.
          Intervenor-Defendants. )
14 _____
15      EXPEDITED TRANSCRIPT OF THE **TELEPHONE CONFERENCE**
          BEFORE THE HONORABLE THOMAS D. SCHROEDER
16               UNITED STATES DISTRICT JUDGE

17 APPEARANCES:
   For the Plaintiff:   ANDREW C. NOLL, ESQ.
18                      DEVI M. RAO, ESQ.
                        JENNER & BLOCK, LLC.
19                      1099 New York Avenue, NW Suite 900
                        Washington, DC 20005.
20
                        SCOTT B. WILKENS, ESQ.
21                      WILEY REIN LLP
                        1776 K Street, N.W.
22                      Washington, DC 20006

23                      JAMES D. ESSEKS, ESQ.
                        IRENA COMO, ESQ.
24                      AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                        125 Broad Street, 18th Floor
25                      New York, New York 10004
```

Case 1:16-cv-00236-TDS-JEP   Document 297   Filed 07/26/19   Page 1 of 27

```
1    APPEARANCES (Continued)

2

     For the Defendants:
3
     (State of NC,
4    Governor McCrory,
     DPS)                    OLGA E. VYSOTSKAYA, ESQ.
5                            AMAR MAJMUNDAR, ESQ.
                             NC DEPARTMENT OF JUSTICE
6                            P. O. Box 629
                             Raleigh, North Carolina 27602
7
     (UNC)                   KRISTEN A. LEJNIEKS, ESQ.
8                            CONOR MALONEY, ESQ.
                             JONES DAY
9                            51 Louisiana Avenue, N.W.
                             Washington, DC 20001.
10

11                           THOMAS C. SHANAHAN, ESQ.
                             CAROLYN C. PRATT, ESQ.
12                           UNIVERSITY OF NORTH CAROLINA
                             GENERAL ADMINISTRATION
13                           910 Raleigh Road
                             Chapel Hill, North Carolina 27514
14
     (Intervenors)           GENE SCHAERR, ESQ.
15                           ROBERT POTTER, ESQ.
                             SCHAERR DUNCAN, LLP
16                           1717 K Street, NW, Suite 900
                             Washington, DC 20006
17
     Court Reporter:         BRIANA NESBIT, RPR
18                           Official Court Reporter
                             P.O. Box 20991
19                           Winston-Salem, North Carolina 27120

20

21

22

23

24
         Proceedings recorded by mechanical stenotype reporter.
25        Transcript produced by computer-aided transcription.
```

Carcano, et al. v. McCrory, et al. Motions 7/17/19

PROCEEDINGS

1

2      **THE COURT:**  Okay.  I think we're on the record here

3 and have everybody.  This is 16CV236, Carcano, et al. versus

4 Governor Cooper, et al.

5      I have a list of folks who I think are going to be

6 speaking and are present.  Let me go down the list and take

7 roll just so I have it for the record, if I can.  Let me start

8 with the Plaintiffs.  If you want to introduce whoever is on

9 the phone and indicate who intends to be taking the lead, that

10 would be helpful.

11      **MR. NOLL:**  Sure, Your Honor.  So this is Andrew Noll

12 from Jenner & Block on behalf of the Plaintiffs.  I have also

13 on the line with us James Esseks from the ACLU, Irena Como from

14 the ACLU of North Carolina, Devi Rao from Jenner & Block, and

15 Scott Wilkens from Wiley Rein; and depending on the topic, I

16 will be doing primarily the speaking from the Plaintiffs' side.

17      **THE COURT:**  Good afternoon and thank you.

18      How about for the State of North Carolina and

19 Governor Cooper's office?

20      **MS. VYSOTSKAYA:**  Your Honor, this is Olga Vysotskaya

21 for the Executive Branch Defendants, and Mr. Majmundar is with

22 me in the room.  So to the extent his participation would be

23 required, he might speak as well.

24      **THE COURT:**  All right.  And Legislative Intervenors?

25      **MR. SCHAERR:**  Yes, good afternoon, Your Honor.  This

Case 1:16-cv-00236-TDS-JEP   Document 297   Filed 07/26/19   Page 3 of 27

1   is Gene Schaerr, and I'm joined by Bob Potter.  Depending on

2   the topic, I will be doing most of the speaking.

3           **THE COURT:**  All right.  Thank you.

4           And the UNC Defendants, are they here as well?

5           **MS. LEJNIEKS:**  Good afternoon, Your Honor.  This is

6   Kristen Lejnieks of Jones Day for the UNC Defendants, and I

7   have with me on the line Conor Maloney, also of Jones Day, and

8   Thomas Shanahan and Carolyn Pratt of the University.

9           **THE COURT:**  All right.  Thank you.

10          Well, good afternoon to all of you.  Thank you for

11  taking the time to be available, and I thought maybe I could

12  cover just a few things briefly with you on the phone rather

13  than calling you all in yet for another hearing.

14          I have the most recent proposed consent judgment and

15  decree, and I've spent some time reviewing it.  And I had just

16  a few questions, and I thought maybe this would be the best way

17  to address them.  I think they are mostly going to be directed

18  to the Plaintiffs.

19          Let me say that I'm entertaining considering

20  generally entering the consent decree to the extent it

21  memorializes the statement I had in my prior opinion, which I

22  regard to be a somewhat narrow statement of the law.  It's

23  indicating the scope of Section 2, that is, that it's not an

24  independent, alternate basis for regulation.

25          And I have some questions, though, about the consent

Carcano, et al. v. McCrory, et al. Motions 7/17/19

decree because in some portions it seems to exceed that, and I don't know if that's intentional.  If not, then I think it could probably be easily fixed.

Let me say, first of all, it would appear that there's agreement around the table that nothing in the consent decree is intended to prohibit the Executive Branch Defendants or their successors from the application of any act of the General Assembly as it might apply or not apply to any person who's transgender.

Is that your understanding of your position now in the case as to the Plaintiffs?

**MR. NOLL:**  Your Honor, to clarify that, any act of the General Assembly other than to the extent Section 2 of H.B. 142 could be interpreted inconsistent with Your Honor's opinion in the motion to dismiss, but I -- it is the case that the consent decree is not meant or intended to affect in any way the application of any other criminal law or civil law to individuals who are transgender.

**THE COURT:**  Okay.  So, for example, trespass law, that would be an act of the General Assembly that, in your view, is not intended to be covered within the scope of the consent decree?

**MR. NOLL:**  That's right, Your Honor.  The intention of the terms "otherwise lawful" in paragraph 2 of the consent decree, it intended to indicate that the consent decree only

1 reaches the application of Section 2 to bar, prohibit, block,

2 deter, or impede individuals from using public facilities.

3      **THE COURT:** All right. So whether or not a trespass

4 law could or would apply to any person would be subject to

5 other litigation down the road. Is that your view?

6      **MR. NOLL:** Yes, Your Honor, again to the extent it

7 was -- you know, to the extent Section 2 was not -- of H.B. 142

8 was not being used as, you know, the reason to bar individuals.

9 To the extent the trespass law otherwise applies, that would be

10 the subject of litigation outside the scope of this litigation.

11      **THE COURT:** Okay. All right.

12      Does anybody on the phone have a different view of

13 that?

14      All right. Hearing none, I'm going to then take it

15 that all parties are in agreement that the limited scope of the

16 consent decree is Section 2 of H.B. 142, and it leaves -- would

17 leave the State and the Executive Branch Defendants and others

18 free to litigate for another day whether or not some other act

19 of the General Assembly, for example, trespass law, could or

20 could not be used against any person based on their use of any

21 facility.

22      So that I think then takes me to paragraph 10 of the

23 proposed consent decree. It is a whereas paragraph, but it

24 strikes me that it seeks to be broader than the terms of the

25 decretal paragraphs. I don't know if that was intentional by

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1  the Plaintiffs or whether it was not; but in its current form,

2  I have difficulty signing a decree with paragraph 10 written

3  the way it is.

4        It speaks to the issue of whether any executive

5  agency or the officer, employee, or agent can promulgate any

6  regulation under Section 2 of H.B. 2.  The issue of whether

7  there is any other act of the General Assembly that authorizes

8  rule-making was never addressed, to my recollection, in the

9  litigation.

10        So I'm not sure what paragraph 10 is seeking to

11  accomplish.  I don't know how necessary it is for the draft

12  because it's a whereas paragraph and not a portion of the

13  decree.

14        So let me ask the Plaintiffs, Mr. Noll, what is the

15  purpose of paragraph 10?  How necessary is it in this decree?

16        **MR. NOLL:**  Certainly, Your Honor.  The intent of

17  paragraph 10 is meant to refer back to Section 2, which

18  prohibits state agencies, among other entities, including

19  boards, offices, and departments, from regulation of access to

20  multi-occupancy restrooms, showers, and changing facilities.

21        So in our view, the whereas clause is just meant to

22  say that consistent with Section 2 there's currently a

23  prohibition on these entities that are listed in paragraph 10

24  from promulgating regulations which would prevent transgender

25  people from using facilities in accordance with their gender

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1  identity, because that would be a regulation of access.

2          **THE COURT:**  The legislation -- the statute, though,

3  has the proviso unless in accordance with an act of the General

4  Assembly, I believe.  So that's missing from paragraph 10, and

5  I don't know what the authority of the General Assembly -- what

6  the authority, rather, of rule-making is that's been granted by

7  the General Assembly, and paragraph 10 seems to have written

8  that out, which to me would not be respecting the statute.  And

9  that's my concern with it.

10          **MR. NOLL:**  I see.  So Your Honor's concern is with

11  the absence of the final clause:  "Except in accordance with an

12  act of the General Assembly"?

13          **THE COURT:**  Well, substantively that's my concern.

14  When you add that, it seems to me to say no more than parrot

15  the language of the statute; in which case, I don't understand

16  the purpose of paragraph 10 because that's what the statute

17  says.

18          **MR. NOLL:**  Well, Your Honor, I can certainly say that

19  the intent was not to reach farther than the statute.  I can

20  confirm that's the case.

21          To the extent it is only a whereas paragraph

22  discussing sort of the general reasoning behind the consent

23  decree, I don't think it's necessarily essential to the actual

24  decretal paragraphs that follow.

25          **THE COURT:**  All right.  Are you saying you're willing

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1 to eliminate that paragraph?

2        **MR. NOLL:** I, of course, would like to discuss it

3 with both cocounsel and the Executive Branch Defendants, seeing

4 this as an agreed-to consent decree, but I think -- I can

5 confirm the intent was not to reach any farther than Section 2

6 as written and enacted by the legislature.

7        **THE COURT:** Okay. Well, I would have concerns if it

8 remained, significant concerns, particularly if there's an

9 effort to have this decree applied down the road to other

10 persons as indicated in paragraph 17 through issue preclusion

11 and collateral estoppel. That needs to be addressed. I think

12 your options are you can eliminate it. If you decide to parrot

13 the statute, then, as I said, I wonder what value it is,

14 because all it does is repeat what's in the statute, but I

15 leave that to you all.

16        **MR. NOLL:** Okay. I think from Plaintiffs'

17 perspective, Your Honor, we would be fine eliminating paragraph

18 10, subject to the Executive Branch Defendants' agreement as

19 well, of course.

20        **THE COURT:** Okay.

21        **MS. VYSOTSKAYA:** Your Honor, this is Olga Vysotskaya.

22 I think from the Executive Branch perspective, we would also be

23 willing to eliminate that paragraph. We would like to have

24 just maybe a very short, serious -- or confirmation of that

25 provision, but I think we will get there.

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1          **THE COURT:**  All right.  Paragraph 16 is just a typo.

2    The last line -- I think technically the title is district

3    judge, not district court judge.  So you can strike court.  If

4    it shows up anywhere else, you can do that as well.

5              Paragraph 17, there is language in this, and I guess

6    it was in a prior version that didn't come up, that indicates

7    an intent for some aspect of this to be binding for purposes of

8    issue preclusion, claim preclusion in all future actions,

9    including through nonmutual offensive collateral estoppel.

10             I was curious as to that and the legal effect of that

11   in a whereas clause versus what's in the two paragraphs of the

12   decree.  I'm sensitive to a couple of issues.  One is the

13   concern that the Legislative Defendants have raised about

14   constant federal oversight through a consent decree down the

15   road, if I were to apply this to future administrations.

16             Two, I don't have any current indication that anybody

17   would ever take a position contrary to Section 2 of H.B. 142,

18   and to my knowledge, in this case nobody has, with the possible

19   exception of the school administrator on the coast of North

20   Carolina that was the subject of an affidavit earlier in this

21   case.

22             With those concerns in mind, Mr. Noll, maybe you can

23   address the intent of paragraph 17 and, two, what legal effect,

24   if any, you think it has since it's in the whereas clause and

25   not elsewhere.

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1    **MR. NOLL:**  Certainly, Your Honor.  So I think the

2  intent was to be -- to make clear that the consent decree runs

3  against the Executive Branch for, you know, any person that

4  attempts to use a restroom consistent with their gender

5  identity.

6          Now, the question of nonmutual offensive collateral

7  estoppel, we understand that it's typically one that's raised

8  in whatever proceeding in which an individual attempts to use

9  this agreement as -- in an offensive manner, and the important

10  inquiry under the Supreme Court's case law in that respect is

11  the intent of the party against whom the provision is trying to

12  be enforced with respect to that provision.

13          And so we think that question, the intent of the

14  party, in this case the Executive Branch Defendants, to agree

15  to some limitations, would be something that would be litigated

16  in the proceeding in which the consent decree is attempted to

17  be used in an offensive manner, which may very well be in a

18  state court action to the extent that, you know, Section 2 of

19  H.B. 142 was attempted to be invoked in a trespassing action,

20  for example.

21          **THE COURT:**  So by the language of paragraph 17 and

22  the definitions that you've given to the parties, the consent

23  parties, as I read the document, are defined as the Plaintiffs

24  and the current Executive Branch Defendants; is that right?

25          **MR. NOLL:**  The Executive Branch Defendants includes

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1  all of their successors as well.

2          **THE COURT:**  Well, I don't read the decree to say

3  that.  I'm looking at paragraph 8, and it defines Plaintiffs

4  and Executive Branch Defendants as the consent parties, and in

5  paragraph 1 of the decree, it specifically adds successors in

6  addition to the consent parties.  That suggests to me that the

7  consent parties are the current administration, Executive

8  Branch Defendants, and the Plaintiffs.

9          So I guess what I'm saying is I'm not clear on what

10 the legal binding effect, if any, is of a whereas clause, but

11 under the current agreement, it appears to be between the

12 current Executive Branch Defendants and the Plaintiffs.

13         Does any other party want to address that?  Let me go

14 down the list here.  Let me start with the State.

15         **MS. VYSOTSKAYA:**  Yes, Your Honor, this is

16 Olga Vysotskaya.  We would tend to agree with the Court's

17 interpretation that whereas clause is not binding and that the

18 intent of the parties would be left subject to interpretation

19 by the court in which this clause is going to be asserted by

20 certain individuals.  So we agree with your thinking there on

21 that issue, and we agree with what Mr. Noll has said, that the

22 intent would be interpreted in other proceedings if that clause

23 is ever invoked as a court of action in some type of

24 proceedings.

25         **THE COURT:**  What about the UNC Defendants,

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1  Ms. Lejnieks?

2          **MS. LEJNIEKS:**  We have taken no position on this

3  consent decree, Your Honor.

4          **THE COURT:**  All right.  Mr. Schaerr, do you want to

5  be heard at all as to that?

6          **MR. SCHAERR:**  Yes, Your Honor.  There seems to be a

7  disconnect between what the Executive Branch Defendants just

8  said and what the Plaintiffs just said.  I gathered the

9  Plaintiff said they view this as extending to the successors of

10 the current executive branch, which, of course, would be a

11 problem from the standpoint of the Legislative Intervenors.

12         The Executive Branch, though, seems to be taking the

13 position that we should leave that issue up for interpretation

14 by any courts that interpret this decree in the future, but we

15 don't think that makes sense either.  It ought to be clear one

16 way or another, and, you know, we think it should be -- if the

17 Court is going to enter a decree, we think it ought to be

18 limited to the current Executive Branch Defendants and not

19 their successors.

20         **THE COURT:**  All right.  Well, as I read it currently,

21 given the definitions that are made, the consent parties are

22 the current parties to the litigation, not necessarily their

23 successors, and I would read paragraph 17 to seek to reflect an

24 agreement between those parties for purposes of issue

25 preclusion, et cetera, but not to anybody beyond those parties.

Carcano, et al. v. McCrory, et al. Motions 7/17/19

```
1              It's also not clear to me, Mr. Noll, in paragraph 17
2    whether -- when you say to be binding, whether that means the
3    consent decree or whether that means the construction of H.B.
4    142 contained in the consent decree, which is the language of
5    the first three lines of paragraph 17.
6              MR. NOLL:  Your Honor, I think it's meant to be the
7    terms of the consent decree, so which would include the
8    construction that is -- so it's intended for the consent decree
9    to clarify, and then it provides the clarification "and to be
10   binding."  So "and to be binding," in our view, is meant to
11   modify the consent decree.
12             THE COURT:  All right.  The next question I had then
13   was in the decree portion, paragraph 1, given what we've talked
14   about as to how Section 2 of H.B. 142 has the proviso that any
15   other act of the General Assembly is not within the realm of
16   Section 2, if you will, I was curious as to what the meaning of
17   the last sentence of Section -- or paragraph 1 is.  It doesn't
18   talk about other acts of the General Assembly.  It talks about
19   future legislation.
20             Is there any intent in paragraph 1 to expand the
21   scope of the agreement about the scope of Section 2 to all acts
22   other than future legislation?  That is --
23             MR. NOLL:  No, Your Honor.  In fact, I think the
24   opposite.  The final sentence was meant to provide that both
25   Plaintiffs and the Executive Branch are not precluded from
```

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1  either challenging, potentially in the case of Plaintiffs, or

2  acting in accordance with, in the instance of the Executive

3  Branch Defendants, any future legislation that amends, changes,

4  or otherwise alters either H.B. 142 or the issues otherwise at

5  issue in this case.  I think it was meant to be clear that the

6  section refers only to and only discusses the construal of

7  Section 2 of H.B. 142 as it currently exists.

8          **THE COURT:**  Do you have, Mr. Noll, any other issues

9  you want to raise in light of our discussion today?  I am just

10  going to go down the list with the lawyers and make sure

11  everybody has had an opportunity to comment.

12          **MR. NOLL:**  I think that's all from the Plaintiffs at

13  this time, Your Honor.

14          **THE COURT:**  All right.  And how about from the State?

15          **MS. VYSOTSKAYA:**  No, Your Honor, we don't have any

16  other issues to discuss.

17          **THE COURT:**  All right.  Ms. Lejnieks, does UNC wish

18  to be heard on any issue?

19          **MS. LEJNIEKS:**  No, Your Honor, thank you.

20          **THE COURT:**  And, Mr. Schaerr, any comment on any of

21  the discussion today you want to be heard on?

22          **MR. SCHAERR:**  No, Your Honor, nothing beyond the

23  points that we've already made on all of this.

24          **THE COURT:**  All right.  So my understanding is that

25  the Plaintiff is -- you want to check with your folks to

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1  determine whether you're in agreement -- or, rather, they are

2  in agreement with what I understood would be your inclination,

3  and that is to strike paragraph 10.  Is that right, Mr. Noll?

4         **MR. NOLL:**  Your Honor, I think the Plaintiffs can

5  represent that we would be willing to strike paragraph 10 upon

6  agreement, of course, with the Executive Branch, which I

7  understood Ms. Vysotskaya agreed to.

8         **MS. VYSOTSKAYA:**  Yes, Your Honor, we would be willing

9  to strike that paragraph as well.

10         **THE COURT:**  Okay.  All right.  Give me just a moment.

11  I think if you would -- if the Plaintiffs would strike

12  paragraph 10 and -- give me just a moment here.

13         I think if you would strike 10 and then make the one

14  typo correction in paragraph -- what is now paragraph 16,

15  strike the word "court" and then resubmit it, then I will

16  consider that draft in light of our discussion today and

17  keeping in mind everybody's prior comments and objections as

18  well.

19         Does anybody have any questions -- well, let me say

20  before I leave that.  Today is Wednesday.  I'm presuming you

21  could probably get that figured out by at the latest the end of

22  the week and submit a revised version before the end of the day

23  Friday.  Is that a possibility, Mr. Noll?

24         **MR. NOLL:**  From the Plaintiffs' perspective, yes,

25  that's a possibility, Your Honor.

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1          **THE COURT:**  And, Ms. Vysotskaya, is that yours as

2     well?

3          **MS. VYSOTSKAYA:**  That's right, Your Honor.

4          **THE COURT:**  Okay.  All right.  So the sooner you

5     submit it, the sooner I will consider it, but if you would

6     resubmit it.  Since it's eliminating information and not

7     adding, then I think no party has any burden to file anything

8     further, but the parties are free to do that, if they wish.

9          Mr. Schaerr, do you have any interest in filing

10    anything further?

11         **MR. SCHAERR:**  Well, I think the main issue that seems

12    to still be hanging is whether this decree would bind the

13    successors of the current executive branch officials, and I

14    just -- I wonder whether the Court wants to leave that hanging

15    or perhaps ask for a clarifying statement that it does not bind

16    the successors of the current executive branch officials.

17         **THE COURT:**  Hold on just a minute.  Well, I know

18    we've addressed this before, so I don't want to address it at

19    length.

20         Mr. Noll, what is the benefit of the decree from your

21    point of view?

22         **MR. NOLL:**  Your Honor, I think the benefit is a

23    couple of things.  Most importantly, in our view, it would put

24    in place a judicially enforceable order codifying the

25    interpretation of the law that Your Honor gave in the motion --

          Carcano, et al. v. McCrory, et al. Motions 7/17/19

1 order involving the motion to dismiss. In our view, that's
2 important because although we'll get less relief than
3 Plaintiffs could otherwise get from trial or after appeal on
4 Section 2, it at least provides some -- you know, an order that
5 can be enforced regarding the -- Your Honor's statement of the
6 law. And in our view, that would remedy, although not to its
7 full extent, the equal protection violation that we believe we
8 have plausibly alleged about the barrier of individuals to seek
9 accommodations under the preemption provision of Section 2. So
10 it provides a level of both the ability to enforce an
11 interpretation and in a colloquial sense an understanding and
12 clarity of what the law itself means.

13 **THE COURT:** Okay. Was there ever -- I mean,
14 honestly, was there ever any reasonable debate about what
15 Section 2 meant? I mean, I thought my statement about it was
16 simply a statement of the express terms of the law, that is,
17 that a law that prohibits things cannot be the grant of an
18 affirmative, independent basis for regulation.

19 **MR. NOLL:** So I think given Your Honor's
20 construction, if that is the construction of the law, there is
21 no debate. However, we have concerns both based on the
22 contemporaneous statements about the law as well as, frankly,
23 Your Honor, the briefing that Intervenors have submitted since
24 we've proposed the consent decree. In their most recent
25 submission, they argue that the consent decree would limit how

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1  state officers can apply trespass and other laws, including how

2  the attorney general cooperates with local law enforcement.

3           In our view that at least suggests some implicit

4  concern or a contention that H.B. 142 itself can be used --

5  could possibly be used in an effort to bar individuals from

6  using the restrooms consistent with their gender identity, and

7  so that seems to be consistent with the argument that some have

8  made at the motion to dismiss stage that H.B. 142 simply

9  returns the state to the status quo before H.B. 2.  And we

10 think if that is what the law says, as Your Honor interpreted

11 in the motion to dismiss, then we're comfortable with entering

12 a consent decree that codifies and confirms that

13 interpretation.

14          But I do think there is some potential debate, albeit

15 Your Honor may not believe it reasonable given your

16 construction, that from Plaintiffs' perspective, we were

17 unwilling to sort of end this litigation without some certainty

18 about what the law means and the ability to enforce that

19 interpretation, if necessary.

20          **THE COURT:**  All right.  Mr. Schaerr, do you want to

21 be heard any further?

22          **MR. SCHAERR:**  No, Your Honor.

23          **THE COURT:**  Let me ask:  What's the practical burden

24 on future administrations given the interpretation of Section 2

25 and the plain language of Section 2 in a practical real sense?

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1          **MR. SCHAERR:**  If the Court were to enter the proposed
2    consent decree?

3          **THE COURT:**  Yes.

4          **MR. SCHAERR:**  Well, I think one -- certainly one
5    concern that we have is just a general concern about any
6    federal court order that's going to subject the organs of the
7    North Carolina state government to any kind of ongoing federal
8    court supervision.  And, you know, if there's a -- if there's a
9    disagreement about how to interpret H.B. 142, that -- you know,
10   that ought to be worked out in the ordinary way without anybody
11   running to federal district court to accuse the other side of
12   violating a court order.

13         **THE COURT:**  All right.  Okay.  Does anybody have
14   any -- go ahead.

15         **MR. SCHAERR:**  It seems to me that's the flip side of
16   Your Honor's point about the clarity of H.B. 142.  If it's
17   clear, then why is there a need for a consent decree at all?
18   If it's unclear and it's going to be -- and the Court's order
19   is going to be binding on the successors of the current
20   Executive Branch Defendants, then that's exactly the problem
21   that the Legislative Intervenors are concerned about just
22   institutionally.

23         **THE COURT:**  I understand the institutional and
24   federalism concern.  As a practical matter, the interpretation
25   that I put in my opinion, which is memorialized in the consent

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1    judgment and decree, I understood to be one that everybody

2    involved in this lawsuit, including the Legislative

3    Intervenors, accept as a plain reading and proper reading of

4    the statute.

5            Am I right about that, Mr. Schaerr?

6            **MR. SCHAERR:** I think that's true, Your Honor.

7            **THE COURT:** So in light of that, I guess the question

8    is, on the one hand, from a federalism point of view -- I

9    appreciate the argument that federal courts should not be in

10   the business of directing states not to do things unless

11   there's some indication that there's a need for that.

12           On the other hand, everybody has agreed here to what

13   it is they're agreeing not to do. So I'm having a -- well, let

14   me put it this way. I think there's an argument on the

15   Plaintiffs' side that there's no real burden here because

16   everybody seems to be in agreement that the statute is pretty

17   clear on its face.

18           **MR. SCHAERR:** Well, again, institutionally, Your

19   Honor, the concern that we would have is that if there is a

20   dispute down the road about the proper application of H.B. 142,

21   the existence of the consent decree would provide an immediate

22   avenue for federal court jurisdiction over the dispute which

23   might not otherwise exist. The dispute might come up in a

24   context where but for the Court's decree, the dispute needed to

25   be resolved in state court.

Carcano, et al. v. McCrory, et al. Motions 7/17/19

```
1          THE COURT:  In light of the plain reading, though, of
2    Section 2, would it not be highly unlikely that there would
3    ever be a dispute, because any -- if there is an effort down
4    the road, and I don't know what it would be -- but if there is
5    an issue involving the application of trespass or some other
6    law, the decree and the statute itself specifically exempt that
7    from Section 2 of the H.B. 142.  So there would be no federal
8    issue, at least --
9          MR. SCHAERR:  I'm not saying I think there is likely
10   to be that kind of dispute.  I think our concerns are more
11   institutional than they are, you know, concerns about what's
12   likely to happen on this particular issue.
13         THE COURT:  All right.  I understand.
14         Mr. Noll, are your clients willing to enter into a
15   decree with the current administration and having it be a
16   consent judgment and decree that binds this administration?
17         MR. NOLL:  No, Your Honor, I think we're not willing
18   to enter a decree that doesn't bind the Executive Branch
19   Defendants and their successors.  I think in our view the
20   Executive Branch Defendants are in charge with enforcing what
21   we -- what we think, consistent with Your Honor's holding, is
22   the law by its plain language, and that law says what it says.
23   The legislature remains free under this consent decree to pass
24   a new or different law that a future executive can act in
25   accordance with, but in our view we're not willing to limit the
```

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1  terms of the decree to just the current occupants of the office

2  but with the *Ex Parte Young* Defendants, which is the executive

3  branch more generally, against whom we've brought our claims.

4          **THE COURT:**  Well, maybe I wasn't clear.  All current

5  Executive Branch Defendants.  The argument that the Intervenors

6  make is essentially in a case where there's been no real

7  dispute over the law, and this administration and its

8  defendant -- the Executive Branch Defendants are willing to

9  enter into a decree along the lines of what's been offered

10  here, that that decree could be entered as between them; but

11  that to continue it beyond them, given the clear language of

12  the statute, there's really no basis to subject further

13  administrations down the road from any potential oversight.

14  There will always be the interpretation of the decree that can

15  be cited in any court of law.

16          So my question maybe was narrower than I meant it to

17  be, and that was:  Are Plaintiffs willing to sign a decree for

18  the current Executive Branch Defendants that addresses these

19  issues as between the current Executive Branch Defendants and

20  the Plaintiffs?

21          **MR. NOLL:**  We're not, Your Honor, again for the

22  reasons I just articulated.  I think, you know, to the extent

23  there's a concern about future executive branch occupants, you

24  know, I encourage this Court to look at the decision in *Frew Ex*

25  *Rel. Frew v. Hawkins*, which talks about modification of a

Carcano, et al. v. McCrory, et al. Motions 7/17/19

consent decree to the extent that there is any need to do so as
a sort of reason to -- or ability for courts to reconsider the
scope and extent of consent decrees.

Now, I think we would be hard-pressed to say that the
plain language of a statute -- that there would be any changed
circumstances that would lead to a valid reason to modify the
consent decree, but we're not willing, given the scope of our
complaint and the allegation we made in our complaint, to only
enter a decree that would extend just through the termination
of the current occupants' term in office.

THE COURT:  All right.  The court reporter did not
get the citation to the case you indicated.

MR. NOLL:  Sorry, Your Honor.  I can reread that.
It's *Frew Ex Rel. Frew v. Hawkins*, and the citation is 540 U.S.
437, and I encourage the Court to look at pages 441 to 42.

THE COURT:  Okay.  Does anybody have anything else
they want to be heard on today?

MR. NOLL:  Your Honor, just from Plaintiffs'
perspective, in line with your statement about the need or not
need to file anything in addition to the revised consent
decree, Plaintiffs would just like to reserve the right to file
anything, if necessary, concerning the collateral estoppel
effect that we discussed.  I don't necessarily anticipate we
will, but we would like to reserve that right.

THE COURT:  Okay.  I remain concerned about the

Carcano, et al. v. McCrory, et al. Motions 7/17/19

language only because I would imagine there's already case law

that addresses what collateral estoppel effect there could be.

I am currently reading the current draft, as I said, to define

the consent parties as the current occupants and Plaintiffs,

and that the language about issue preclusion is an agreement

about an intention -- it's part of the whereas provisions --

about the intention of the current parties to this document.

As it's currently worded, I would not regard that to

be binding on successors because it's in a whereas clause and

not in a decree, and, certainly, if it were to -- if there were

an attempt to bind any of this legally, then that would be more

problematic. I remain concerned because, frankly, I have not

seen, in my experience, a consent decree with that kind of

language, but I would assume there's case law that already

applies to that situation. I simply have not investigated it

fully.

If you wish to file something at all with respect to

the consent decree, if you would file that by Friday as well.

If you do file something, then I'll allow all the other

parties -- I'm going to say seven days. I'm hoping that's

enough to respond, and I'll say right now if for some reason

you think you need more time than that to respond, simply

request it, and I'll be inclined to entertain it.

I would like to wrap this up. I wish I had wrapped

it up before now, but I'm not going to let the urgency to get

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1  something resolved interfere with getting it done right.

2          Any questions?

3          All right.  Thank you all very much.  I appreciate

4  you making the time for today.  We'll stand adjourned.

5      (END OF PROCEEDINGS AT 4:51 P.M.)

6

7                              ******

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Carcano, et al. v. McCrory, et al. Motions 7/17/19

1   UNITED STATES DISTRICT COURT

2   MIDDLE DISTRICT OF NORTH CAROLINA

3   CERTIFICATE OF REPORTER

4

5

6           I, Briana L. Bell, Official Court Reporter, certify

7   that the foregoing transcript is a true and correct transcript

8   of the proceedings in the above-entitled matter.

9

10          Dated this 26th day of July 2019.

11

12

13                          _____
                            Briana L. Bell, RPR
14                          Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

Carcano, et al. v. McCrory, et al. Motions 7/17/19